# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN OVERSIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>Defendant. | C.A. No. 1:21-cv-10761-AK |

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND FACTS ..................................................................1

ARGUMENT ...........................................................................................................................5

   I.    ICE bears the burden at summary judgment. .................................................................5

   II.   ICE did not conduct an adequate search in response to Plaintiffs' requests. ..................6

       A.    ICE employed unreasonably narrow email search terms and refused to use reasonable email search terms proposed by the plaintiffs. ....................................6

       B.    ICE unreasonably failed to search additional repositories of records likely to hold responsive records, including ICE personnel text messages. .....................9

            1.    ICE improperly refused to search for text messages Plaintiffs requested. ...............................................................................................11

            2.    ICE improperly limited the offices and custodians included in its search. ..................................................................................................13

            3.    Other positive indications of overlooked materials call the search into question, particularly the exclusion of ICE HSI from the searched locations. .................................................................................14

   III.   ICE improperly applied Exemption (b)(7)(A). ............................................................15

CONCLUSION......................................................................................................................20

LOCAL RULE 7.1 STATEMENT ........................................................................................21

CERTIFICATE OF SERVICE ..............................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Abdul-Alim v. Wray*,
  277 F. Supp. 3d 199 (D. Mass. 2017) ........................................................................6

*ACLU of Massachusetts, Inc. v. U.S. Immigr. & Customs Enf't*,
  448 F. Supp. 3d 27 (D. Mass. 2020) ........................................................ 10, 12, 14

*Alyeska Pipeline Serv. Co. v. E.P.A.*,
  No. CIV.A. 86-2176, 1987 WL 17071 (D.D.C. Sept. 9, 1987), *aff'd sub nom. Alyeska Pipeline Serv. Co. v. U.S. E.P.A.*, 856 F.2d 309 (D.C. Cir. 1988)........................................................17

*Am. Ctr. for Equitable Treatment, Inc. v. Office of Mgmt. & Budget*,
  281 F. Supp. 3d 144 (D.D.C. 2017) ........................................................................7

*Carpenter v. U.S. Dep't of Justice*,
  470 F.3d 434 (1st Cir. 2006)........................................................................6

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Jus.*,
  746 F.3d 1082 (D.C. Cir. 2014)........................................................................15

*Curran v. U.S. Dep't of Just.*,
  813 F.2d 473 (1st Cir. 1987)........................................................................16

*Johnson v. Cent. Intel. Agency*,
  330 F. Supp. 3d 628 (D. Mass. 2018) ........................................................7, 14

*Judicial Watch, Inc. v. Food & Drug Admin.*,
  449 F.3d 141 (D.C. Cir. 2006)........................................................................19

*Kay v. F.C.C.*,
  976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) ............................17

*Keys v. U. S. Dep't of Just.*,
  830 F.2d 337 (D.C. Cir. 1987)........................................................................16

*LeMaine v. I.R.S.*,
  No. CIV. 89-2914-WD, 1991 WL 322616 (D. Mass. Dec. 10, 1991)........................ 15, 16, 18

*Lunn v. Commonwealth*,
  477 Mass. 517 (2017)........................................................................1

*Maynard v. Cent. Intel. Agency*,
  986 F.2d 547 (1st Cir. 1993)........................................................................6

*Moffat v. U.S. Dep't of Just.*,
  716 F.3d 244 (1st Cir. 2013)........................................................................6

*Moffat v. U.S. Dep't of Just.*,
  No. CIV.A. 09-12067-DJC, 2011 WL 3475440 (D. Mass. Aug. 5, 2011) *aff'd*, 716 F.3d 244 (1st Cir. 2013)........................................................................16

*Moradi v. Morgan*,
  527 F. Supp. 3d 144 (D. Mass. 2021) ........................................................................10

*New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigration & Customs Enf't,*
373 F. Supp. 3d 16 (D.D.C. Mar. 4, 2019) ................................................................... 7

*Nulankeyutmonen Nkihtaqmikon v. Bureau of Indian Affs.,*
493 F. Supp. 2d 91 (D. Me. 2007) ............................................................................... 7

*Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990) ............................... 10

*Oleskey ex rel. Boumediene v. U.S. Dep't of Def.,*
658 F. Supp. 2d 288 (D. Mass. 2009) ......................................................................... 9

*Rodriguez v. U.S. Dep't of Def.,*
236 F. Supp. 3d 26 (D.D.C. 2017) .............................................................................. 7

*Ryan v. Immigr. & Customs Enf't,*
974 F.3d 9 (1st Cir. 2020) ..................................................................................... 1, 2

*Sea Shepherd Conservation Soc'y v. IRS,*
208 F. Supp. 3d 58 (D.D.C. 2016) ............................................................................ 10

*Stalcup v. Dep't of Def.,*
No. 13-11967, 2018 WL 4963169 (D. Mass. Oct. 15, 2018) ................................... 6, 10

*Union Leader Corp. v. U.S. Dep't of Homeland Sec.,*
749 F.3d 45 (1st Cir. 2014) ........................................................................................ 6

*United States v. Joseph,*
19-10141 (D. Mass.) .................................................................................................. 3

*United States v. Joseph,*
No. 20-1787 (1st Cir.) ............................................................................................... 2

*UtahAmerica Energy v. Dep't of Labor,*
700 F. Supp. 2d 99 (D.D.C. 2010) ............................................................................ 17

*W. Res. Legal Ctr. v. Nat'l Oceanic & Atmospheric Admin.,*
No. 3:19-CV-01119-AC, 2020 WL 68297678 (D. Or. Nov. 20, 2020) .......................... 7

*Windham v. Dep't of Hous. & Urb. Dev.,*
140 F. Supp. 3d 163 (D. Mass. 2015) ......................................................................... 9

## Statutes

44 U.S.C. § 3301 ...................................................................................................... 12

5 U.S.C. § 552(a)(4)(B) .............................................................................................. 6

5 U.S.C. § 552(b) ..................................................................................................... 19

5 U.S.C. § 552(b)(7)(A) ............................................................................................ 15

## Other Authorities

Fed. R. Evid. 1002 ................................................................................................... 11

FOIA Counselor, U.S. Dep't of J., FOIA Update, Vol. 11, No. 1, *What Is an 'Agency Record?'*
(Jan. 1, 1980) ........................................................................................................................12

Raymond, Nate, "*U.S. judge criticizes immigration arrest of Chinese woman in exam scam*,"
Reuters (Apr. 25, 2017). ........................................................................................................1

## INTRODUCTION AND BACKGROUND FACTS

This case arises from the plaintiffs' efforts to investigate whether U.S. Immigration and Customs Enforcement ("ICE") leveraged the criminal process in an attempt to pressure Massachusetts judges to exercise their powers in ICE's favor, and to punish one judge based on allegations that she exercised her powers in a manner that did not favor ICE. The answer to this question has deep implications for judicial independence in the Commonwealth, and for the future of our justice system.

In 2017, in *Lunn v. Commonwealth*, the Massachusetts Supreme Judicial Court ruled that Massachusetts court officers are not legally permitted to make civil immigration arrests at ICE's request. *See* 477 Mass. 517, 519 (2017). Around that time, ICE agents embarked on a campaign of civil immigration arrests in and around the courts of Massachusetts.[1] *See Ryan v. Immigr. & Customs Enf't*, 382 F. Supp. 3d 142, 151 (D. Mass. 2019), *vacated on other grounds* 974 F.3d 9 (1st Cir. 2020). By the end of 2017, the Massachusetts Trial Court had issued a policy that carefully limited cooperation with that initiative, including barring civil immigration arrests in the courtroom absent express judicial permission. *See id.* at 150-51. And by 2019, two Massachusetts District Attorneys had sued to block ICE's civil immigration arrests at courthouses, citing concerns that the arrests were frustrating the operation of the state's criminal justice system. *See id.* at 153.

On April 2, 2018, against the backdrop of this ongoing dispute between the state and federal governments over control of the Commonwealth's courthouses, an immigrant allegedly appeared

---

[1] These arrests were not limited to state courthouses. In 2018, ICE arrested a federal defendant departing sentencing at the U.S. District Court for the District of Massachusetts. Nate Raymond, "*U.S. judge criticizes immigration arrest of Chinese woman in exam scam*," Reuters (Apr. 25, 2017), *available at* https://www.reuters.com/article/us-usa-education-crime/u-s-judge-criticizes-immigration-arrest-of-chinese-woman-in-exam-scam-idUSKBN1HW32G.

in the Newton District Court before Massachusetts District Judge Shelley Richmond Joseph. *See* Declaration of Krista Oehlke ("Oehlke Decl.") Ex. C (Indictment attached to FOIA Request) ¶14. Judge Joseph allegedly ordered his release from state custody after prosecutors dismissed a key charge. *See id.* ¶22. An ICE agent allegedly expected Judge Joseph to release the immigrant through the courthouse lobby exit, where the agent was waiting to arrest him. *See id.* ¶24. Judge Joseph allegedly allowed the immigrant to return to the lockup with his defense attorney and an interpreter, after which he allegedly departed the courthouse through a different exit. *See id.* ¶24.

More than a year later, on April 25, 2019, federal authorities indicted Judge Joseph and her court officer Wesley MacGregor for obstruction of justice.[2] *See id.* ¶¶37-42. The Office of the U.S. Attorney for the District of Massachusetts has admitted that no other United States Attorney has ever brought any claim like this against any judge, outside of the bribery context. *See* Oral Argument, *United States v. Joseph*, No. 20-1787 (1st Cir.) at time 27:45, *available at* http://media.ca1.uscourts.gov/files/audio/20-1787.mp3.

ICE officials appear to have been elated by the indictment of Judge Joseph. "The first of many?" asked Tracy Short, ICE's principal legal advisor. *See* Oehlke Decl. Ex. Q (FOIA production) at 5.  Attorney Short later wrote to senior ICE leadership, "This is a great day." *See id.* at 53. "Indeed," responded ICE Acting Director Matthew Albence. *See id.* ICE Chief of Staff Thomas Blank simply responded, "Blessed." *See id.* at 62.

ICE's delight at indicting a judge based on her control of a defendant's movement in the courthouse was far from universal, however. For example, more than sixty retired Massachusetts judges urged dismissal of the indictment on the grounds that it threatens to severely compromise judicial impartiality and independence. *See* Oehlke Decl. Ex. A (Ad Hoc Committee for Judicial

---

[2] Officer MacGregor was also indicted for perjury in his grand jury testimony.

Independence Amicus Brief, *United States v. Joseph*, 19-10141 (D. Mass.)) at 11 ("[I]f Judge Joseph is prosecuted, every Massachusetts judge in every Massachusetts courthouse will feel a constant external pressure to refrain from actions that might antagonize federal officials.").[3]

The plaintiffs in this case, the ACLU of Massachusetts and American Oversight, are deeply concerned with whether Judge Joseph's prosecution was aimed at pressuring or influencing Massachusetts judges. Whatever the answer might be, there is good reason to believe that key information concerning the genesis of the prosecution in April 2018 will be found in the communications of people within the highest echelons of ICE's management. Indeed, communications of ICE officials might contain this information precisely because ICE officials appear to have believed that it was proper for them to be involved in the decision-making behind the prosecution of Judge Joseph. In November 2019, the *New York Times* reportedly interviewed Thomas Homan, ICE's Acting Director at the time of the alleged incident, concerning the matter. *See* Plaintiffs' Statement of Additional Facts ("PSOF") ¶¶62, 64.  In the interview, Mr. Homan reportedly said, among other things:

- That then-Acting Director Homan "heard about [the event alleged in the Indictment] the same day it happened";

- That Mr. Homan was informed of those events "by Matthew Albence" [then Executive Associate Director for Enforcement and Removal Operations];

- That Mr. Homan "immediately began asking about legal recourse" and "asked 'is there a legal action I could take?'";

- that Mr. Homan believed "[w]e've got to find a U.S. attorney who is willing to indict," and that Mr. Homan "talked to [his] legal" staff about doing this;

- That his "legal staff" said "it would be up to the U.S. attorney's office" whether to proceed.

---

[3] The ACLU Foundation of Massachusetts, Inc. represented the Ad Hoc Committee on Judicial Independence in the filing of that brief.  The Committee is not a party to this case and has taken no position on the issues presented herein.

*See* PSOF ¶64. In light of these remarks, Plaintiffs submitted a FOIA request (the "Request") to ICE two days later, on November 18, 2019. *See* PSOF ¶57. The Request sought the following records from March 15, 2018, through April 25, 2019:

> a. All communications (including emails, email attachments, calendar invitations, text messages, letters, memoranda, or other communications) of the following ICE officials concerning Judge Joseph, Officer MacGregor, and/or the events alleged in the Indictment: [Thomas Homan, Matthew Albence, Ronald Vitiello, or anyone communicating on their behalf; Thomas Blank; Tracy Short; Jon Feere; or Nathalie Asher]
>
> b. All records concerning any investigation by ICE of Judge Joseph, Officer MacGregor, and/or the events alleged in the Indictment, including but not limited to any notes, reports, and memoranda.
>
> c. All records of final guidance, directives, or instructions provided by ICE to [then-U.S. Attorney for the District of Massachusetts Andrew] Lelling or his staff concerning Judge Joseph, Officer MacGregor, and/or the events alleged in the Indictment.

*See* Oehlke Decl. Ex. C; *see also* Defendant's Statement of Facts ("SOF") ¶1; PSOF ¶57.

ICE engaged in some preliminary correspondence with plaintiffs concerning the Request but went silent after February 2020. *See* PSOF ¶¶58, 60, 61. Having heard nothing in over a year, and having never received any responsive records, plaintiffs filed this lawsuit in May 2021. SOF ¶3.

Thereafter, ICE ultimately produced 83 pages of purportedly responsive records, with varying degrees of redaction. SOF Response ¶43. However, to the extent these records contain electronic communications by ICE personnel (such as email) concerning the events at the Newton District Court, the investigation of those events, and Judge Joseph's later indictment, those communications are only dated between March 6, 2019, and April 25, 2019. PSOF ¶66. In other words, ICE failed to locate and produce *any* such communications not only from the date of the alleged incident, but also from the *11 months that followed. Id.* The notion that ICE's senior

leadership was not communicating about the alleged events in the Newton District Court during this yawning gap in time is difficult to believe. Former Director Homan publicly confirmed that he initiated such communications on the same day as the alleged incident. *See* PSOF ¶64. And ICE appears to claim (to justify its asserted FOIA exemptions) that it was, at a minimum, collecting information concerning the progress of the investigation. *See* SOF ¶50.

Consequently, plaintiffs are seeking summary judgment, and are opposing ICE's request for summary judgment, on essentially three issues:

- That ICE unreasonably refused to apply certain additional email search terms, which would likely have located some of the missing emails;

- That ICE unreasonably refused to search other readily available sources of information identified in the Request and likely to contain responsive records, including, among other things, the text messages of certain senior officials; and

- That ICE improperly applied certain FOIA exemptions to withhold responsive materials based on vague, conclusory, or otherwise inadequate justifications.

As explained below, these issues are all matters where ICE bears the burden of proof, which it has manifestly failed to satisfy. Accordingly, plaintiffs request that the Court deny ICE's motion for summary judgment, allow plaintiffs' cross-motion for summary judgment, and enter appropriate orders to remedy these deficiencies.

## ARGUMENT

ICE has the burden in this FOIA matter to demonstrate that it made an adequate search, and that it only withheld information falling within one of the FOIA's enumerated exemptions to disclosure. It cannot do so here.

### I. ICE bears the burden at summary judgment.

With respect to the adequacy of an agency's search, summary judgment for the requestor is appropriate if an agency fails to establish through reasonably detailed affidavits that its search

was reasonably calculated to discover the requested documents, or if the requestor establishes that the agency's search was not made in good faith. *See Maynard v. Cent. Intel. Agency*, 986 F.2d 547, 559-60 (1st Cir. 1993). Similarly, with respect to redactions and other withheld material, "the government agency bears the burden of proving the applicability of a specific statutory exemption." *See Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 50 (1st Cir. 2014). The district court reviews any application of an exemption *de novo*. 5 U.S.C. § 552(a)(4)(B); *see Moffat v. Dep't of Just.*, 716 F.3d 244, 250 (1st Cir. 2013). The exemptions "are to be construed narrowly, with all doubts resolved in favor of disclosure. *See Moffat*, 716 F.3d at 250 (citing *Carpenter v. U.S. Dep't of Just.*, 470 F.3d 434, 438 (1st Cir. 2006)). "[S]ummary judgment for an agency is only appropriate after the agency proves that it has 'fully discharged its [FOIA] obligations.'" *Abdul-Alim v. Wray*, 277 F. Supp. 3d 199, 205 (D. Mass. 2017) (citation omitted).

## II.     ICE did not conduct an adequate search in response to Plaintiffs' requests.

An agency's search cannot be deemed adequate unless the agency "demonstrate[s] beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Stalcup v. Dep't of Defense*, No. 13-11967, 2018 WL 4963169, at *2 (D. Mass. Oct. 15, 2018) (Sorokin, J.) (citation omitted). "The burden is on the agency to justify its response to plaintiff's FOIA request." *Id.* "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Id.* (quoting *Maynard*, 986 F.2d at 563). Here, ICE has not met its burden for at least two reasons.

### A. ICE employed unreasonably narrow email search terms and refused to use reasonable email search terms proposed by the plaintiffs.

First, ICE's unreasonably narrow search terms violated the agency's obligations under FOIA. In responding to FOIA requests, ICE has an obligation to craft search terms that are "reasonably tailored to uncover documents responsive to the FOIA request." *New Orleans*

*Workers' Ctr. for Racial Justice v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 45 (D.D.C. Mar. 4, 2019) (quotation omitted). To be sure, agencies are entrusted with discretion in designing search terms, "but that discretion is not boundless." *Am. Ctr. for Equitable Treatment, Inc. v. Office of Mgmt. & Budget*, 281 F. Supp. 3d 144, 151 (D.D.C. 2017); *W. Res. Legal Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, No. 3:19-CV-01119-AC, 2020 WL 6829767, at *8 (D. Or. Nov. 20, 2020). Agencies have both "a duty to construe [] FOIA request[s] liberally," *Nulankeyutmonen Nkihtaqmikon v. Bureau of Indian Affs.*, 493 F. Supp. 2d 91, 101 (D. Me. 2007) (citation omitted), and to demonstrate "beyond material doubt that its search was reasonably calculated to uncover all responsive documents," *see Johnson v. Cent. Intel. Agency*, 330 F. Supp. 3d 628, 638 (D. Mass. 2018) (citation omitted). "It is axiomatic that 'an inadequate search for records constitutes an improper withholding under FOIA.'" *Rodriguez v. U.S. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) (quotation omitted).

In its August 2021 production, which only yielded 64 pages, ICE's Office of the Chief Information Office ("OCIO") conducted its search with the under-inclusive search terms "Judge Shelley M. Richmond Joseph"; "Judge Joseph"; "Officer Wesley MacGregor"; "Officer MacGregor"; "Andrew Lelling"; "Lelling"; and "Case No. 19-10141-LTS". *See* PSOF ¶25. On September 9, 2021, following discussion, ICE agreed to supplement its search to include the additional terms "Wesley MacGregor," "Shelley Joseph"; "Newton district Court", "Jose Medina-Perez", and "Medina-Perez". *See* SOF ¶28. However, despite its claim to have employed "mutually agreed upon terms," Schurkamp Decl. ¶31, the full group of search terms was never agreed because ICE refused to apply some of the plaintiffs' proposed search terms and connectors, including "Court (w/5) Newton" and "Judge (w/5) Newton". *See* PSOF ¶68. And in the case of an unidentified analyst at the Office of the Executive Secretariat ("OES") and the chief of staff—

whose emails were apparently not collected by OCIO for the primary email search but instead were searched locally—ICE applied even fewer search terms. *See* SOF ¶¶40-45; Schurkamp Decl. ¶¶33-36 (Office of the Chief of Staff search terms: "Judge Joseph, Joseph, Officer MacGregor, and MacGregor"); *id.* ¶¶37-41 (OES search terms: "Shelley M. Richmond Joseph, Shelley Joseph, Judge Joseph, Officer MacGregor, Wesley MacGregor, Newton District Court, Andrew Lelling"). These underinclusive terms fail to meet ICE's legal obligation.

Defendant's searches were inadequate because the search terms ICE employed did not reflect how the subject matter of the request would have typically been discussed. ICE's searches focused on information, like Judge Joseph's full name, that may not have been available around the time of the incident in April 2018, or may never have been used colloquially in email correspondence. Even if the names of the parties involved in the events in April had been known, OCIO's search terms were not designed to capture any documents regarding Judge Joseph or Officer MacGregor, except insofar as ICE personnel referred to both by their full names or formal titles. *See* SOF ¶¶25, 28 (OCIO search referring to Judge Joseph with "Judge Shelley M. Richmond Joseph," "Shelley Joseph," or "Judge Joseph" as search terms). And while the Office of the Chief of Staff did use the last names "Joseph" and "MacGregor" (which ICE may not have known in April 2018), the local searches (i.e., those not conducted by OCIO) otherwise used narrow terms and evidently failed to conduct the complete supplemental search. *See* SOF ¶¶31, 35, 36.

ICE's searches further restricted responsive documents to only those records containing a narrow band of under-inclusive terms. For instance, ICE's search was not designed to capture any documents referring to the Newton District Court by any name besides "Newton District Court." ICE failed to use other terms government officials may have used to refer to the Newton District Court, like "Court" and "Newton" within 5 words of each other and "Judge" and "Newton" within

5 words of each other. PSOF ¶69.  Thus, ICE's search would have failed to capture, for example, contemporaneous emails about an event "at a court in Newton" or about actions taken by "a judge in Newton," phrases which would have triggered the additional search terms proposed by plaintiffs. Instead, however, ICE's narrower search apparently missed all responsive emails sent or received for nearly a year after the event. *See* PSOF ¶66.

Finally, the search terms ICE employed are unreasonable in light of the available factual evidence. Mr. Homan was reportedly communicating about the incident at the Newton District Court starting on the very day it occurred. *See* PSOF ¶64. ICE has shown no reason to conclude that its officials only discussed those events by referring to the formal names and titles of the participants and the court, which may not have been known at the time. *See* PSOF ¶64. In short, ICE's search was not reasonably calculated to capture the information that Plaintiffs requested. As Defendant's search terms are demonstrably "too narrow to yield any meaningful results," *New Orleans Workers' Ctr.*, 373 F. Supp. 3d at 45, the agency's search was inadequate.

## B. ICE unreasonably failed to search additional repositories of records likely to hold responsive records, including ICE personnel text messages.

Second, ICE has failed to meet its burden to demonstrate that its search included all locations—including custodians and file types—likely to contain records responsive to Plaintiffs' FOIA request. FOIA requires agencies to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Windham v. Dep't of Hous. & Urb. Dev.*, 140 F. Supp. 3d 163, 165 (D. Mass. 2015) (quoting *Oleskey ex rel. Boumediene v. U.S. Dep't of Def.*, 658 F. Supp. 2d 288, 294 (D. Mass. 2009)). An agency must search all record systems likely to contain responsive records, not only those most likely to contain them. *See Moradi v. Morgan*, 527 F. Supp. 3d 144, 152 (D. Mass.

2021) (agency must demonstrate that "all files likely to contain responsive materials (if such records exist) were searched").[4]

An agency may rely on affidavits to establish that it has met these standards, but the affidavits must be "relatively detailed and nonconclusory, and . . . [submitted] in good faith." *Maynard*, 986 F.2d at 559. Sufficiently specific agency affidavits may include such details as "the search terms and the type of search performed," and "the structure of the agency's file system, the scope of the search performed, and the method by which it was conducted." *Oleskey*, 658 F. Supp. 2d at 294 (citations and quotation marks omitted). Should an agency decline to search certain locations, to meet its burden, the declaration "must at least include the agency's 'rationale for searching certain locations and not others.'" *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 69 (D.D.C. 2016) (citation omitted); *cf. ACLU of Massachusetts, Inc. v. U.S. Immigr. & Customs Enf't*, 448 F. Supp. 3d 27, 43 (D. Mass. 2020) (finding conclusory representations insufficient "for the Court to conclude that ICE reasonably identified and searched all appropriate electronic locations.") (internal citation omitted). Moreover, should a review of the record raise "substantial doubt [as to the adequacy of the agency's search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment [for the agency] is inappropriate." *Oleskey*, 658 F. Supp. 2d at 295 (citation omitted).

---

[4] *Cf. Maynard*, 986 F.2d at 563 (rejecting plaintiff's argument that search was inadequate because agency initially indicated only that records systems "*most* likely" to have records were searched, where agency subsequently submitted declaration clarifying that *all* records systems likely to contain information were searched); *see also Stalcup v. Dep't of Def.*, No. 13-CV-11967-LTS, 2018 WL 4963169, at *3 (D. Mass. Oct. 15, 2018) (noting First Circuit had remanded the case in part because agency's affidavit had not "contain[ed] the 'necessary' statement that the entire universe of files likely to contain responsive material was searched." (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

ICE has failed to meet these standards here. Not only does ICE fail to sufficiently explain the locations it did and did not search, but glaring gaps in ICE's production of records and other positive indications of overlooked materials underscore the inadequacy of the agency's search. *See Oleskey*, 658 F. Supp. 2d at 295.

### 1.   ICE improperly refused to search for text messages Plaintiffs requested.

Notwithstanding ICE's claim that it "conducted an exhaustive search of all electronic files of the individual ICE employees named in the FOIA request," Def.'s Br. at 6, what the agency does not say is that it expressly refused to search for an entire category of records explicitly named in the request—text messages—and there is no evidence that it did so.  PSOF ¶75. There is also no evidence that searching these text messages would have been impracticable for ICE.  *See* PSOF ¶79. Nor is there any evidence that such text messages have been lost due to any failure to retain electronic devices or the data contained in such devices. *See* PSOF ¶77. In short, despite Plaintiffs' informing ICE that its failure to search text messages is a disputed issue in the case, *see* PSOF ¶74, ICE has made no effort to explain why it did not do that or why it should not be required to do so.

To be sure, in its declaration, ICE cites a purported internal DHS policy concerning the use of text messages and similar platforms. Schurkamp Decl. ¶14 (emphasis added). As a threshold matter, ICE has not provided the Court or Plaintiffs with a copy of this policy, nor does it appear to be publicly available. *See* SOF Response ¶10. Plaintiffs object to ICE's reliance on testimony purported to describe a writing, when it could have simply submitted the document and allowed both the Court and the Plaintiffs to review its complete contents. *See* Fed. R. Evid. 1002 (best evidence rule). But even setting the evidentiary issue aside, ICE has not explained why this policy is relevant to Plaintiffs' specific request—and ICE's explicit refusal—that text messages be searched. *See* Oehlke Decl. Ex. R. Indeed, ICE makes no attempt to tie this purported policy to the search in this case at all, instead referencing it off-handedly in a section describing its standard

11

procedures and making no further mention of text messages or similar records in later sections describing the request made or the search undertaken in this particular case. *See ACLU of Massachusetts, Inc.*, 448 F. Supp. 3d at 44 (reference to general agency practice insufficient to explain why targeted searches in response to particular request were not undertaken).

Moreover, the policy provides no assurances that ICE's search was adequately designed to identify all agency records[5] responsive to Plaintiffs' FOIA request. While the policy purportedly addresses *retention* of federal records via text message, it evidently does not speak to whether agency personnel *used* such communication methods. *See* Schurkamp Decl. ¶¶14–16. Indeed, the purported policy does not prohibit the use of such platforms in personnel's day-to-day work, but evidently only requires that any "internal DHS" systems (without reference to employees' personal devices) "must display a banner/disclaimer prohibiting the system to be used to *formally* transact agency business or to document the activities of the organization." Schurkamp Decl. ¶15 (emphasis added).[6] Moreover, ICE goes on to state that personnel who *nevertheless do* transact business via these platforms must "establish and maintain a separate record of the communication," thereby specifically contemplating that personnel will in fact use such communication methods for official purposes. Schurkamp Decl. ¶16. Indeed, ICE's failure to produce any communications from

---

[5] The policy ICE cites appears to discuss "federal records," which holds a distinct and narrower definition than "agency records" that must be provided in response to a FOIA request. *See* FOIA Counselor, U.S. Dep't of J., *What Is an 'Agency Record?'*, FOIA Update, Vol. 11, No. 1 (Jan. 1, 1980), https://www.justice.gov/oip/blog/ foia-update-foia-counselor-what-agency-record ("It seems clear that for FOIA purposes, 'records' includes *all* tangible recordations of information regardless of whether they are records under 44 U.S.C. § 3301.").

[6] It is unclear what is meant by "formally transact agency business," and Plaintiff again notes that federal records an agency must preserve pursuant to the Federal Records Act are not fully coextensive with agency records an agency must produce in response to a FOIA request. *See supra* note 5.

former Acting Director Homan, *see* PSOF ¶67, could perhaps be explained at least in part if he were communicating by text messages, which ICE refused to search.

In short, ICE's refusal to search these records is unreasonable under the circumstances. ICE's declaration fails to acknowledge both Plaintiffs' specific request for text messages and the agency's express refusal to search for them. Its sole allusion to these types of records appears in the general overview section of its affidavit, divorced from the description of the specific request and search in this case. And that brief discussion actually *invites* questions about whether such records may exist, as opposed to disposing of the matter. Particularly where, as further described below, positive indications of overlooked materials have already called the search into question, ICE's refusal to search for the text messages Plaintiffs requested is unreasonable.

### 2.   ICE improperly limited the offices and custodians included in its search.

ICE also has not adequately explained the custodians it selected (and did not select) for its search. First, although Plaintiffs specifically sought communications from individuals communicating on behalf of Homan, Albence, and Vitiello, such as assistants or schedulers, Oehlke Decl. Ex. C, OCIO's email search included only the custodians listed by name in Plaintiffs' request, without any explanation for this omission, *see* Schurkamp Decl. ¶27.

Second, for the searches conducted by offices other than OCIO, ICE provided only the barest statements in purported explanation of which custodians it chose to search. While its affidavit explains in some detail the program offices selected for the search, the custodians within those offices were selected "based on [their] duties," with no further elucidation. Schurkamp Decl. ¶¶35, 39, 44. While Field Office Director Natalie Asher—an official expressly named in Plaintiffs' FOIA request—makes sense as a custodian, ICE's unexplained choice to include her as the *sole* custodian from ERO, in response to a request for records concerning any investigation into an incident related to removal operations, does not.  Oehlke Decl. Ex. C; Schurkamp Decl. ¶¶33, 35.

The other two offices searched also identified only a single custodian each, identified only by position and not by name, and again, "based on [their] duties," without further information. Schurkamp Decl. ¶¶39, 44.  These conclusory statements are plainly insufficient for Plaintiffs and the Court to assess the adequacy of these searches. *See ACLU of Massachusetts, Inc.*, 448 F. Supp. 3d at 43 (conclusory representations insufficient for court to conclude ICE "reasonably identified and searched all appropriate" locations).

> **3.   Other positive indications of overlooked materials call the search into question, particularly the exclusion of ICE HSI from the searched locations.**

Lastly, positive indications of overlooked materials indicate that still other locations should have been included in ICE's search. *See Oleskey*, 658 F. Supp. 2d at 295. As the most straightforward example, ICE describes in its pleadings an internal Homeland Security Investigations (HSI) memo that it withheld, which contains information obtained through the course of "the investigation of Judge Joseph and Officer MacGregor." Schurkamp Decl. ¶¶54–56. Despite finding this record during its search for records responsive to Plaintiffs' request (which sought, among other things, "[a]ll records concerning any investigation by ICE of Judge Joseph, Officer MacGregor, and/or the events alleged in the Indictment, including but not limited to any notes, reports, and memoranda"), ICE failed to include HSI in its search for responsive records. *See* PSOF ¶73; *see also Johnson v. Cent. Intel. Agency*, 330 F. Supp. 3d 628, 641 (D. Mass. 2018) ("[W]hen leads to other documents arise during the course of a search for responsive records, the agency must expand the scope of its search.") (citation omitted).

Moreover, the aggregate results of the search, including the date ranges and the overall volume of responsive materials produced, comprise additional positive indications of overlooked materials. Given the *New York Times*' reporting that former Acting Director Homan was aware of the alleged April 2018 incident on the day it occurred, his reported interest in the matter, and ICE's

own documents and declaration confirming that HSI was at least gathering information from the investigation, it is difficult to understand how ICE's search for records related to the incident and investigation yielded no relevant records from before March 2019. *See* PSOF ¶66.

Relatedly, given ICE's apparent independent investigation into the matter, its identification of a mere 83 related pages calls into serious question the adequacy of its search. *See Oleskey*, 658 F. Supp. 2d at 295; *Johnson*, 330 F. Supp. 3d at 641. Furthermore, the total absence of any records originating from or even copying former Acting Director Homan, himself—despite his reportedly immediate and intense interest in the matter—is mystifying. It is inconceivable that the top official at the agency, with a demonstrated interest in the matter, would have had no communications with agency personnel tasked with investigating it. *See Oleskey*, 658 F. Supp. 2d at 295.

### III.     ICE improperly applied Exemption (b)(7)(A).

ICE has failed to justify its determination to withhold three full pages and redact five partial pages pursuant to FOIA Exemption (b)(7)(A), relying only on inadequate, generalized and conclusory claims that disclosure of these records could interfere with enforcement proceedings. Exemption (b)(7)(A) permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "To justify withholding [a record pursuant to Exemption (b)(7)(A)], the [agency] must [] demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (internal quotation marks omitted); *LeMaine v. I.R.S.*, No. CIV. 89-2914-WD, 1991 WL 322616, at *5 (D. Mass. Dec. 10, 1991).

15

ICE has failed to carry its burden to show that release of these records could reasonably be expected to interfere with pending enforcement proceedings. *LeMaine*, 1991 WL 322616, at *5 ("[T]he agency must make clear how disclosure would interfere with enforcement proceedings.") (citing *Keys v. United States Dept. of Justice,* 830 F.2d 337, 340 (D.C. Cir. 1987); *Curran v. Dept. of Justice,* 813 F.2d 473, 474 (1st Cir. 1987)). As with any claim of exemption, the agency bears the burden of making a specific showing that a particular exemption applies to the particular document in question. *See Moffat v. U.S. Dep't of Just.*, No. CIV.A. 09-12067-DJC, 2011 WL 3475440, at *14 (D. Mass. Aug. 5, 2011), *aff'd*, 716 F.3d 244 (1st Cir. 2013) ("When an agency withholds a responsive record pursuant to an exemption, the agency must provide a description of the withheld record and a detailed explanation of why such an exemption applies."). Conclusory statements and generic invocations of interference with enforcement proceedings are insufficient. *LeMaine*, 1991 WL 322616, at *3, *6 ("declin[ing] to defer to the generic and conclusory language" in agency affidavits and finding "no showing that release of the records would be premature or result in specific harm," and agency had "failed to provide sufficient evidence that release of these records would interfere with enforcement proceedings").

And yet conclusory, generic invocations are all ICE relies on in this case. As a threshold matter, ICE states only that "[r]elease of these records could *potentially* disclose information that discusses, describes, or analyzes evidence." Schurkamp Decl. ¶57 (emphasis added). Only a small volume of withheld pages are at issue at this stage; if ICE cannot state more unequivocally what those handful of pages contain, its exemption claims cannot be credited.

As for specific, potential interference, Defendant makes two generic claims. First, ICE states simply that disclosure of information about witnesses "could endanger the witnesses or sources, or at a minimum expose them to intimidation or harm," *id.*, without explanation of why

that may be the case in this particular proceeding. Indeed, while ICE claims that a withheld record "contain[s] specific names of law enforcement personnel, and/or identifying [sic] potential witnesses . . . interviewed in the investigation . . . which have not been publicly released," Schurkamp Decl. ¶ 56, the identify of any witnesses to an incident that occurred in open court is surely not a mystery. Furthermore, though ICE expressly states that witness identities have not been publicly released, in the same sentence, it references "information gathered from these interviews" with no claim that the latter is not already public. *Id.* To the extent any information in the withheld records *has* been previously released, the exemption cannot apply. *See UtahAmerica Energy v. Dep't of Labor*, 700 F. Supp. 2d 99, 108 (D.D.C. 2010) (finding withholding of reports not justified when they were available on agency's website). Even if the witness identities had not previously been released, while ICE is not required to demonstrate that its stated concerns will certainly come to pass, it must show with at least some particularity that the possibility exists. Merely stating, in conclusory fashion, that generic "endanger[ment]," "intimidation or harm" may come to the witnesses, Schurkamp Decl. ¶57, without more, is insufficient, *Kay v. F.C.C.*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) (finding agency sufficiently showed possibility of witness intimidation with evidence that specific, prospective witnesses had expressed such a fear); *Alyeska Pipeline Serv. Co. v. E.P.A.*, No. CIV.A. 86-2176, 1987 WL 17071, at *3 (D.D.C. Sept. 9, 1987), *aff'd sub nom. Alyeska Pipeline Serv. Co. v. U.S. E.P.A.*, 856 F.2d 309 (D.C. Cir. 1988) (finding specific relationship between law enforcement target and witness gave reasonable inference of potential for witness intimidation, sufficient to meet agency's burden).

Second, ICE vaguely asserts that "evidence, and information about evidence in documents, is pertinent and integral to potential investigations and any resulting prosecutions, and premature

disclosure of such evidence would adversely affect the Government's ability to prepare for trial and prosecute offenders." Schurkamp Decl. ¶57. That assertion amounts to nothing more than a generic description of "evidence" as a general principle. Permitting ICE to withhold records based on that statement, without even a minimal additional showing, would swallow the rule Congress created by enacting Exemption (b)(7)(A). Moreover, even if either of ICE's generic, conclusory claims were adequate, the agency has failed to contend with the fact that claims of potential interference become even more attenuated the further along a proceeding has progressed. *See LeMaine*, 1991 WL 322616, at *6 ("I[I]nterference with enforcement proceedings has been found where disclosure would impede investigation *prior* to the enforcement proceeding. Here, however, there has been no showing that release of the records would be premature or result in specific harm.") (emphasis in original) (internal citations omitted). Where, as here, the proceeding is well past early stages, with an indictment that issued *almost three years ago*, there is even less reason to believe Exemption (b)(7)(A)'s protections are warranted. *See id.*

In a last-ditch effort to avoid disclosing these records, ICE asserts in its *Vaughn* index that other exemptions "could protect the information," *Vaughn* Index at 1–3, but makes no effort to explain why or how those exemptions apply. ICE states these pages include "withholdings that Plaintiffs have not agreed to challenge under FOIA Exemptions (b)(5), (b)(6), and (b)(7)(C)," Schurkamp Decl. ¶49 n.2. However, ICE's original production included minimal (b)(5) redactions, and the agency later agreed to "remove all Exemption 5 withholdings." *See* Schurkamp Decl. ¶50; PSOF ¶70. When ICE rereleased the records with revised redactions, they added a reference to Exemption (b)(5) to page 60, but Plaintiffs do not concede that Exemption (b)(5) applies to this page absent the requisite justification from Defendant. As for Exemptions (b)(6) and Exemption (b)(7)(C), ICE ignores that Plaintiffs did in fact dispute some of those redactions. *See* PSOF ¶71.

18

Should the Court agree with Plaintiffs that Defendant has not adequately justified its Exemption (b)(7)(A) withholdings and redactions, the majority of the remaining disputed withholdings and redactions should be lifted, as follows:

- The pages withheld or redacted solely pursuant to Exemption (b)(7)(A) must be released.

- Exemptions (b)(6) and (b)(7)(C), FOIA's privacy exemptions, are often asserted to protect only limited portions of records like those at issue in this case, such as certain email addresses, phone numbers, or the names of certain personnel. While these exemptions could protect broader swaths of information (for example, if an agency employee included a paragraph about a personal matter in an otherwise official communication), there is no indication that is the case here.[7] Accordingly, if Exemption (b)(7)(A) does not apply to these records, ICE will likely need to lift much of the disputed withholdings, segregating and redacting only those small portions appropriately withheld pursuant to the privacy exemptions. *See* 5 U.S.C. § 552(b) (agency must produce "[a]ny reasonably segregable portion of a [requested] record").

- As explained above, Plaintiffs do not concede that Exemption (b)(5) applies to page 60. Defendants should, at a minimum, provide further justification for this withholding in their opposition to the cross-motion.

- Finally, while Defendants now assert that FOIA Exemption (b)(7)(E) may apply to certain of the withheld records, *Vaughn* Index at 3, they have never previously made this claim with respect to any specific portions of their productions,[8] and Plaintiffs do not concede that it applies. At a minimum, Defendant must provide justification for any withholdings it seeks to make pursuant to this exemption, including sufficient information for Plaintiffs and this Court to assess the viability of such claim. *See Moffat*, 2011 WL 3475440, at *14 (noting agency's obligation to "provide a detailed explanation of why [a claimed] exemption applies" to a withheld record).

---

[7] For instance, throughout ICE's productions in this case, the privacy exemptions have been asserted over only certain email addresses, personnel names, and phone numbers.  The agency has not asserted these exemptions, standing alone, over larger portions of material.

[8] While Defendant mentioned Exemption (b)(7)(E) in the cover letters for its productions, none of the redactions nor the slips sheets substituted for withheld-in-full pages reference this exemption. Oehlke Decl. Ex. Q. Thus, Defendant has never properly or adequately invoked it. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006).

## CONCLUSION

For all the foregoing reasons, ACLUM and American Oversight respectfully request that the Court deny ICE's motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment, including by ordering:

(a) that ICE conduct a reasonable search of electronic mail, including by using all of plaintiffs' proposed search terms;

(b) that ICE conduct reasonable searches of other repositories of records, including the text messages of the identified officials, and the records of HSI; and

(c) that ICE release certain pages and portions of pages currently being withheld under claimed exemptions, as set forth in more detail above.

Dated: January 11, 2022                           Respectfully submitted,

*/s/ Krista Oehlke*
Krista Oehlke (BBO #707566)
Daniel L. McFadden (BBO #676612)
Matthew R. Segal (BBO #654489)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
(617) 482-3170
koehlke@aclum.org

*Counsel for Plaintiff American Civil Liberties
Union of Massachusetts, Inc.*

*/s/ Katherine M. Anthony*
Katherine M. Anthony (BBO #685150)
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3918
katherine.anthony@americanoversight.org

*Counsel for Plaintiff American Oversight*

20

**LOCAL RULE 7.1 STATEMENT**

I hereby certify that ICE has previously filed a motion for summary judgment opposing the relief requested herein.

*/s/ Krista Oehlke*
Krista Oehlke

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served today on all parties via the Court's CM/ECF system.

*/s/ Krista Oehlke*
Krista Oehlke

21