UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN OVERSIGHT,

    Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT

    Defendant.

C.A. No. 1:21-cv-10761-AK

**REPLY IN SUPPORT OF PLAINTIFFS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    ICE's refusal to search for text messages is unreasonable. .........................................2

    II.    ICE's reply/cross-opposition confirms that it did not conduct an adequate email search. ...................................................................................................................5

    III.    ICE's reply/cross-opposition confirms it did not search all relevant offices. ............7

    IV.    ICE has still failed to meet its burden to justify its claims of exemption. .................8

CONCLUSION ..............................................................................................................................10

CERTIFICATE OF SERVICE .....................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*ACLU of Mass. v. ICE,*
  448 F. Supp. 3d 27 (D. Mass. 2020) ...............................................................................2, 5

*Brady v. Maryland,*
  373 U.S. 83 (1963) ................................................................................................................3

*Campbell v. Dep't of Just.,*
  164 F.3d 20 (D.C. Cir. 1998) ...............................................................................................8

*Ctr for Biological Diversity v. EPA,*
  279 F. Supp. 3d 121 (D.D.C. 2017) .....................................................................................5

*Giglio v. United States,*
  405 U.S. 150 (1972) ..............................................................................................................3

*Judicial Watch v. U.S. Dep't of Just.,*
  373 F. Supp. 3d 120 (D.D.C. 2019) .....................................................................................3

*Moffatt v. U.S. Dep't of Just.,*
  No. CIV.A. 09-12067-DJC, 2011 WL 3475440 (D. Mass. Aug. 5, 2011)
  *aff'd*, 716 F.3d 244 (1st Cir. 2013) .....................................................................................9

*NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Just.,*
  463 F. Supp. 3d 474 (S.D.N.Y. 2020) .................................................................................7

*Oleskey ex rel. Boumediene v. U.S. Dep't of Def.,*
  658 F. Supp. 2d 288 (D. Mass. 2009) .................................................................................6

*Stalcup v. Naval Special Warfare Command,*
  No. 15-2107 (1st Cir. Feb. 8, 2017) ....................................................................................7

*Stalcup v. Naval Special Warfare Command,*
  No. 13-CV-11966-WGY (D. Mass. Aug. 25, 2015) ..........................................................7

*Stevens v. Broad. Bd. of Governors,*
  18-5391, 2021 WL 1192672 (N.D. Ill. Mar. 30, 2021) .....................................................5

*Union Leader Corp. v. U.S. Dep't of Homeland Sec.,*
  749 F.3d 45 (1st Cir. 2014) ................................................................................................10

**Statutes**

18 U.S.C. § 3500 ...........................................................................................................................3

**Other Authorities**

John W. Schoen, *Trump—Without Evidence—Accuses Mueller of 'Illegally' Deleting FBI Text Messages*, CNBC (June 26, 2019) ..........................................................................................4

Letter from the Archivist of the United States, White House National Archives (Feb. 18, 2022)..3

## Rules and Regulations

D. Mass. L.R. 116.2 ........................................................................................................................3

D. Mass. L.R. 116.4 ........................................................................................................................3

D. Mass. L.R. 116.8 ........................................................................................................................4

D. Mass. L.R. 116.9 ........................................................................................................................3

Fed. R. Crim. P. 16(a)(1)(E) ............................................................................................................3

**INTRODUCTION**

ICE's Reply and Cross-Opposition ("Reply/Cross-Opp.") contains multiple admissions and concessions that support denial of its motion for summary judgment. ICE's submissions not only fail to satisfy its burden of proof, but actually prove that it unreasonably refused to search entire categories of responsive records, and also raise serious unanswered questions about whether it intentionally destroyed some of those records.

For example, ICE now asserts that, during the Trump Administration, it was "standard practice at ICE to factory reset/securely wipe/destroy and delete all contents of mobile phone devices as they were being taken out of service." *See* Decl. of Richard Clark ("Clark Decl.") ¶16. ICE makes this startling confession in an effort to be categorically excused from searching for text messages responsive to the express terms of Plaintiffs' FOIA request. This new assertion raises far more questions than it answers, however. For instance, ICE's vague statement does not explain who ordered this "practice," when it started, or when it ended. Nor does ICE point to any written guidance memorializing such a "practice" or explaining its implementation. And ICE fails to link any such practice to the specific custodians relevant to this case: it says nothing about what devices were in fact issued to those people, if and when those devices were returned, whether ICE actually destroyed the data on those particular devices pursuant to its "practice," and where those devices are located today. Without answering these and other basic questions, ICE cannot prove that it should be relieved of all obligations under FOIA to search for text messages that are responsive to Plaintiffs' request, and is not entitled to summary judgment.

Beyond that, ICE admits, or at least does not genuinely dispute, numerous key facts that preclude summary judgment in its favor, including that:

- The *New York Times* published statements by Thomas Homan, ICE's Acting Director in April 2018, indicating that ICE senior leadership learned of the incident

1

- alleged in Judge Joseph's indictment and began responding to it on the same day the incident allegedly happened. *See* Pls.' Statement of Facts ("PSOF") ¶¶62–64.

- Nevertheless, there is an 11-month gap in ICE's production. Judge Joseph's indictment alleges events in April 2018. But ICE only produced electronic communications about those events and any related investigation from March 2019 or later; those produced from other time periods are unrelated. *See* PSOF ¶66.

- Notwithstanding this gap, ICE affirmatively refused to apply the additional search terms "court" and "newton" within five words of each other, and "judge" and "newton" within five words of each other. *See* PSOF ¶69 & Response.

- Further, even after locating records showing that Homeland Security Investigations ("HSI") actively monitored or conducted the federal investigation of Judge Joseph, ICE did not search any records from HSI. *See* PSOF ¶73 & Response; Reply/Cross-Mot. at 9–10; *see also* Decl. of Krista Oehlke ("Oehlke Decl.") Ex. Q at 73 (summary of the "HSI Boston investigation").

- Finally, with respect to the records ICE *did* locate, ICE failed to address the inadequacies Plaintiffs highlighted with its purported justifications for its withholdings, effectively conceding that some of the claimed exemptions do not apply and failing to offer factual support to explain why others do.

A court in this district recently faced a similar scenario. *See ACLU of Mass. v. ICE*, 448 F. Supp. 3d 27, 44–46 (D. Mass. 2020). That court granted the plaintiff partial relief and also authorized the plaintiff to take "limited focused discovery" to develop a record on the outstanding questions of fact. *See id.* Plaintiffs respectfully suggest that this Court could do the same here by (a) denying ICE's motion for summary judgment, (b) ordering limited discovery focused on whether ICE retained or destroyed text messages responsive to Plaintiffs' FOIA request, and (c) granting Plaintiffs' cross-motion for summary judgment in all other respects.

## ARGUMENT

### I.    ICE's refusal to search for text messages is unreasonable.

Plaintiffs seek relief in part because ICE "expressly refused to search for an entire category of records explicitly named in the request—text messages," and because the 11-month gap in responsive emails strongly suggests that ICE officials were using other methods of electronic

2

communication.[1] *See* Opp./Cross-Mot. at 11–13. ICE does not dispute that text messages are records subject to FOIA. *See* Reply/Cross-Opp. at 8–9; *see also Judicial Watch v. U.S. Dep't of Just.*, 373 F. Supp. 3d 120, 127 (D.D.C. 2019) (ordering text message search). ICE also does not dispute that its officials conducted business by text message, and it actually submitted a policy that confirms they do. *See* Clark Decl. Ex. A (Policy Directive 141-03) (addressing "business communications . . . made via chat, text, or instant message"). Yet ICE makes the startling claim that it has no obligation to search for responsive text messages because it had a "standard practice" of destroying all data on the devices used to exchange them. *See* Clark Decl. ¶16.

This vague assertion only raises questions. For example: Where did this "practice" come from? When did it start, and when did it end? Is there written guidance memorializing its existence? What were the contours of its implementation? Did it apply to all ICE employees? What types of devices were included in this "practice"? And did the "practice" include any exceptions to permit ICE (a law enforcement agency) to preserve records as required not only by federal records retention laws, but also as necessary to satisfy its *Brady*, *Giglio*, and *Jencks* Act obligations to the defendants it prosecutes?[2] Is ICE's practice consistent with Local Rule 116.9, which requires preservation of "[a]ll contemporaneous notes, memoranda, statements, reports, surveillance logs, recordings, and other documents (*regardless of the medium in which they are stored*)" if they are

---

[1] Notably, the National Archives recently confirmed that Trump White House staffers conducted official business via electronic messaging in a manner that evaded ordinary records preservation practices. *See* Feb. 18, 2022 Letter, ¶5, https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf.

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963) (material exculpatory evidence); *Giglio v. United States*, 405 U.S. 150 (1972) (material impeachment evidence); 18 U.S.C. § 3500 (prior statements of government witness); *see also* Fed. R. Crim. P. 16(a)(1)(E) (producing documents and objects to defendant); D. Mass. L.R. 116.2 (disclosing exculpatory evidence to defendant) & 116.4 (disclosing audio/video recordings to defendant).

relevant to an ongoing or contemplated prosecution? *See* D. Mass. L.R. 116.9 (emphasis added). Does ICE comply with or ignore the U.S. Attorney's mandatory preservation instructions? *See* D. Mass. L.R. 116.8. Is ICE really saying that its "standard practice" was to intentionally delete *all* data about the investigation and prosecution of Judge Joseph from *all* mobile devices of *all* the people involved while that prosecution *has been pending* before both the U.S. District Court for the District of Massachusetts and the U.S. Court of Appeals for the First Circuit?

Beyond those basic questions about the general "practice" at issue, ICE says nothing about whether, how, and when this "practice" was actually applied to the specific devices issued to the particular custodians relevant to this case. What devices did ICE issue to them? Have those devices been returned? Does ICE have evidence that the data on these specific devices was destroyed pursuant to this "practice"? And does ICE know where those devices are now, and could they be checked to see if the contents have actually been deleted? The Court and the Plaintiffs are left to guess. Not only has ICE failed to meet its burden, but its conclusory—and rather puzzling[3]—claims raise serious questions that warrant targeted discovery to prepare a factual record concerning what ICE did, can, and should search. *See ACLU of Mass.*, 448 F. Supp. 3d at 44–45 (collecting cases).

ICE cites Policy Directive 141-03 (Feb. 23, 2018) ("PD 141-03") as ostensible evidence that text messages were *both* preserved *and* destroyed. *Compare* Reply/Cross Opp. at 8 (suggesting PD 141-03 causes texts to be saved on computers/email), *with* Clark Decl. ¶15 (PD 141-03 means

---

[3] The Trump Administration was certainly aware that the destruction of mobile device data could have legal implications. *See, e.g.*, John W. Schoen, *"Trump—Without Evidence—Accuses Mueller of 'Illegally' Deleting FBI Text Messages*," CNBC (June 26, 2019) (Then-President Trump: "Robert Mueller terminated their text messages together. He terminated them. They're gone. And that's illegal. That's a crime."), https://www.cnbc.com/2019/06/26/trump-accuses-mueller-of-illegally-deleting-fbi-text-messages.html.

texts reside on phones for only "a brief and transitory" time). On its face, however, PD 141-03 does neither. *See* Clark Decl. Ex. A. Although the policy encourages staff to write memoranda describing certain communications, it does not require or even encourage them to copy the actual messages onto email or other media. *See id.* Nor does the policy suggest that text messages should be deleted from the sending or receiving device. *See id.* To the extent the policy is relevant, it is only to confirm that ICE employees use text messages to conduct official business. *See id.*

Further, the two cases ICE cites are inapposite. In *Stevens v. Broadcasting Board of Governors*, ICE argued that it "does not have the technical capability to search text messages," whereas in this case ICE admits that it could. *Compare* No. 18-5391, 2021 WL 1192672, at *2 (N.D. Ill. Mar. 30, 2021), *with* Clark Decl. ¶12 (ICE can access text messages with employee cooperation or forensic extraction). And in *Center for Biological Diversity v. EPA*, the court actually *denied* the agency's motion for summary judgment in relevant part due to an apparent failure to search text messages, and ordered the agency to either search text messages or provide additional information sufficient to demonstrate that such a search is infeasible. *See* 279 F. Supp. 3d 121, 143 (D.D.C. 2017). Here too, the Court should deny ICE's motion for summary judgment and authorize limited discovery focused on whether ICE retained or destroyed text messages responsive to Plaintiffs' FOIA request. *See ACLU of Mass.*, 448 F. Supp. 3d at 44–45.

**II.  ICE's reply/cross-opposition confirms that it did not conduct an adequate email search.**

There is no genuine dispute that ICE unreasonably refused to apply the additional search terms Plaintiffs requested when it appeared records had likely been overlooked.[4] *See* Opp./Cross-

---

[4] ICE claims the full set of search terms was "agreed," *see* First Schurkamp Decl. ¶31, but that is wrong. As documented in the contemporaneous correspondence, ICE refused to apply some of

Mot. at 9–11. For example, ICE does not genuinely dispute the 11-month gap in the agency's production of records regarding the investigation of Judge Joseph, the total absence of records sent or received by former Acting Director Homan, nor its refusal to use the additional search terms Plaintiffs requested. *See* Reply/Cross-Opp. at 2, 5, 6. ICE also does not adequately defend the unreasonably narrow search terms it did use, but rather baldly asserts that "locating individuals by their names is the most logical and reasonable avenue to locate records," *see id.* at 6, and dismisses the statements by its own Acting Director as mere "speculation," *see id.* at 10.

Beyond that, there are other significant indicators of missed records. ICE indicates that it conducted an investigation into the events underlying the indictment, *see id.* at 12, and yet the overall volume of its production obviously does not match: it produced only 83 pages of records, many of which are copies of public newspaper articles, *see* Def.'s Statement of Facts ("SOF") Response ¶43; Oehlke Decl. Ex. Q. And ICE still fails to supply an explanation for the custodians it selected—and did not select—for its search. *See* Opp./Cross-Mot. at 13–14. It makes the blanket statement that an agency is not "required" to search the files of administrative staff, *see* Reply/Cross-Opp. at 9, but does not address the arguments Plaintiffs raised in their opposition, *see* Opp./Cross-Mot. at 13–14 (noting ICE selected custodians "based on [their] duties," with no further explanation). Where, as here, review of the record raises "substantial doubt [as to the adequacy of the agency's search], particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment [for the agency] is inappropriate." *Oleskey ex rel. Boumediene v. U.S. Dep't of Def.*, 658 F. Supp. 2d 288, 295 (D. Mass. 2009) (citation omitted); *see also NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Just.*, 463 F. Supp. 3d 474,

---

Plaintiffs' proposed terms, including "Court (w/5) Newton" and "Judge (w/5) Newton". *See* Oehlke Decl. Ex. M; Opp./Cross-Mot. at 9–11; PSOF ¶68.

487 (S.D.N.Y. 2020).

Finally, ICE leans heavily on an unpublished decision, *Stalcup v. Naval Special Warfare Command*, No. 15-2107 (1st Cir. Feb. 8, 2017), in purported support of its position that news articles are not evidence of missing records. Reply/Cross-Opp. at 10. ICE's reliance is misplaced. In that case, the plaintiff cited a 2013 article about the raid that killed Osama bin Laden in 2011 to suggest the military was covering up documents about the TWA Flight 800 crash that happened in 1996. *Stalcup v. Naval Special Warfare Command*, No. 13-CV-11966-WGY (D. Mass. Aug. 27, 2015). The First Circuit declined to draw inferences about the adequacy of the agency's search from an article about a completely different event that happened 15 years later. *Stalcup*, No. 15-2107 at 2–3. But that is obviously not the situation here: the *New York Times* article includes statements about the exact subject of the Plaintiffs' request, and those statements were made by the person who was literally in charge of the agency at the time of underlying events. It is hard to imagine *better* evidence that ICE, including its senior leaders, started creating records about Judge Joseph in April 2018. The Court should deny ICE's motion for summary judgment, and order ICE to conduct a reasonable email search, including by using all of Plaintiffs' proposed search terms.

**III.   ICE's reply/cross-opposition confirms it did not search all relevant offices.**

In their opposition/cross-motion, Plaintiffs argued that other locations should have been included in ICE's search. *See* Opp./Cross-Mot. at 14–15. In response, ICE actually highlights that its search of *another* office, ICE's Office of the Chief Information Office ("OCIO"), did show that HSI possessed responsive records. *See* Reply/Cross-Opp. at 10 ("Not surprisingly, HSI documents were located in the search of the OCIO files."); *see also* First Schurkamp Decl. ¶¶54–56 (describing internal HSI memo that ICE withheld). ICE's *Vaughn* Index similarly reflects HSI's involvement in the matter. *See Vaughn* Index at 3. Yet ICE resists its obligation to follow this

7

obvious lead,[5] instead advancing the illogical argument that "any documents HSI potentially produced thereto would have been retrieved in the OCIO email and data files." *See* Reply/Cross-Opp. at 10. But no HSI custodians were included in that search, and moreover, the agency's search of other offices yielded additional responsive records that were not identified in its OCIO search. *See* Second Schurkamp Decl. ¶13–14. The fact that *some* HSI documents were incidentally located in OCIO's search proves that ICE must *also* search HSI, not the opposite. *See Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998). The Court should grant Plaintiffs' motion for summary judgment and order ICE to search HSI for responsive records.

**IV.     ICE has still failed to meet its burden to justify its claims of exemption.**

Despite the opportunity to remedy its inadequate exemption justifications, ICE largely ignores the arguments in Plaintiffs' opposition/cross-motion. Indeed, ICE almost entirely fails to engage with Plaintiffs' arguments concerning its Exemption (b)(7)(A) claims, instead repeating (mostly verbatim) the exact points it relied upon in its opening brief and declaration:

- ICE ignores Plaintiffs' point that ICE said only that release of the records "could *potentially* disclose information that discusses, describes, or analyzes evidence," Opp./Cross-Mot. at 16 (quoting First Schurkamp Decl. ¶57) (emphasis added), simply repeating the exact same language it previously offered, *see* Reply/Cross-Opp. at 13 (citing First Schurkamp Decl. ¶57).

- Similarly, ICE ignores Plaintiffs' point that, while ICE stated that certain witness identities have not been publicly released, in that same sentence, ICE did not make the same claim with respect to "information gathered from these interviews." *See* Opp./Cross-Mot. at 17 (quoting First Schurkamp Decl. ¶56). Instead of addressing this ambiguity, ICE copies and pastes *the exact same sentence* from the First Schurkamp Declaration. *See* Reply/Cross-Opp. at 12–13 (citing First Schurkamp Decl. ¶56).

- ICE also fails to engage with Plaintiffs' argument that generic and conclusory claims of potential harm to witnesses are insufficient to demonstrate potential interference with enforcement proceedings under Exemption (b)(7)(A). *See* Opp./Cross-Mot. at 17. Again,

---

[5] In its reply/cross-opposition, ICE claims that Plaintiffs assert "for the first time" that HSI should have been searched. *See* Reply/Cross-Opp. at 9. But ICE never told Plaintiffs it omitted HSI from its searches until they received ICE's summary judgment briefing.

- ICE parrots its earlier pleadings, claiming vaguely and without support that release of the information could "identify[] potential witnesses, or at a minimum expose them to intimidation or harm." *See* Reply/Cross-Opp. at 13 (citing First Schurkamp Decl. ¶57).

- Finally, ICE ignores that its vague assertion that the release of "evidence, and information about evidence" would interfere with the "ability to prepare for trial and prosecute offenders" is entirely too conclusory to justify withholding records pursuant to Exemption (b)(7)(A). *See* Opp./Cross-Mot. at 17–18 (quoting First Schurkamp Decl. ¶57). Again, ICE simply copies and pastes *the exact same language* from its opening brief. *Compare* Def.'s Mem. in Supp. of Mot. for Summ. J. at 12 (citing First Schurkamp Decl. ¶57), *with* Reply/Cross-Opp. at 13 (citing First Schurkamp Decl. ¶57).

The only Exemption (b)(7)(A) argument ICE contends with is Plaintiffs' secondary point that claims of potential interference may become more attenuated later in time. Plaintiffs agree that the Exemption could theoretically apply at this stage of the proceeding, but as ICE has not demonstrated how release of the withheld information could interfere with that proceeding, its invocation of Exemption (b)(7)(A) cannot withstand scrutiny.[6]

As for ICE's other claimed exemptions, there are no genuine disputes.[7] With respect to Exemption (b)(7)(E), despite Plaintiffs' direct invitation for ICE to do so, *see* Opp./Cross-Mot. at 19, ICE has yet to explain to which pages that Exemption applies, let alone to "provide a detailed explanation of why [it] applies," *see Moffatt v. U.S. Dep't of Just.*, No. CIV.A. 09-12067-DJC, 2011 WL 3475440, at *14 (D. Mass. Aug. 5, 2011) *aff'd*, 716 F.3d 244 (1st Cir. 2013). Instead,

---

[6] ICE states that "[a]s of December 8, 2021, the ICE investigation remains open . . . ." ICE Reply at 12 n.8. While ICE also correctly notes that "criminal proceedings are currently pending before this Court," ICE has not said to what extent its own investigation—which may not even remain open today—overlaps with DOJ's ongoing criminal prosecution, further underscoring ICE's failure to explain how release of the records at issue could interfere with that proceeding.

[7] Plaintiffs do not contest ICE's withholdings pursuant to Exemptions (b)(6) and (b)(7)(C), given ICE's clarification that it only redacted "the names, email addresses, telephone and cell numbers of several non-supervisory, lower-level ICE employees," as well as "the names of third parties." Reply/Cross-Opp. at 15–16.

9

ICE entirely ignores this Exemption in its reply brief and Supplemental Declaration,[8] mentioning it only in response to Plaintiffs' statement of material facts. *See* PSOF ¶72 & Response (stating October 25, 2021 letter referenced Exemption (b)(7)(E)). But that letter mentioned the Exemption only in the abstract, and ICE did not tie it to any specific redacted or withheld page. Opp./Cross-Mot. at 19 n.8 (citing Oehlke Decl. Ex. Q). Only ICE's *Vaughn* Index links this Exemption to any specific documents (and even there, ICE fails to explain, as it must, to which pages or portions thereof the Exemption applies). *Vaughn* Index at 3. Moreover, nowhere has ICE met its burden to provide any particularized explanation for why this Exemption applies. *See Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 50 (1st Cir. 2014).

ICE also apparently disclaims any assertion of Exemption (b)(5). Again, ICE mentions this exemption only in its material fact responses, noting simply that it "did remove all (b)(5) redactions in the documents it produced in a supplemental production reflecting the (b)(5) redaction's removal." PSOF ¶70 & Response. Plaintiffs thus assume that ICE no longer seeks to invoke this exemption, but to the extent it does,[9] ICE has offered no explanation for why the exemption applies, wholly failing to meet its burden. *See Union Leader*, 749 F.3d at 50.

## CONCLUSION

For the reasons set forth above and in Plaintiff's Cross-Motion for Summary Judgment, Plaintiffs respectfully request that the Court deny ICE's motion for summary judgment, order the limited discovery described herein, and grant Plaintiffs' motion for summary judgment.

---

[8] For this reason, Plaintiffs assume ICE no longer seeks to invoke Exemption (b)(7)(E), but address it nonetheless in case this assumption is mistaken.

[9] Though ICE removed the original (b)(5) redactions, ICE added a *new* reference to Exemption (b)(5) to page 60 of the supplemental production. Opp./Cross-Mot. at 18. ICE also invoked this exemption—in entirely conclusory fashion—in its *Vaughn* Index. *Vaughn* Index at 3.

Dated: February 28, 2022

Respectfully submitted,

*/s/ Krista Oehlke*
Krista Oehlke (BBO #707566)
Daniel L. McFadden (BBO #676612)
Matthew R. Segal (BBO #654489)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
(617) 482-3170
koehlke@aclum.org

*Counsel for Plaintiff American Civil Liberties Union of Massachusetts, Inc.*

*/s/ Katherine M. Anthony*
Katherine M. Anthony (BBO #685150)
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3918
katherine.anthony@americanoversight.org

*Counsel for Plaintiff American Oversight*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served today on all parties via the Court's CM/ECF system.

*/s/ Krista Oehlke*
Krista Oehlke
