**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and AMERICAN OVERSIGHT; | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT; | ) ) ) |
| Defendant. | ) ) ) |

Case No. 21-CV-10761-AK

## MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is an action for declaratory and injunctive relief in which plaintiff nonprofit organizations seek to compel Immigration and Customs Enforcement ("ICE") to comply with a 2019 document request made pursuant to the Freedom of Information Act ("FOIA"). The parties have cross-moved for summary judgment concerning ICE's compliance with that request. Because the Court is not satisfied that ICE has fully complied with the requirements of FOIA, but cannot grant Plaintiffs the declaratory and injunctive relief they seek at this time, both motions will be **DENIED** with leave to refile pursuant to the terms of this Order.

## I.    FACTUAL & PROCEDURAL BACKGROUND

### a.  Plaintiffs' Request and Complaint

In April 2019, a grand jury in this District indicted a judge and court officer of the Massachusetts Trial Court on charges of conspiracy to obstruct justice, obstruction of justice, and

obstruction of a federal proceeding.[1]  The indictment alleges that in April 2018, the judge and

court officer assisted a criminal defendant in evading an ICE officer by permitting the defendant

to leave the Newton District Court through the courthouse's rear entrance.  ICE had intended to

arrest this defendant on immigration charges.

On November 18, 2019, plaintiffs American Civil Liberties Union of Massachusetts and

American Oversight (collectively, "Plaintiffs") submitted a FOIA request to ICE concerning its

investigation of the judge, court officer, and the events giving rise to their indictment.  [Dkt. 1-1,

(the "Request")].  The Request seeks all communications of seven senior ICE officials

concerning the judge, court officer, and these events; all records concerning ICE's investigation

of the matter; and all records of "final guidance, directives, or instructions provided by ICE" to

the office of the United States Attorney for the District of Massachusetts.  [Id.]

One day later, the ICE FOIA Office responded to Plaintiffs by email, acknowledging

receipt of the Request and requesting that Plaintiffs provide, within 30 days, third-party

authorization from the judge and court officer.  [Dkt. 1-2].  ICE stated that this authorization was

necessary to process the Request because ICE would be required to conduct searches using the

judge's and court officer's personally identifiable information.  [Id.]  ICE asserted that, in this

situation, regulations require that the requesting party obtain a statement from the individual

"verifying his or her identity and certifying that individual's agreement that records concerning

him or her may be accessed, analyzed and released to a third party."  [Id.]  Because Plaintiffs had

not provided this authorization, ICE stated that it could not initiate a search for documents

responsive to the Request.  [Id.]

---

[1] These criminal proceedings are presently pending before another session of this Court.  See No. 19-cr-10141-LTS.

On November 25, 2019, Plaintiffs replied to the ICE FOIA Office by email, stating that they disagreed with ICE's interpretation of federal law as requiring third-party authorization in these circumstances.  [Dkt. 1-3].  Specifically, Plaintiffs objected to ICE's classification of the materials identified in the Request as "records" within a "system of records" as defined by the Privacy Act, 5 U.S.C. § 552a(b).  [Id.]  Plaintiffs instead argued that they had requested ICE agency records, which are subject to a balancing inquiry between the public interest in disclosure and the individuals' privacy interests.  [Id.]

ICE treated Plaintiffs' November 25 email as an appeal of its determination that third-party authorization was required for it to process the Request.  [Dkt. 1-4].  In February 2020, the ICE Office of the Principal Legal Advisor sent a letter to Plaintiffs indicating, without further detail, that "search(s), or modifications to the existing searchs(s) [*sic*], could be made," and remanding the matter to the ICE FOIA Office.  [Dkt. 1-5].  ICE made no further communications to Plaintiffs until Plaintiffs filed this lawsuit in May 2021, seeking both injunctive and declaratory relief.

**b. ICE's Searches**

After Plaintiffs initiated this suit, the Court entered a schedule by which ICE would conduct searches and produce records and portions of records that it considered responsive and non-exempt.  ICE asserts that its FOIA Office determined that four other constituent offices of ICE were likely to have custody of records responsive to the Request: the Office of the Chief Information Officer ("OCIO"), the Office of Enforcement and Removal Operations ("ERO"), the Office of the Executive Secretariat ("OES"), and the Office of the Chief of Staff ("OCS").  [Dkt. 27, ICE's Statement of Material Facts ("ICE SMF") ¶ 16].  The FOIA Office instructed each of

these four offices to "conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing."  [Id.]

### i.  Search of OCIO Records

ICE asserts that OCIO is its office that stores electronic data, including emails, and thus determined that OCIO was "the office most likely to have responsive records" regarding Plaintiffs' request for the communications of seven senior ICE officials concerning the judge, court officer, and events giving rise to the indictment.  [Id. ¶ 20].  OCIO collected all email communications of each of the seven officials named in the Request and conducted searches of these custodians' emails dated between March 15, 2018, and April 25, 2019—the dates specified in the Request.  [Id. ¶¶ 20–25].  The ICE FOIA Office then ran seven search terms over the emails OCIO collected, including the names of the judge, court officer, and United States Attorney, and the docket number associated with the indictment.[2]  [Id. ¶ 25].  After review by a FOIA Office paralegal, ICE produced 66 pages resulting from these searches to Plaintiffs.  [Id. ¶ 26].  Following further negotiations between the parties, the FOIA Office then conducted additional searches over the collected emails, using five new search terms.[3]  [Id. ¶ 28].  The FOIA Office rejected five additional search terms Plaintiffs proposed.[4]  [Dkt. 33-12].  Subsequently, Plaintiffs proposed two additional search terms in an email on September 10, 2021, which ICE rejected.[5]  [Dkt. 33-13].  As a result of the five additional search terms run, ICE made a supplemental production to Plaintiffs.  [ICE SMF ¶ 28].

---

[2] The initial seven search terms used for the OCIO emails were: "Judge Shelley M. Richmond Joseph"; "Judge Joseph"; "Officer Wesley MacGregor"; "Officer MacGregor"; "Andrew Lelling"; "Mr. Lelling"; and "Case No. 19-10141-LTS."
[3] The additional search terms for the OCIO emails the parties agreed to were: "Wesley MacGregor"; "Shelley Joseph"; "Newton district Court", "Jose Medina-Perez"; "Medina-Perez."
[4] The rejected terms were "NDC"; "sanctuary city"; "sanctuary cities"; "Newton"; and "Boston."
[5] The rejected terms were "court" /5 "newton"; and "judge" /5 "newton."

### ii.  Search of ERO Records

ICE asserts that ERO is its office responsible for identification, arrest, and removal of "aliens who present a danger to national security or are a risk to public safety."  [Id. ¶ 29].  The ICE FOIA Office submits requests pertaining to ERO's activity to ERO's Information Disclosure Unit ("IDU"), which then directs requests to the specific individuals it determines would be "reasonably likely to have responsive records, if any."  [Id. ¶ 30].  In this case, ICE asserts that ERO IDU identified Natalie Asher, a Field Director, as the "person most likely to have responsive records relating to the requested information."  [Id. ¶ 31].  It asserts that Asher conducted a "manual search of her computer" and an "advanced search in Outlook" using four search terms.[6]  [Id.]  Asher's search of ERO records resulted in no responsive documents being located.  [Id. ¶ 32].

### iii.  Search of OES Records

ICE asserts that OES is its office responsible for maintaining a "repository for incoming letters and official responses, and internally generated communications."  [Id. ¶ 33].  The ICE FOIA Office submits requests pertaining to OES's activity to OES's Questions for the Record Unit ("QFR"), when then directs requests to the specific individuals it determines would be "reasonably likely to have responsive records, if any."  [Id. ¶ 34].  In this case, ICE asserts that QFR identified a "program analyst" as the "person in the office most likely to have responsive records, should any exist."  [Id. ¶ 35].  The analyst conducted a manual search through his "computer files" and "sharepoint database" and an "advanced search in Outlook" using seven search terms.[7]  [Id. ¶¶ 35–36].  Through these searches, the analyst located four potentially

---

[6] The ERO search terms were: "Judge Joseph;" "Joseph"; "Officer MacGregor"; "MacGregor."
[7] The OES search terms were: "Shelley M. Richmond Joseph"; "Shelley Joseph"; "Judge Joseph"; "Officer MacGregor"; "Weseley MacGregor" [sic]; "Newton District Court"; "Andrew Lelling."  The record is unclear as to

responsive records.  [Id. ¶ 37].  The FOIA Office reviewed these records and produced the

records it determined were responsive and non-exempt to Plaintiffs.  [Id.]

### iv.  Search of OCS Records

ICE asserts that OCS is its office that "facilitate[s] a seamless exchange of information"

between other ICE offices and the ICE Director.  [Id. ¶ 38].  The FOIA Office identified the

former Acting Chief of Staff as a person within OCS "most likely to have responsive records"

related to the request.  [Id. ¶ 40].  ICE asserts that this officer conducted a "manual search of his

computer" and an "advanced search in Outlook" using four search terms.[8]  [Id. ¶¶ 40–41].  This

search resulted in no responsive documents being located.  [Id. ¶ 41].

### v.  Application of FOIA Exemptions and Productions

ICE made its initial production of records in August 2021.  Following further negotiation

between the parties, ICE removed several redactions from the produced documents, and

produced additional documents responsive to a supplemental search in October 2021.  In total,

ICE produced approximately 85 pages of documents.  ICE cites three FOIA exemptions that it

relied on in withholding and redacting responsive documents from Plaintiffs, but Plaintiffs

contest only ICE's invocation of Exemption 7(A), which applies to "records or information

compiled for law enforcement purposes, but only to the extent that the production of such law

enforcement records or information could reasonably be expected to interfere with enforcement

proceedings."  5 U.S.C. § 552(b)(7).  ICE asserts that it applied this exemption to (1) an internal

Homeland Security Investigation ("HSI") memorandum; and (2) email exchanges between ICE

personnel and upper management concerning an ongoing investigation into the judge and court

---

whether the OES analyst used the incorrect spelling "Weseley" rather than the correct "Wesley," or whether the
error was the affiant's.

[8] The OCS search terms were: "Judge Joseph;" "Joseph"; "Officer MacGregor"; "MacGregor."

officer.  ICE fully redacted 3 pages of documents and partially redacted 5 more pages under this exemption.  [ICE SMF ¶ 44].

The parties have continued to dispute the scope of the search ICE is required to conduct in response to the Request, and the instant cross-motions for summary judgment followed.

## II.    DISCUSSION

### a.    Summary Judgment Standard

FOIA cases are typically resolved on motions for summary judgment.  <u>ACLU of Mass. v. ICE</u>, 448 F. Supp. 3d 27, 35–36 (D. Mass. 2020).  Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law.  <u>Paul v. Murphy</u>, 948 F.3d 42, 49 (1st Cir. 2020).  The Court must determine (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law."  <u>Scott v. Sulzer Carbomedics, Inc.</u>, 141 F. Supp. 2d 154, 170 (D. Mass. 2001).  Courts must draw all reasonable inferences in the non-moving party's favor, and the non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists."  <u>Paul</u>, 948 F.3d at 49 (citation omitted).

In a FOIA case, the government may prevail on a motion for summary judgment where it "proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  <u>Moffat v. U.S. Dep't of Just.</u>, No. 09-12067, 2011 WL 3475440, at *1 (D. Mass. Aug. 5, 2011) (citation omitted).  The government discharges its FOIA obligations by proving

that "each document that falls within the class requested either has been produced, is

unidentifiable, or is wholly exempt from the FOIA's inspection requirements." Crooker v. Tax

Div., No. 94-30129, 1995 WL 783236, at *7 (D. Mass. Nov. 17, 1995).  Summary judgment in

FOIA cases may be granted solely on the basis of agency affidavits.  Moffat, 2011 WL 3475440,

at *1.

### b. Arguments

The parties raise four principal disputes in their cross-motions.  The first three of these

disputes relate to the adequacy of ICE's collection and search, as Plaintiffs contest (1) whether

ICE used reasonable search terms over the OCIO collection; (2) whether ICE was reasonable in

declining to conduct an additional search for HSI records after uncovering responsive HSI

documents during its search of the OCIO collection; and (3) whether ICE was reasonable in

declining to search for responsive text messages.  Additionally, the parties dispute (4) whether

ICE's invocation of Exemption 7(A) was proper.

### i. Adequacy of Searches

The adequacy of an agency's search for documents under FOIA is determined by "a

standard of reasonableness and depends upon the facts of each case." Maynard v. CIA, 986 F.2d

547, 559 (1st Cir. 1993).  The agency must "demonstrate beyond material doubt that its search

was reasonably calculated to uncover all relevant documents." Stalcup v. U.S. Dep't of Defense,

No. 13-cv-11967, 2018 WL 4963169, at *3 (D. Mass. Oct. 15, 2018) (quoting unpublished First

Circuit disposition in the same matter).  "The crucial issue is not whether relevant documents

might exist, but whether the agency's search was 'reasonably calculated to discover the

requested documents.'"  Maynard, 986 F.2d at 559 (citation omitted). An agency may establish

the adequacy of its search through affidavits, which must be "relatively detailed and

nonconclusory"; "submitted by responsible agency officials"; and prepared "in good faith." Id. At a minimum, the affidavits must "describe in reasonable detail the scope and method by which the search was conducted" and "describe at least generally the structure of the agency's file system which makes further search difficult." Id. (citation omitted).  Further, the affidavits should "set [ ] forth the search terms and the type of search performed, and aver [ ] that all files likely to contain responsive materials . . . were searched." ACLU of Mass., 448 F. Supp. 3d at 42 (quoting Oleskey ex rel. Boumediene v. U.S. Dep't of Defense, 658 F. Supp. 2d 288, 294 (D. Mass. 2009)).

If the agency produces affidavits supplying sufficient evidentiary support, it is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Maynard, 986 F.2d at 560 (citation omitted). Rather, the requesting party must "provide countervailing evidence as to the adequacy of the agency's search." Moradi v. Morgan, 527 F. Supp. 3d 144, 152–53 (D. Mass. 2021) (citation omitted).  Conversely, where the agency fails to provide a sufficient affidavit, the requesting party may avoid summary judgment "merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." Maynard, 986 F.2d at 560; see Moradi, 527 F. Supp. 3d at 153 (holding that summary judgment is inappropriate where "the requester introduces evidence that raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials").

### 1. Search Terms

Plaintiffs first argue that ICE employed unreasonably narrow search terms over the records it collected from OCIO.  Specifically, Plaintiffs argue that ICE inappropriately searched only for the judge's and court's full and proper names, and that the additional proposed terms

that ICE rejected were designed to better capture how these names may have been used in colloquial writing.  Specifically, Plaintiffs proposed that ICE search for the terms "court" and "Newton" within five words of one another, and the terms "judge" and "Newton" within five words of one another, which they argue may have captured documents containing phrases like "the judge in Newton" or "the court in Newton" that would not have been captured by OCIO's terms.  ICE argues that Plaintiffs' belief that these searches would have returned additional responsive documents is speculation, and that the search terms it employed (which, in relevant part, included "Judge Shelley M. Richmond-Joseph"; "Judge Joseph"; and "Newton District Court") were reasonably calculated to capture all documents referencing the events at the Newton courthouse.

Here, ICE need not establish that its chosen search terms were perfectly tailored to produce each and every document potentially responsive to Plaintiffs' request.  FOIA is not civil discovery and does not create equivalent obligations on the producing party.  See Stonehill v. IRS, 558 F.3d 534, 538 (D.C. Cir. 2009).  Further, a failure to use search terms proposed and emphasized by Plaintiffs "is not automatically unreasonable, 'so long as the agency provided an explanation as to why the search term was not used.'"  Knight First Amend. Inst. v. CDC, 560 F. Supp. 3d 810, 823 (S.D.N.Y. 2021) (citation omitted).  An agency must demonstrate that it used "methods which can be reasonably expected to produce the information requested."  Moradi, 527 F. Supp. 3d at 154 (quoting Oleskey, 658 F. Supp. 2d at 294).  Recently, district courts have required agencies to search for "synonyms or common variants of a term" if they are likely to be used in responsive documents, unless the agency can "reasonably justify declining to use them." Knight First Amend. Inst., 560 F. Supp. 3d at 823; Government Accountability Proj. v. U.S. Dep't of Homeland Sec., 335 F. Supp. 3d 7, 12–13 (D.D.C. 2018).

ICE's affidavits do not establish reasonable grounds for its exclusion of Plaintiffs' two requested search terms. Plaintiffs' Request seeks all communications of seven ICE custodians concerning, *inter alia*, the judge and the events at the Newton courthouse, during a time period spanning from before the incident throughout ICE's investigation of the incident. ICE has not provided sufficient evidentiary support for its position that the terms "Judge Joseph," "Judge Shelley M. Richmond-Joseph," and "Newton District Court" were sufficient to reasonably comply with the Request, and its explanation for the rejection of Plaintiffs' two Boolean[9] terms is unpersuasive. The Boolean connector searches Plaintiffs propose—"judge" w/5 "Newton" and "court" w/5 "Newton"—are sufficiently distinct from the terms ICE employed to reasonably capture documents that were not captured by ICE's terms. See National Lab. Day Org. Net. v. ICE, 877 F. Supp. 2d 87, 107 (S.D.N.Y. 2012) (describing how the addition of Boolean operators to search terms may have "major consequences" on a FOIA search); see also Knight First Amend. Inst., 560 F. Supp. 3d at 824–25 (rejecting agency affidavit that provided insufficient explanation of the agency's decision not to apply Boolean connectors to its search terms).

Because ICE's affidavits do not contain sufficient evidentiary support for its decision to reject Plaintiffs' two proposed search terms, ICE is not afforded a presumption of good faith on this issue, and Plaintiffs may defeat its motion "merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." Maynard, 986 F.2d at 560. Here, Plaintiffs have more than carried this burden. The terms "judge w/5 Newton" and "court w/5 Newton" will potentially capture documents containing colloquial phrases like "the judge in Newton," "outside the Newton court," "at his court appearance in

---

[9] Boolean searches use connecting operators to capture documents that contain multiple search terms. For example, a Boolean search allows a searcher to find a document that contains two search terms within one sentence or paragraph, or two search terms located within a certain number of words of one another.

Newton," and myriad others that the formal terms "Judge Joseph," "Judge Shelley M. Richmond-Joseph," and "Newton District Court" will not.  It is unreasonable to expect that the ICE custodians would have referred to the judge and court by their proper titles in all references, and Plaintiffs' proposed Boolean searches are reasonably tailored to return documents responsive to their Requests.

Accordingly, ICE shall, within 45 days of this Order, run these two additional search terms over the population of documents it collected from OCIO and produce any additional responsive, non-exempt documents to Plaintiffs.

### 2.  **HSI**

Plaintiffs next argue that ICE should have collected files directly from the Homeland Security Investigation unit ("HSI") after its search of records collected from other offices produced a memorandum from HSI.  ICE argues that HSI is an investigative unit rather than a records retention unit, and that any HSI documents would have been collected through OCIO.  It notes that the OCIO collection did return additional HSI documents, and that these documents were redacted pursuant to FOIA Exemption 7(A) as law enforcement records.

Here, ICE's affidavits do not describe the agency's process for retention of HSI documents in sufficient detail to support a grant of summary judgment.  In support of its position that all HSI documents would be captured within the OCIO collection, ICE points only to the affidavit of Linnea Schurkamp, [Dkt. 27-1 ("Schurkamp Aff.")], which contains a single paragraph describing the role HSI plays within ICE, [id. ¶ 55].  Nowhere in this document does Ms. Schurkamp describe how and where HSI documents are stored, leaving counsel's bare assertions in ICE's reply brief as the only grounds upon which the Court could conclude that all HSI records would be stored within OCIO.  This declaration is thus insufficient to establish that

ICE conducted an adequate search for HSI records.  See Maynard, 986 F.2d at 559 (requiring

that an affidavit "describe at least generally the structure of the agency's file system").

　　　　Further, it is plausible that ICE's discovery of HSI records during its search of the OCIO

collection should have reasonably led it to conduct additional searches for further responsive HSI

records.  The adequacy or inadequacy of an agency's search is not fixed at the outset of the

search process: rather, the contours of the search may need to evolve as the agency reviews its

collection and obtains information as to where additional responsive records may be found.  See

Johnson v. CIA, 330 F. Supp. 3d 628, 641 (D. Mass. 2018) ("[W]hen leads to other documents

arise during the course of a search for responsive records, the agency must expand the scope of

its search.").  Although it is equally plausible that the assertions of ICE's counsel are correct, and

ICE's knowledge of HSI storage practices supported a reasonable conclusion that any additional

HSI records would have been collected from OCIO, the ICE affidavits do not provide a sufficient

basis for the Court to reach this conclusion.

　　　　Accordingly, ICE shall, within 45 days of this Order, either (1) file a supplementary

affidavit explaining in detail its retention practices for HSI records and the basis for its decision

not to conduct additional searches for HSI records, or (2) conduct a search of HSI records

consistent with the terms of this Order.

### 3.  Text Messages

　　　　Plaintiffs argue that ICE improperly excluded text messages from the forms of electronic

communications that it collected and searched, and that text messages fell within the scope of the

Request.  ICE argues that it lacks an archival system for text messages, that its employees'

phones are routinely wiped clean, and that none of its mobile carriers retain deleted text

messages.  An affidavit submitted by Richard Clark, [Dkt. 37-2, ("Clark Aff.")], explains that,

because ICE does not retain text messages, the agency has a policy discouraging employees from discussing business by text, [id. ¶ 15]. The affidavit further states that when ICE employees do discuss business by text, they are directed to memorialize these discussions in written form so that a retainable record of the discussion will be created. [Id.] Thus, ICE argues that it could not reasonably have conducted a search of employee text messages.

Consistent with the reasoning above, Mr. Clark's affidavit is insufficient to support an award of summary judgment on this issue. ICE alleges that it sent a records retention notice upon receipt of the Request, but the affidavit otherwise does not provide the level of detail required for the Court to conclude that ICE was reasonable in declining to collect text messages from the mobile devices of the named custodians. Although the Court accepts ICE's assertion that its mobile devices do not store messages indefinitely, and that the devices of the named custodians have been deactivated and replaced since the incident at Newton District Court, ICE has not provided any detail on when the phones the custodians used during the Request period were deactivated, and whether any steps were taken to preserve data at the time of deactivation. This specificity is necessary for the Court to determine whether ICE's non-collection of text messages is reasonable, and further, whether ICE's lengthy delay between its receipt of the Request in November 2019 and its initiation of records collection in the spring and summer of 2021 contributed to the unavailability of text message records.

Accordingly, ICE shall, within 45 days of this Order, file a supplementary affidavit explaining in detail (1) the process by which it, as a general matter, deactivates and replaces employee mobile devices; (2) what, if any, steps it takes to preserve data located on mobile devices at the time they are deactivated; and (3) the dates on which each of the seven named

custodians have had a mobile device deactivated since the first day of the Request period, and what steps, if any, were taken to preserve data located on each of those devices.

### ii.   Exemption 7(A)

In addition to challenging the adequacy of ICE's collection and search, Plaintiffs challenge ICE's application of FOIA Exemption 7(A) to support its decision to fully redact 3 pages and partially redact 5 additional pages of a responsive HSI memo.  ICE argues that public release of these records could disrupt the pending prosecution of the judge and court officer by disclosing confidential information, exposing potential witnesses to intimidation or harm, and hindering the government's ability to prepare for trial.

Exemption 7(A) excludes from the sweep of FOIA "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  The exemption leaves "no room for judicial balancing": if the Court determines that the records are "compiled for law enforcement purposes . . . the inherent nature of the requested documents is irrelevant to the question of exemption." Curran v. U.S. Dep't of Just., 813 F.2d 473, 474 (1st Cir. 1987).  Accordingly, the "key question" is whether public release of the documents in question "will tend to obstruct, impede, or hinder enforcement proceedings."  See id.  The agency need only make a "minimally sufficient showing" that allows the Court to "ascertain how each category of documents, if disclosed, would interfere with the investigation."  Id. at 475 (citation and alterations omitted).  However, any doubts concerning the applicability of the exemption are "resolved in favor of openness." Irons v. FBI, 811 F.2d 681, 685 (1st Cir. 1987).

The protections of Exemption 7(A) apply to documents related to the pending criminal prosecution of the judge and court security officer whose actions gave rise to the Request.  See, e.g., Moffat, 2011 WL 3475440, at *14 ("Courts have also interpreted Exemption 7 to apply to enforcement proceedings that are 'pending or reasonably anticipated.'" (quoting General Elec. Co. v. EPA, 18 F. Supp. 2d 138, 143 (D. Mass. 1998)).  Accordingly, ICE need only demonstrate through affidavits that the 8 pages in question "relate to" this prosecution, and that this prosecution "involves one of the law enforcement duties" of ICE.  Id. at *15.

Here, ICE provides sufficient support for its invocation of Exemption 7(A).  Ms. Schurkamp's affidavit describes the pages of the HSI memo redacted pursuant to the exemption as containing "specific names of law enforcement personnel, and/or identifying potential witnesses, (including non-ICE personnel), interviewed in the investigation of [the judge and court officer], which have not been publicly released, as well as information gathered from these interviews."  [Schurkamp Aff. ¶ 56].  The affidavit further alleges that release of these documents would undermine the pending prosecution by "disclosing confidential information to the public, identifying investigation law enforcement personnel, and/or identifying potential witnesses."  [Id. ¶ 57].  Further, it cites the potential that witnesses named in the document may be exposed to "intimidation or harm," and that premature disclosure of the information in the document would "adversely affect the Government's ability to prepare for trial."  [Id.]  Both the subject matter of the HSI memorandum and the nature of the potential harm ICE foresees from its disclosure fall squarely within the ambit of Exemption 7(A), which was enacted to prevent FOIA requests from obstructing, impeding, or hindering law enforcement efforts.  See Curran, 813 F.2d at 747.  ICE has thus established a sufficient nexus between the redacted pages and the

ongoing criminal case against the judge and court officer, and has properly invoked the protection of Exemption 7(A) over these pages so long as that prosecution remains pending.

### iii.   Remaining Arguments

In addition to the four principal points of contention, Plaintiffs raised two other lines of argument in their briefing, neither of which provide grounds for a grant of summary judgment. First, Plaintiffs argue that ICE's search was insufficient because it did not produce documents relating to conversations between ICE personnel and Department of Homeland Security Director Thomas Homan about the investigation of the judge.  A *New York Times* article reported that these conversations took place, [Dkt. 33-2], and Plaintiffs presume that a record of this conversation was created and is within ICE's custody.  ICE argues that its searches of the seven named custodians' files satisfied its obligation to conduct an adequate search for responsive records, and the absence of any record of Mr. Homan's reported conversations about the judge from its production does not rebut the presumption that it conducted its searches in good faith. Although, as discussed above, ICE's search was not legally sufficient, the Court imposes no specific obligation on ICE to locate this purported record of Mr. Homan's conversations, in no small part because the *New York Times* article that Plaintiffs rely on does not refer to any documentary records related to Mr. Homan's conversations, [id.].  Mr. Homan's statements referenced in the article may be reasonably interpreted as describing oral and telephone communications, which would not be reflected in documents responsive to the Request, rather than describing email communications that would have been captured by an adequate search.

Second, Plaintiffs argue that ICE improperly failed to collect emails from administrative assistants to the seven senior officials it named in the Request who may have sent emails on behalf of the named officials.  Plaintiffs did not, however, include administrative assistants in the

language of its Request.  Because Plaintiffs requested communications from only the seven named custodians, and not their assistants, ICE was not obliged to search for emails that were not sent by those custodians.

**III.    CONCLUSION**

The cross-motions for summary judgment are **DENIED** without prejudice.  It is hereby ordered that, within 45 days, ICE shall:

a.  Run the search terms "judge w/5 Newton" and "court w/5 Newton" over the documents collected from OCIO, and produce any addition responsive documents to Plaintiffs;

b.  either (1) file a supplementary affidavit explaining in detail its retention practices for HSI records and the basis for its decision not to conduct additional searches for HSI records or (2) conduct a search of HSI records consistent with the terms of this Order; and

c.  file a supplementary affidavit explaining in detail (1) the process by which it, as a general matter, deactivates and replaces employee mobile devices; (2) what, if any, steps it takes to preserve data located on mobile devices at the time they are deactivated; and (3) the dates on which each of the seven named custodians have had a mobile device deactivated since the first day of the Request period, and what steps, if any, were taken to preserve data located on each of those devices.

ICE may continue to assert Exemption 7(A) over documents related to the pending criminal prosecution, No. 19-cr-10141-LTS, consistent with the terms of the statute and of this Order.

**SO ORDERED.**

June 3, 2022

<u>/s/ Angel Kelley</u>
ANGEL KELLEY
U.S. DISTRICT JUDGE