## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and AMERICAN OVERSIGHT,<br><br>       Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>       Defendant. | C.A. No. 1:21-cv-10761-AK |

## EMERGENCY MOTION
## FOR ORDER REQUIRING PRESERVATION
## OF GOVERNMENT-ISSUED MOBILE ELECTRONIC DEVICES
## AND INCORPORATED MEMORANDUM OF LAW

Last Thursday, defendant U.S. Immigration and Customs Enforcement ("ICE") submitted declarations stating that, in the first year of the Trump Administration, ICE ordered its employees to wipe their agency-issued mobile devices prior to returning the devices to the agency.

ICE's new declarations appear to assert that five former senior officials—each of whom is a named custodian in the underlying FOIA request at issue in this case—have already wiped their devices. ICE does not say that anyone has actually checked the data on those devices yet to confirm this is true. Almost all of these purported deletions happened long after plaintiffs submitted the FOIA request, which sought text messages from these devices.

ICE also says that it has recovered the intact devices of two of the other named custodians. These devices are at risk of deletion under the same policy, even while there may be continuing disputes in this litigation about the data contained therein. ICE now reports—contrary to its prior assertions—that it has not issued any litigation hold related to this case or the underlying request.

1

Accordingly, to ensure that potentially responsive records are preserved during the pendency of this FOIA litigation, and that the Court has the practical opportunity to grant meaningful relief at the conclusion of the case, plaintiffs ACLU of Massachusetts ("ACLUM") and American Oversight hereby move for an immediate order requiring that:

> a. For the pendency of this litigation and any appeals, ICE preserve in their present condition all mobile devices, including cellular telephones, within ICE's possession, custody, or control, that were issued at any time by any government agency to Thomas Homan, Matthew Albence, Ronald Vitiello, Thomas Blank, Tracy Short, Jon Feere, and/or Nathalie Asher, without any modification, deletion, or destruction of the data contained therein; and
>
> b. ICE continue its efforts (as ICE itself proposes) to access Jon Feere's mobile device and submit a status report on or before September 19, 2022, provided that ICE shall not modify, delete, or destroy any data contained on that device.

ICE does not assent to this motion.  In light of the concerns raised herein, plaintiffs request that ICE be ordered to file any opposition or other response no later than Wednesday, August 24, 2022, and to preserve the records at issue pending the resolution of this motion.

As further grounds, plaintiffs state as follows:

1.      The FOIA request in this case concerns the investigation of an alleged incident that occurred in the Newton District Court on April 2, 2018.  Thomas Homan (then the Acting Director of ICE) reportedly told the *New York Times* that he learned of the alleged incident "the same day it happened" from Matthew Albence (then the director of ICE's Enforcement and Removal Operations ("ERO") division) and communicated with his staff about pursuing an indictment.  *See* Oehlke Decl. Ex. B (D.E. 33-2).

2.      About a year later, on April 25, 2019, Judge Shelley M. Richmond Joseph and court officer Wesley MacGregor were indicted for allegedly obstructing justice during that incident. Those charges remain pending in the U.S. District Court for the District of Massachusetts.  *See generally United States v. Joseph, et al.*, Cr. No. 19-10141-LTS (D. Mass.).[1]

3.      On November 18, 2019—about seven months after the indictment, and a mere two days after the *Times* published Homan's comments—plaintiffs submitted the FOIA request that is the subject of this litigation.   Among other things, that request sought "text messages . . . concerning Judge Joseph, Officer MacGregor, and/or the events alleged in the Indictment" from seven named custodians (or others communicating on their behalf).   Those custodians were Thomas Homan, Matthew Albence, Ronald Vitiello, Thomas Blank, Tracy Short, Jon Feere, and Nathalie Asher, all of whom were senior ICE officials at various times between April 2018 and the end of the Trump Administration on January 20, 2021.  *See* Oehlke Decl. Ex. C (D.E. 33-3).

4.      The next day, on November 19, 2019, ICE responded to plaintiffs that it would not immediately "initiate a search for responsive records," due to a purported requirement for "third party authorization."  *See* Oehlke Decl. Ex. D (D.E. 33-4).  On November 25, 2019, the plaintiffs responded that they disagreed.  *See id.* Ex. E (D.E. 33-5).  ICE construed this as an administrative appeal.  *See id.* Ex. F (D.E. 33-6).

5.      About three months later, on February 20, 2020, the Chief of ICE's Government Information Law Division, who is part of the Office of ICE's Principal Legal Advisor, ruled in favor of plaintiff's appeal and remanded the matter to "the ICE FOIA Office for processing to the appropriate agency/office(s) to obtain any responsive documents, should they exist."  *See* Oehlke

---

[1] Additionally, an appeal arising from those charges was pending in the U.S. Court of Appeals for the First Circuit from August 2020 until March 2022.  *See United States v. Joseph, et al.*, No. 20-1787 (1st Cir.).

3

Decl. Ex. G (D.E. 33-7).  The letter informed the plaintiffs that "[t]he ICE FOIA Office will respond directly to you."  *See id.*

6.      But the ICE FOIA Office did not, thereafter, respond directly to the plaintiffs. Instead, ICE went silent for well over a year.  On May 10, 2021, having heard nothing further from ICE, plaintiffs filed this lawsuit.

7.      In February 2022, in support of its motion for summary judgment in this lawsuit, ICE argued it should not have to search for the requested text messages, essentially because the messages would only be stored on the mobile devices and, "during the timeframe in question . . . it was standard practice at ICE to factory reset/securely wipe/destroy and delete all contents of mobile phone devices as they were being taken out of service."  *See* Clark Decl. ¶16 (D.E. 37-2). ICE represented to the Court that "there are no copies of text messages with ICE" and "the text messages no longer exist because they were destroyed under ICE policy."  *See* ICE's Reply and Cross-Opp. (D.E. 37) at 8-9.

8.      During the summary judgment hearing in April 2022, the Court questioned whether ICE could be found to have responded to the FOIA request reasonably and in good faith where ICE had not provided complete information about its deletion activities, and where potentially responsive text messages may have been deleted after the FOIA request was filed.  *See, e.g.*, Apr. 26, 2022 Tr. at 11-17 ("The Court: I guess I keep coming back to if it was ICE's intention to delay, delay, delay to the point that they are destroyed, wiped clean and no longer available, is that still good faith? . . . .  Or not delay, delay, delay.  How about just take no action?").

9.      ICE's counsel agreed that if "any of the phones were wiped after the FOIA request was made . . . . [t]hat would be potentially a problem."  *See, e.g.*, Apr. 26, 2022 Tr. at 11:20-21. However, ICE's counsel represented to the Court that "immediately upon receiving the FOIA

request, there's directives sent out to preserve all documents, all records that could be responsive" and "[t]hat freezes everything in place." *See id.* at 11:16-19; *see also id.* at 15:5-9.  ICE's counsel also argued that "[t]here's zero evidence in the record indicating that any records were destroyed after the FOIA request was received." *See id.* at 12:8-10.

10.    In a June 3, 2022 Memorandum and Order, the Court denied the parties' cross-motions for summary judgment without prejudice.  Among other things, the Court declined plaintiffs' request to take limited discovery on the question of the deletion of mobile device information, and instead ordered ICE to file a supplemental declaration providing more specific information.  *See* Jun. 3, 2022 Mem. and Order (D.E. 48) at 14, 18.  The Court explained that "[t]his specificity is necessary for the Court to determine whether ICE's non-collection of text messages is reasonable, and further, whether ICE's lengthy delay between its receipt of the Request in November 2019 and its initiation of records collection in the spring and summer of 2021 contributed to the unavailability of text message records." *See id.* at 14.

11.    On August 18, 2022, ICE filed two new declarations in response to the Court's Order.  *See* Second Suppl. Schurkamp Decl. (D.E. 55); Suppl. Clark Decl. (D.E. 56).  These new declarations contain multiple assertions that disprove ICE's prior representations and indicate that immediate judicial intervention is necessary to preserve records.

12.    First, the new declarations show, for the first time, that it was not merely "standard practice" to delete mobile devices when they were returned.  Rather, the new declarations reveal that, in the first year of the Trump Administration, ICE affirmatively *instructed* all of its officials and employees to "wipe/erase all data" from their government-issued mobile devices before returning them to the agency.  *See* Suppl. Clark Decl. Ex. B (D.E. 56-2).  If a phone was locked or damaged, ICE personnel were ordered to physically destroy the device in a shredder.  *See id.*  There

5

is no evidence that this instruction has been rescinded, and a separate instruction date-stamped "7/11/22" appears to confirm that ICE personnel are currently required to "erase all data" from mobile devices before they turn them in.  *See* Supp. Clark Decl. Ex. A (D.E. 56-1).

13.     Second, the new declarations confirm that the text messages do not reside anywhere besides the mobile device itself.  ICE continues to rely on Police Directive 141-03.  *See* Second Suppl. Schurkamp Decl. Ex. B (D.E. 55-2).  That directive acknowledges that ICE officials use text messages for official communications, and does not order that copies of those text messages be preserved separate from the mobile devices on which they are created.  *See id.*  At most, the directive encourages ICE officials to create a separate "memo to the file" describing certain categories of communications made via text or chat, *see id.*, but this appears to be wholly on the honor system, and no such memoranda have been produced in this case.

14.     Third, contrary to ICE's prior representations, the new declarations admit that ICE has *never* issued a "hold" notice or "directive[] . . . to preserve" the documents sought by the underlying FOIA request and in this litigation.  *See* Second Suppl. Schurkamp Decl. ¶7 (D.E. 55). Indeed, one of the new declarations states that "ICE does not have a policy or practice of issuing litigation holds in FOIA litigations" at all.  *See id.*  Although ICE collected email inboxes of certain custodians in June 2021, *see id.* (citing Schurkamp Decl. ¶24 (D.E. 27-1)), there appears to be nothing in place to stop the deletion of mobile device data, including text messages.  Given that ICE has affirmatively instructed its officials and employees to destroy such data, this creates a high risk that mobile device data sought by plaintiffs' FOIA request may be deleted at any time.

15.     Fourth, the new declarations appear to assert that five of the seven named custodians have already deleted the data from their agency-issued mobile devices pursuant to agency policy requiring they do so: Thomas Homan, Matthew Albence, Tracy Short, Ronald

Vitiello, and Thomas Blank.  *See* Supp. Clark Decl. ¶¶14-15 & n.5 (D.E. 56).  ICE does not assert

that anyone has actually looked at these devices to see if the custodians did, in fact, fully wipe their

devices as instructed or if any still contain data from the relevant time period.  Rather, ICE appears

to infer that they are deleted because they are "deactivated."  *See id.*  ICE contends that

"[d]eactivation of mobile devices signals that the mobile phone data has been wiped clean

according to" agency instructions.  *See id.* n.5.  However, neither of the two "wiping" instructions

submitted by ICE mentions deactivation, *see* Supp. Clark Decl. Exs. A & B (D.E. 56-1 & 56-2),

nor has ICE explained how it "confirmed" that these particular devices were, in fact, "deactivated,"

*see* Supp. Clark Decl. ¶15 (D.E. 56).  Consequently, it is not clear that no relevant data exists on

these devices.

16.     Fifth, even if one accepts ICE's assertions about the significance of "deactivation,"

then the new declarations make clear that ICE deleted four of the custodians' devices *after*

receiving plaintiffs' FOIA request seeking data from those devices.  *See* Supp. Clark Decl. ¶14

(D.E. 56) (Albence: Feb. 19, 2020; Blank: May 21, 2020; Vitiello: December 16, 2020; Short:

January 19, 2021).  Moreover, three of these deletions (Blank, Vitiello, and Short) occurred *after*

ICE had lost the administrative appeal and had been specifically *instructed* by the office of its own

Principal Legal Advisor that it was required to "obtain any responsive documents."  *Compare id.*,

*with* Oehlke Decl. Ex. G (D.E. 33-7).

17.     Sixth, the new declarations make clear that many of these asserted deletions did not

actually occur in the ordinary course of officials' departures from the agency.  Acting Director

Thomas Homan departed ICE effective June 30, 2018.  *See* Oehlke Decl. Ex. T (D.E. 33-20).  ICE

does not contend that his device was deleted at that time.  Rather, ICE contends that it was deleted

*more than six months later*, in February 2019.  *See* Supp. Clark Decl. ¶14 (D.E. 56).  Similarly,

Ronald Vitiello was immediately appointed to replace Homan as Acting Director in June 2018, and was himself replaced by Matthew Albence in April 2019.  *See* Oehlke Decl. Ex. U (D.E. 33-21).  ICE does not contend that Vitiello's device was deleted upon his departure from the agency in April 2019.  Rather, ICE contends that Vitiello's device was deleted *more than a year and a half later*, in December 2020.  *See* Supp. Clark Decl. ¶14 (D.E. 56).  This is strong evidence that ICE was not merely deleting devices in the ordinary course of personnel turnover, but rather was deleting them long after officials departed, possibly for other reasons.

18.     Seventh, the new declarations suggest that not all devices have been accounted for. Matthew Albence was (except for one brief interruption) the Acting Director of ICE from April 2019 until his retirement in or around July 31, 2020.  *See* Oehlke Decl. Ex. U (D.E. 33-21). Yet ICE contends his mobile device was deleted more than six months *before* he left the agency. *See* Supp. Clark Decl. ¶14 (D.E. 56).  Unless ICE is contending that its Acting Director did not have a government-issued phone for more than half a year, one or more of Albence's devices is not accounted for.

19.     Eighth, ICE has now located intact mobile devices for one—and probably two—of the named custodians.  ICE located Nathalie Asher's device in its Office of Professional responsibility, which, among other things, "is responsible for investigating allegations of employee misconduct."  *See* Second Suppl. Schurkamp Decl. ¶¶12-13.  ICE contends that it searched that device.  *See id.* ¶14.  Plaintiffs are still evaluating the adequacy of that search, but, in the meantime, ICE has not acknowledged that it is under any obligation to preserve the device's data.  Similarly, ICE has now located Jon Feere's device.  *See* Supp. Clark Decl. ¶15 (D.E. 56).  ICE states that Feere's device was "issued outside of the normal procedures i.e. carried over from a previous agency."  *See id.*  ICE reports that his phone is locked, and that ICE will try to unlock it for an

additional 30 days (which plaintiffs wholly support).  *See* Supp. Clark Decl. ¶15 (D.E. 56).
However, ICE has not committed to retaining the device's data beyond that time, and its own
guidance would appear to require that, if the device is not unlocked, it must be physically shredded.
*See id.* Ex. B (D.E. 56-2).

20.    In summary, the record presently demonstrates that: ICE officials' text messages
reside only on their mobile devices.  ICE has ordered the destruction of all data on the devices of
former officials.  ICE has not instituted any preservation order for the mobile devices of the seven
officials named in plaintiffs' FOIA request.  As to five of those former officials (Homan, Albence,
Short, Vitiello, and Blank), ICE has not stated that it actually looked at their devices, but
nevertheless contends that the content of those devices has been deleted.  The majority of those
devices were purportedly deleted after ICE's Office of the Principal Legal Advisor had
affirmatively ruled that ICE had a duty to produce records responsive to plaintiffs' FOIA request.
At least two of those devices were not deleted in the ordinary course of the official's departure,
but rather much later.  Not all of the devices of those five officials have been accounted for.  As to
the other two officials (Asher and Feere), ICE has located their devices, but has not made any
commitment to preserve them during the pendency of this case, and indeed appears to have an
affirmative policy to delete them.

21.    In these unusual and extraordinary circumstances, plaintiffs contend that the
Court's intervention is warranted to ensure all remaining records are preserved, at least until this
case is finally resolved.  That resolution is unlikely to be immediate.  Plaintiffs are still reviewing
this new information, but, among other things, they may ask the Court to consider:

   a.  Whether, in light of this new information, to grant a renewed motion by the
       plaintiffs for targeted discovery concerning the issues discussed above;

9

    b.   Whether, in light of this new information, ICE can establish that it undertook reasonable and good faith efforts in response to plaintiffs' FOIA request;

    c.   Whether, for the 368 potentially responsive documents that ICE recently located at HSI, s*ee* Second Suppl. Schurkamp Decl. ¶¶20-22 (D.E. 55), ICE should be required to at least produce a *Vaughn* index to allow plaintiffs and the Court to meaningfully evaluate ICE's claim that every single page is exempt and cannot be produced even in redacted form.

22.    In these circumstances, the Court is empowered to enter a preservation order to ensure that ICE does not, through the deletion of records, frustrate the progress of this matter, irrevocably prejudice the plaintiffs, or preclude the Court from entering meaningful final relief at the conclusion of the case.

23.    Although it appears that the U.S. District Court for the District of Massachusetts has not directly addressed the question, the U.S. District Court for the District of Columbia (where many FOIA cases are litigated) has held that, in a FOIA matter, a court may issue an interim records preservation order under a variant of the traditional test for a motion for a preliminary injunction or stay pending appeal. *See Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, No. 14-765, 2016 WL 10676292, at *2 (D.D.C. Dec. 12, 2016).   The ordinary factors to be considered in deciding whether to grant a preliminary injunction are (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of the hardships as between the parties; and (iv) the effect if any, that an injunction (or the withholding of one) may have on the public interest. *See, e.g.*, *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013).

24.     In the context of a request for a preservation order during a FOIA case, a "likelihood of success on the merits" can be shown where the plaintiff has "present[ed] 'serious legal questions' for the Court to address in future merits briefing," which in turn can be shown by rulings favorable to the plaintiff in prior stages of the litigation.  *See Competitive Enter. Inst.*, 2016 WL 10676292, at *2; *see also Cause of Action Inst. v. Dep't of J.*, No. 18-cv-1800, 2019 WL 12070403, at *1 (D.D.C. Apr. 25, 2019) (granting motion for preservation order based in part on ambiguities in defendant's declaration concerning custodian's recordkeeping practices, which "raised a 'serious legal question' as to the adequacy of Defendant's search").  "Irreparable harm" is shown where, absent a preservation order, there are no "prudent assurances against the risk that the [records] could be destroyed, whether unintentionally or not."  *See Competitive Enter. Inst.*, 2016 WL 10676292, at *3 (presuming custodian's good faith, but finding his declaration insufficient because "a declaration does not have the force of an order"); *see also Armstrong v. Bush*, 807 F. Supp. 816, 820-21 (D.D.C. 1992) (finding a showing of immediate and irreparable harm warranting temporary restraining order where defendants disavowed plans to destroy records during a presidential transition but were "unwilling to guarantee that such a purge will not take place").  And the "'public interest certainly favors ensuring that records are preserved' while the Court considers whether their disclosure is appropriate under FOIA."  *See Competitive Enter. Inst.*, 2016 WL 10676292, at 4 (quoting *CREW v. Office of Admin.*, 593 F. Supp. 2d 156, 165 (D.D.C. 2009)).[2]

25.     Here, all of these factors favor entry of the requested preservation order.  As to likelihood of success, plaintiffs have certainly raised "serious" questions concerning ICE's

---

[2] A court may also consider "the prospect that others will be harmed" by a preservation order. *Competitive Enter. Inst.*, 2016 WL 10676292, at *2 (quoting *CREW v. Office of Admin.*, 593 F. Supp. 2d 156, 159 (D.D.C. 2009)).  There appears to be no such prospect here.

retention and production of text messages. The Court itself articulated those same concerns at the summary judgment hearing, and in its decision denying ICE's motion for summary judgment and ordering ICE to provide supplemental information. *See, e.g.*, Apr. 26, 2022 Tr. at 11-17; *see* Jun. 3, 2022 Mem. and Order (D.E. 48) at 14, 18. Indeed, even ICE's own counsel acknowledged that if "any of the phones were wiped after the FOIA request was made . . . . [t]hat would be potentially a problem," *see* Apr. 26, 2022 Tr. at 11:20-21, and ICE now contends that is exactly what happened to several of the devices here.

26.     Additionally, there is clear evidence of irreparable harm absent an order. As a matter of practice, ICE ordered its employees to delete the data from agency-issued devices. It asserts that many of the custodians named in the FOIA request actually did so after that request was received. And it now admits that it has never issued a "hold" instruction for this FOIA request or this case. Plainly there is no "prudent assurance" that any remaining mobile device data will be preserved absent an order. Whereas in *Competitive Enterprise Institute*, even the declarant's good-faith declaration promising not to delete records was insufficient, ICE's declarations—which essentially say the opposite—clearly demonstrate the risk of the irreparable harm in this case. *See* 2016 WL 10676292, at *3.

27.     Lastly, the balance of harms and public interest favors a preservation order. The requested order will not harm ICE, as it requires ICE to do nothing more than preserve the status quo with respect to a limited number of mobile devices, and to otherwise take steps that ICE itself has suggested taking to unlock Mr. Feere's device. *See Armstrong*, 807 F. Supp. at 821 ("preserving the records in this case on backup tapes, which is done regularly in any event, will present no undue burden to the executive branch of government"). There is also a strong public interest in preservation. In addition to the generalized public interest in the preservation and

disclosure of public records, there is a particularly strong public interest in the preservation of records pertaining to the federal government's decision to indict a state court judge based on an action she took from the bench without any allegation of bribery—charges which the government itself admits have never been brought before by any federal prosecutor.[3]  Accordingly, all the requirements of for a preservation order have been met.  *See Competitive Enter. Inst.*, 2016 WL 10676292, at *2-4.

## **CONCLUSION**

Accordingly, for the all the reasons stated above, plaintiffs respectfully request that the Court enter an order requiring that:

a.  For the pendency of this litigation and any appeals, ICE preserve in their present condition all mobile devices, including cellular telephones, within ICE's possession, custody, or control, that were issued at any time by any government agency to Thomas Homan, Matthew Albence, Ronald Vitiello, Thomas Blank, Tracy Short, Jon Feere, and/or Nathalie Asher, without any modification, deletion, or destruction of the data contained therein; and

b.  ICE continue its efforts (as ICE itself proposes) to access Jon Feere's mobile device and submit a status report on or before September 19, 2022, provided that ICE shall not modify, delete, or destroy any data contained on that device.

In light of the concerns raised herein, plaintiffs further request that ICE be ordered to file any opposition or other response no later than Wednesday, August 24, 2022, and to preserve the records at issue pending the resolution of this motion.

---

[3] *See* Oral Argument, United States v. Joseph, No. 20-1787 (1st Cir.) at time 27:45, *available at* http://media.ca1.uscourts.gov/files/audio/20-1787.mp3.

Dated: August 22, 2022                    Respectfully submitted,

*/s/ Daniel L. McFadden*
Daniel L. McFadden (BBO #676612)
Matthew R. Segal (BBO #654489)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org

*Counsel for Plaintiff American Civil Liberties
Union of Massachusetts, Inc.*


*/s/ Katherine M. Anthony*
Katherine M. Anthony (BBO #685150)
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3918
katherine.anthony@americanoversight.org

*Counsel for Plaintiff American Oversight*

14

**<u>LOCAL RULE 7.1 CERTIFICATE</u>**

I hereby certify that I conferred with opposing counsel by electronic mail concerning this emergency motion on August 22, 2022.  The defendant does not assent to the relief requested herein.

Dated: August 22, 2022                     *<u>/s/ Daniel L. McFadden</u>*
                                                        Daniel L. McFadden