UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN CIVIL LIBERTIES UNION,
OF MASSACHUSETTS; and
AMERICAN OVERSIGHT,

                Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                Defendant.

Civil Action No. 1:21-cv-10761-AK

## MOTION FOR (LIMITED) RECONSIDERATION OF PRESERVATION ORDER

Defendant hereby seeks partial reconsideration of the Court's September 1, 2022 order requiring preservation of certain evidence and a search of one particular cellular telephone that ICE had already undertaken. The motion for reconsideration is very narrow, as is explained below.[1] The government recognizes that the Court is unlikely to vacate its order given the missed deadline and the fact that the order merely formalizes what Defendant was already doing. Thus, while it is Defendant's position that the order was unnecessary, it cannot also argue that the order

---

[1] The Court allowed Plaintiffs' motion for preservation of evidence on the ground that it was unopposed. This is undersigned counsel's error; he thought he had obtained a one week extension, making Defendant's opposition due today, September 1, 2022. In fact, counsel prepared an opposition to the TRO motion, discussed it with ICE counsel and could easily have filed it on August 25, 2022. But, on that date, undersigned counsel emailed ICE counsel and told her that the brief was not due until September 1, 2022 because he had obtained a one week extension. It is clear that this was mistaken, and the only explanation that makes sense is that counsel for the government was before this Court on August 24, 2022 in a different case (*Singh v. Riordan*, 21-cv-11304 AK), and in that case the Court granted government counsel an extension. Confusing the two cases, if that is what occurred, is unacceptable, but perhaps understandable given that counsel has had approximately 10 briefing deadlines in the second half of August.

1

is a significant burden.

However, the content of the TRO motion requires a response on the record as it makes incorrect statements and implications that are simply unsupported.[2]

**A. <u>The Order Is Overbroad</u>**

The principal ground upon which Defendant seeks reconsideration of the Court's order is that it is overbroad in two significant ways.[3]  First, the order requires Defendant, ICE, to "preserve in their present condition all mobile devices, including cellular telephones, within its possession, custody, or control, that were issued at any time by any government agency to [the seven named ICE officials]."  By its terms, this requires ICE to reach out to **all** governmental agencies to determine if they issued a mobile device to any of the named individuals ***at any time***.  But this is a FOIA case brought to enforce a request for information made to ICE and ICE alone.  Neither Plaintiffs, nor the Court, have the right or the power to require government-wide action in a FOIA case filed against a particular agency.  In other words, because Plaintiffs chose to make a FOIA request to ICE, they cannot now seek the equivalent of broad civil discovery and evidence preservation from other agencies.

Therefore, Defendant requests that the Court's order be modified to require preservation of only those devices that were issued by ICE to the named individuals and in their possession as of the underlying incident involving state court Judge Shelley Joseph and Officer MacGregor from

---

[2] Plaintiffs have made statements to the media attempting to link this case to other situations in which issues of text message preservation have arisen.  This is sensationalistic and illogical, as the cited situations involve different agencies and likely different situations (former versus current employees' phones, for example).

[3] Clearly, if Defendant had not been mistaken about the deadline for opposing the TRO, the Court would have been given the opportunity to consider Defendant's arguments regarding both the lack of necessity for any order as well as the overbreadth of Plaintiffs' requests.  It is Defendant's fault that the Court did not have its response.

March 15, 2018, through April 25, 2019.[4]

### B. Plaintiffs Did Not Show a Need for the Order

While Defendant is not asking the Court to vacate its order, but instead to modify it in one narrow regard only, the hyperbole and misinterpretation of the facts by Plaintiffs requires correction. First, there is nothing in Plaintiffs' motion that suggests any possibility that Defendant intended to alter or erase any content on the phones. The affidavits filed by Defendant do not remotely support such an interpretation. ICE has no intention of destroying responsive documents that may exist on the phones.[5]

As regards the search of the phone that was assigned to Jon Feere, Plaintiffs themselves stated in their TRO motion that ICE was already committed to attempting to unlock and search that phone. The Court's order accepts that this is already happening. There was no need for an order regarding the Feere phone. However, since the Court's order merely requires ICE to do what

---

[4] Defendant has no information that any other agency issued an electronic device to any of the seven named individuals. But it should not be required to conduct a government-wide inquiry given that this litigation is about a FOIA request to ICE only.

[5] Plaintiffs refer to a policy whereby departing employees' phones are deactivated, which means text messages are lost, but none of the seven individuals is in possession of their cell phones from the relevant period. Five of the seven mobile devices were confirmed deactivated per the Court's June 3, 2022 order, which means there were no data or text messages on the mobile devices when the mobile devices were returned to the property custodians. Plaintiffs claim that five phones were not actually checked to see if the text messages were, in fact, gone. This is incorrect and reflects a fundamental misunderstanding of how cell phones work. Once a phone is deactivated, there is no data from the carrier preserved. Text messages no longer exist on the phone. And, as described in the Clark declaration, when ICE deactivates a cell phone, all data, including anything stored in memory, is wiped clean. Thus, as Plaintiffs know, there is no data on the phones to preserve. The two remaining mobile devices belonged to Nathalie Asher and Jon Feere. Nathalie Asher retired in December of 2021. The Office of Professional Responsibility (OPR) conducted a search of the phone and determined there were no responsive text messages or emails on it. The Feere phone is in ICE's possession, and Plaintiffs' own motion acknowledges that ICE is attempting to unlock the phone so it can search it. How Plaintiffs derive an emergency requiring judicial intervention from these facts is, frankly, unfathomable.

it was already doing, Defendant is not seeking to modify or vacate that portion of the order.

### C. FOIA Requires Only That an Agency Make a Reasonable Search

Plaintiffs have insinuated that ICE has somehow acted in bad faith in response to their request despite Defendant's multiple and extensive searches. First, as the declarations filed previously with the Court establish, ICE has made multiple diligent searches in a rigorous and good-faith effort to locate responsive documents. Second, it is also important to note that the FOIA request was received approximately three months before the COVID pandemic began. As the Court is well aware, the pandemic reduced the available workforce everywhere[6] Moreover, DHS, including ICE, receives an enormous volume of FOIA requests, with the total increasing every year. Beginning in fiscal year ("FY") 2018, the ICE FOIA Office experienced a substantial and dramatic increase in the number of FOIA requests received by ICE compared to previous years. In FY 2015, the ICE FOIA Office received 44,748 FOIA requests; 63,385 FOIA requests were received in FY 2016. The number of requests received briefly decreased in FY 2017 to 47,893 but was then followed by a spike of 70,267 FOIA requests in FY 2018. In FY 2019, that number climbed to a total of 123,370 requests received and in FY 2020 the ICE FOIA Office received 114,475 FOIA requests. Between FY 2017 and FY 2020, the ICE FOIA Office experienced approximately a 240% increase in FOIA requests.[7]

Absent a court order or some compelling circumstance, FOIA requests are generally handled on a first in, first out priority.[8] The claimed delay in responding to the FOIA request in

---

[6] *See* Dep't of Justice, *Summary of Annual FOIA Reports for Fiscal Year 2022* at 2, located at FY 21 DHS Annual FOIA Report.pdf.

[7] See Exhibit 1, Declaration of Fernando Pineiro, filed herewith, at ¶ 5-6.

[8] *See, e.g., Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C. Cir. 1976)(FOIA "due diligence" requirement may be satisfied by an agency's good faith processing of all requests on a "first-in/first-out" basis and that a requester's right to have his request processed

this case is, in fact, the unfortunate reality of DHS and ICE's FOIA work load.  Similar to the backlog in processing visa applications on behalf of U.S. Citizenship and Immigration Services or the State Department, what appears to be unreasonable in a specific case must be considered as part of a virtual tsunami of other FOIA requests.[9]

FOIA does not require that the receiving agency drop all other FOIA requests, much less all non-FOIA activity, and instantly process a new FOIA request.  Nor does the statute require a federal agency to issue a "litigation hold" immediately upon receiving a request. *Houser v. U.S. Dep't of Health & Hum. Servs*., 486 F. Supp. 3d 104, 114 (D.D.C. 2020)(absent a showing that the government has improperly destroyed agency records, not important that a litigation hold was not issued).  Therefore, as between ICE's overall FOIA work load and the outbreak of COVID-19, as well as the "first in, first processed" approach to requests, the delay between when the FOIA request was made and when ICE took steps to find responsive documents was entirely reasonable.

The touchstone for evaluating an agency's response to a FOIA request is whether it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.[10]  It does not have to show that it made

---

out of turn requires a particularized showing of exceptional need or urgency).

[9] Indeed, the ACLU is responsible for a significant portion of the increase in FOIA litigation in this district, as a search of PACER for "ACLU" or its full name indicates over 25 cases in which it is a plaintiff, amicus or interested party.  And that is just the District of Massachusetts.

[10] *Nation Magazine v. U.S. Customs Serv*., 71 F.3d 885, 890 (D.C. Cir. 1995); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Stalcup v. CIA*, 768 F.3d 65, 74 (1st Cir. 2014) (noting that resolution of search claim 'turns on whether the agency made a good faith, reasonable effort using methods which can be reasonably expected to produce the information requested"; *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (noting that crucial search issue is whether agency's search was reasonably calculated to discover the requested documents).

a perfect search or that it ensured that every last document was preserved.[11]

Moreover, as regards the reasonableness of a search, agency declarations are entitled to a presumption of good faith.[12] Consequently, the failure of a search to produce particular documents, or mere speculation that as yet uncovered documents might exist, does not undermine the adequacy of a search.[13]

---

[11] *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Veterans Affs.*, 828 F. Supp. 2d 325, 335 (D.D.C. 2011)(noting defendant's position that no case holds that agencies must preserve, restore, and search evidence whenever a pending FOIA request seeks electronic records); *Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003), aff'd, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004); *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (finding agency search is "not unreasonable simply because it fails to produce all relevant material"); *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) ("the factual question . . . is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant"); *In re Wade*, 969 F.2d at 249 n.11 (same); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d. 479, 498 (S.D.N.Y. 2010) (noting that discovery of two additional responsive documents in an area that the CIA determined would probably not lead to uncovering responsive documents does not render the CIA's search inadequate); *Blanck v. FBI*, No. 07-0276, 2009 WL 728456, at *7 (E.D. Wis. Mar. 17, 2009); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("perfection is not the standard by which the reasonableness of a FOIA search is measured"); *Garcia v. DOJ*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) ("[t]he agency is not expected to take extraordinary measures to find the requested records").

[12] *Chilingirian v. EOUSA*, 71 F. App'x 571, 572 (6th Cir. 2003) (*citing U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)); *Carney*, 19 F.3d at 812 (holding that "affidavits submitted by an agency are accorded a presumption of good faith"; *Havemann*, 629 F. App'x at 539; *Coyne v. United States*, 164 F. App'x 141, 142 (2d Cir. 2006); *Peltier v. FBI*, No. 03-905, 2005 WL 735964, at *4 (W.D.N.Y. Mar. 31, 2005) (same); *Butler v. SSA*, No. 03-0810, slip op. at 5 (W.D. La. June 25, 2004), (same), *aff'd on other grounds*, 146 F. App'x 752, 753 (5th Cir. 2005).

[13] *Kucernak v. FBI*, 129 F.3d 126, 126 (9th Cir. 1997) ("[m]ere allegations that the government is shielding or destroying documents does [sic] not undermine the adequacy . . . of the search") (unpublished table decision); *Lasko v. DOJ*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010); *Assassination Archives Research Ctr. v. CIA*, No. 18-5280, 2019 WL 691517, at *1 (D.C. Cir. Feb. 15, 2019) (finding search adequate notwithstanding search did not locate several records requester speculated existed); *Clemente v. FBI*, 867 F.3d 111, 118 (D.C. Cir. 2017)(same); *Pub. Emp. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 200 (D.C. Cir. 2014) (noting that "an agency's failure to turn up every responsive document in an initial search is not necessarily evidence of bad faith"); *Steinberg*, 23 F.3d at 552; *Attkisson v. DOJ,* 205 F. Supp. 3d 92, 95 (D.D.C. 2016) (same); *Pinson v. DOJ*, 61 F. Supp. 3d 164, 179 (D.D.C. 2015) (finding that "the fact that additional documents responsive to [the]

### D. There Is No Evidence of Bad Faith Here

The target cell phones were not deactivated in response to the FOIA litigation. Plaintiffs have not, and cannot, suggest otherwise. In fact, the picture Plaintiffs present is that the phones were deactivated in the normal course of ICE business as regards to employees leaving.[14] Plaintiffs are trying to retroactively narrow the very broad scope of their FOIA requests to bolster the argument that ICE knew Plaintiffs were interested in text messages on the cellular telephones of the named individuals and that the alleged failure to preserve the contents of the phones is bad faith. This ignores the reality that (a) ICE cannot respond to every new FOIA request immediately; and (b) ICE in this case made a reasonable and good faith search- actually, multiple searches.

As was demonstrated in the declarations filed with the Court, ICE does not have a central, overarching infrastructure capable of preserving text messages. ICE does not have the technical

---

requests may exist, or that the agency's searches have been imperfect, does not mean that the searches were inadequate"); *Kintzi v. Office of the Att'y Gen.*, No. 08-5830, 2010 WL 2025515, at *6 (D. Minn. May 20, 2010) ("No evidence before the court indicates that the document [plaintiff] seeks exists. Therefore, the court determines that the [agency] conducted a reasonable search and properly denied [the] request."); *Kromrey v. DOJ*, No. 09-376, 2010 WL 2633495, at *1 (W.D. Wis. June 25, 2010) ("While plaintiff alleges that there must be more records, he has produced no evidence that there are any additional records, nor does he dispute the fact that the FBI conducted a search reasonably designed to yield documents responsive to his request"), *aff'd*, 423 F. App'x 624 (7th Cir. 2011); *Clemente v. FBI*, 741 F. Supp. 2d 64, 79 (D.D.C. 2010) (same); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 405 F. Supp. 2d 3, 5 (D.D.C. 2005) (rejecting plaintiff's assertion that additional documents must exist "given the magnitude of the [alleged] scandal" that was subject of its request); *Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004).

[14] Plaintiffs seem to be making some kind of claim that the deactivation was a consequence of an executive order by (then) President Trump. But federal agencies do not keep government-issued cell phones preserved upon an employees' termination. Typically, the phone is deactivated and restored to its original condition – i.e., without any data – and reassigned to another employee. Thus, with or without an executive order, the target phones would not have been preserved unless it was known to the persons handling the phone at the time of the employees' departure that there was a pending FOIA request or litigation that might implicate the phones. And this gets back to the misguided notion that an agency has an immediate duty to issue some type of litigation hold upon receipt of a FOIA request.

ability to search its employees' text messages. The only way is by a manual review of the actual cellular telephone *if* the messages still exist on the phone. In this case, there is no evidence that any responsive messages *ever* existed on the targeted telephones, and certainly no evidence that such messages exist now. FOIA does not require an agency to search records that it cannot search. *Wilson v. DOJ*, 270 F.Supp.3d 248, 255 (D.D.C. 2017) (rejecting argument that agency violates FOIA when, because of technical inability, it does not search a particular file); *Lockett v. Wray*, 271 F.Supp.3d 205, 210 (D.D.C. 2017) (summary judgment for agency where agency had "inability" to conduct requested search); *Moore v. Nat'l DNA Index. Sys.*, 662 F.Supp.2d 136, 139 (D.D.C. 2009) (where the requested search is "literally impossible for the defendants to conduct," not searching satisfies FOIA's requirement to conduct a search reasonably calculated to uncover responsive documents).

Plaintiffs' focus on the purported failure of ICE to preserve the phones in light of the FOIA request is misplaced. As stated, the FOIA request could not be addressed immediately given the backlog of older requests and the pandemic. Plaintiffs' argument that ICE had an obligation to preserve the phones simply because it received a FOIA request is, at base, an argument about ICE's document retention policies. It is not cognizable in a FOIA action.. But this is a FOIA action. *See* Dkt. 1; *see also, e.g., Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 154 (1980) ("Congress never intended, when it enacted the FOIA, to displace the statutory scheme embodied in the Federal Records Act and the Federal Records Disposal Act providing for administrative remedies to safeguard against wrongful removal of agency records").[15]

---

[15] As stated in *Forsham v. Harris*, 445 U.S. 169, 186 (1980), "FOIA imposes no duty on the agency to create records." There is no duty on an agency to copy the contents of a cellular telephone of a departing employee based upon the chance that the contents might be responsive to a FOIA request. Critical here is that at the time the target telephones were taken out of service, the FOIA tracker/inquiry had not been disseminated due to the FOIA backlog. Therefore, there

## CONCLUSION

There was simply no need for a Court order as there was no evidence that the phones were in any danger of destruction or that data will be removed from any that still have data. The evidence before the Court and Plaintiffs actually established the opposite. Plaintiffs misinterpreted the supplemental declarations to create a controversy that is nonexistent.

However, Defendant requests only that the Court modify subparagraph (a) of its order to require preservation of devices issued to the named employees by ICE, rather than by any governmental agency, and for the time period relevant to the original FOIA request.

Respectfully submitted,

MARY M. MURRANE
Chief, Civil Division

Dated: September 3, 2022            By:   */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
Tel.: 617-748-3100
Email: thomas.kanwit@usdoj.gov

## CERTIFICATE OF SERVICE

I, Thomas E. Kanwit, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

---

was no reason to suspect that the phone contents required preservation, particularly since the agency's policy is that text messages should not be used to conduct official agency business and, if they are, those messages should be separately preserved. This is a general responsibility of the individual employee, however, and it goes to ICE's record preservation practices and not to the adequacy of its FOIA search.

9

Dated:  September 3, 2022        By:    */s/ Thomas E. Kanwit*
                                        Thomas E. Kanwit
                                        Assistant United States Attorney