**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

AMERICAN CIVIL LIBERTIES UNION OF
MASSACHUSETTS and AMERICAN
OVERSIGHT,

        Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

        Defendant.

C.A. No. 1:21-cv-10761-AK

---

<u>**MEMORANDUM IN OPPOSITION**</u>
<u>**TO DEFENDANT'S MOTION FOR (LIMITED) RECONSIDERATION**</u>
<u>**OF PRESERVATION ORDER**</u>

Defendant U.S. Immigration and Customs Enforcement ("ICE") has asked the Court to reconsider and narrow its September 1, 2022 Order, which granted plaintiffs' unopposed motion to require ICE to preserve certain mobile devices.

For the reasons described below, ICE's motion should be denied.

**A. The Motion Should Be Denied Because ICE Did Not Confer With Plaintiffs Or Argue That The Relevant Legal Standards Are Met.**

ICE's motion should be denied, in part, because it did not confer—or apparently make any attempt to confer—with plaintiffs prior to filing this motion. *Compare* D. Mass. Local Rule 7.1(a)(2), *with* Mot. (D.E. 62) at 9-10 (no L.R. 7.1 certification). This is unfortunate because, as discussed below, ICE's request appears to be premised on a misreading of the Court's Order. Had plaintiffs been consulted, the parties could have discussed ICE's concerns and perhaps narrowed the disputed issues. In all events, ICE's failure to even attempt to confer as required by Local Rule

7.1 is a basis to deny the motion.  *See, e.g.*, *Bessette v. IKO Indus., Inc.*, No. 19-40017, 2020 WL 3412711, *1 (D. Mass. Apr. 22, 2020).

Further, although ICE's submission is styled as a motion for reconsideration, the motion does not discuss the legal standards for such relief.  "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'"  *Fabrica de Muebles J.J. Alvarez v. Inversiones Mendoza*, 682 F.3d 26, 31 (1st Cir. 2012) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)).  "'[C]ourts should be loathe to [reconsider orders] in the absence of extraordinary circumstances . . . .'"  *Echavarria v. Roach*, No. 16-11118, 2021 WL 4477433, at *2 (D. Mass. Sept. 30, 2021) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).  Consequently, "'a court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order.'"  *Id.* (quoting *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000)); *see also United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (reconsideration is "appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.").  Accordingly, "'motions for reconsideration are not to be used as a vehicle for a party to undo its own procedural failures[.]'"  *Sullivan v. Dumont*, 391 F. Supp. 3d 161, 164 (D. Mass. 2019) (quoting *Allen*, 573 F.3d at 53).

ICE's motion does not argue that any of these grounds for reconsideration are present. They are not.  There has been no change in law since the Court's Order.  ICE has not offered any previously unavailable evidence.  And the Court did not commit a "manifest error of law" or other injustice by allowing a motion for preservation of records in a civil case, where no opposition had

been filed by the ordered deadline or for nearly a week thereafter.  *See, e.g.*, *Tomon v. Entergy Nuclear Operations, Inc.*, C.A. No. 05-12539, 2011 WL 3812708, at *1 (D. Mass. Aug. 25, 2011) (denying reconsideration of denial of untimely motion to dismiss because "[i]t was neither a manifest error of law nor unjust to adhere to the operative scheduling order").  Reconsideration should be denied for this reason, as well.

### B. The Motion Should Be Denied Because It Appears To Be Premised On A Misreading Of The Court's Order.

 ICE's motion should also be denied because it appears to be premised on a misreading of the Court's Order.  That Order properly requires, among other things, that, "[ICE] preserve . . . all mobile devices, including cellular telephones, *within its possession, custody, or control*, that were issued at any time by any government agency to" seven senior ICE officials.  *See* Sept. 1, 2022 Order (D.E. 60) (emphasis added).  The phrase "issued at any time by any government agency" is necessary because ICE has admitted that at least one of its officials (Jon Feere) "used during his employment with ICE" a mobile device that was "issued outside of normal procedures i.e. carried over *from a previous agency*."[1]  *See* Suppl. Clark Decl. (D.E. 56) ¶15 (emphasis added).  It is presently unclear how many of the other officials had similar arrangments.

If the Court's Order was limited solely to devices specifically issued *by ICE* (as ICE now proposes it should be), then any devices used by ICE officials but issued by other agencies would remain subject to deletion, even when they are in ICE's "possession, custody, or control," and even when ICE officials used them for ICE business.  That could clearly result in the deletion of potentially responsive records.  And ICE's motion admits that deletion is exactly what ICE and

---

[1] In its reconsideration motion, ICE represents that it "has no information that any other agency issued an electronic device to any of the seven named individuals."  *See* Mot. (D.E. 62) at 3 n.4.  But, as noted above, ICE's own declaration concerning Mr. Feere appears to prove that this assertion is not accurate.  *See* Suppl. Clark Decl. (D.E. 56) ¶15.

other government agencies will generally do in the absence of a court order.  *See* Mot. (D.E. 62) at 7 n.14 ("[F]ederal agencies do not keep government-issued cell phones preserved upon an [employee's] termination.").

Nevertheless, ICE argues that the phrase "issued at any time by any government agency" purportedly "requires ICE to reach out to *all* governmental agencies to determine if they issued a mobile device to any of the named individuals *at any time*."  Mot. (D.E. 62) at 2 (emphases in original). Plaintiffs do not understand ICE's reasoning.  ICE does not explain why it thinks devices "within its possession, custody, or control" will be found at other government agencies.  ICE did not present any evidence that is the case.  Nor has ICE explained why, if a device in its own "possession, custody, or control" is physically located at a different agency, it would be burdensome for ICE to ensure its continuing preservation.  Certainly ICE has not shown that the Court committed any "manifest error of law" when it issued a preservation order that is reasonably tailored to address only devices over which ICE has "possession, custody, or control," which is the familiar standard for preserving and collecting documents in every civil litigation.  *See e.g.*, *Allen*, 573 F.3d at 53; *Echavarria,* 2021 WL 4477433, at *2.

Similarly, ICE summarily asserts that the preservation order should cover "only those devices . . . in [the named custodians'] possession as of the underlying incident involving state court Judge Shelley Joseph and Officer MacGregor from March 15, 2018, through April 25, 2019." Mot. (D.E. 63) at 2-3.  Again, plaintiffs are unclear about ICE's reasoning.  At present, ICE has only identified one phone for each custodian.  *See* Suppl. Clark Decl. (D.E. 56) ¶14.  ICE has made no showing that any of those devices were issued and used entirely before or after the date range of the FOIA request.  *See id.*  Nor has ICE apparently examined most of the devices to determine the date range of any preserved information.  *See id.* ¶¶14-15; *see also* Mot. (D.E. 63) at 3 n.5.

If ICE ever actually locates a device that was issued and returned entirely outside the date range of the FOIA request, and that contains no preserved data from that time period (e.g., copied over from a previously returned device), then plaintiffs would be happy to confer with ICE about how to handle that situation.  If the question cannot be resolved by agreement, then the issue can be briefed.  But, on the present facts, ICE has not made any showing that the Court's Order was a manifest error of law.  *See, e.g.*, *Allen*, 573 F.3d at 53 (1st Cir. 2009); *Echavarria*, 2021 WL 4477433, at *2.  ICE's motion should thus be denied.

### C.  The Motion Should Be Denied Because The Majority Of The Argument Addresses Issues That The Court's Preservation Order Did Not Even Decide.

The majority of ICE's motion argues about whether ICE conducted a good faith and reasonable search in response to the underlying FOIA request.  *See* Mot. (D.E. 63) at 4-8.  But the Court's preservation order did not decide those questions.  *See* Sept. 1, 2020 Order (D.E. 60) (finding preservation is "necessary to preserve Plaintiffs' rights" and "not unduly burdensome"). Preservation can be ordered even without a showing of "bad faith."  *See Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, No. 14-765, 2016 WL 10676292, at *3 (D.D.C. Dec. 12, 2016) (ordering preservation even where the "Court presume[d] . . . good faith); *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 147 (D. Mass. 2005) (ordering preservation where "necessary" and "not unduly burdensome").   And ICE cannot use a motion to reconsider a preservation order to collaterally attack an entirely different summary judgment order with information it could have— but did not—submit in the original summary judgment briefing.  *See Sullivan*, 391 F. Supp. 3d at 164 (explaining that "'motions for reconsideration are not to be used as a vehicle for a party to undo its own procedural failures[.]'" (quoting *Allen*, 573 F.3d at 53)).   ICE will have a fair opportunity to brief these issues when the Court addresses renewed motions for discovery and/or summary judgment.  But they do not justify reconsideration of an order to preserve records.

In any event, particularly given ICE's motion accuses plaintiffs of making "incorrect statements," of asserting "implications that are simply unsupported," and of "hyperbole and misinterpretation of the facts," *see* Mot. (D.E. 62) at 2-3, it is worth clarifying certain facts:

First, ICE appears to confirm that, for the five devices that have been purportedly "deactivated," nobody has actually looked at the devices to determine what data, if any, remains. *See* Mot. (D.E. 62) at 3 n.5. ICE's motion nevertheless includes representations of its counsel that "[o]nce a phone is deactivated . . . [t]ext messages no longer exist on the phone," and that "when ICE deactivates a cell phone, all data . . . is wiped clean." *See id.* at 3. ICE claims that "as Plaintiffs know, there is no data on [these] phones to preserve." *See id.* Plaintiffs obviously have no special knowledge of how ICE's phones work, but the record presently does not support ICE's assertions. As plaintiffs explained in their preservation motion, *see* Preserv. Mot. (D.E. 58) ¶15, the two "wiping" instructions submitted by ICE do not mention deactivation, *see* Supp. Clark Decl. Exs. A & B (D.E. 56-1 & 56-2), nor has ICE explained what "deactivation" means or how it "confirmed" that these particular devices were, in fact, "deactivated," *see* Supp. Clark Decl. ¶15 (D.E. 56).[2] ICE could presumably examine these five devices to determine what, if any, data remains, but so far has not done so, for reasons it has not explained.

Second, ICE argues that "there is nothing in [the preservation motion] that suggests any possibility that [ICE] intended to alter or erase any content on the phones." *See* Mot. (D.E. 62) at 3. That is wrong. As plaintiffs explained in their motion, ICE's own declarations contend that it

---

[2] Indeed, despite the claim in ICE's motion that appears to conflate "deactivation" with "wiping," the instructions ICE submitted make clear that a user must take affirmative steps to "wipe" data prior to turning off and handing in the device, suggesting that mere "deactivation" is insufficient to delete a device's contents. *See* Supp. Clark Decl. Ex. A at 2 (D.E. 56-1) (instructing user to "[s]elect 'Erase All Contents and Settings'"); Ex. B at 3 (56-2) (same). ICE's purported confirmation as to the dates of deactivation thus fails to demonstrate that the specific devices in question were in fact wiped.

ordered the deletion of data on such devices, that it did not issue any "litigation hold" for this litigation or the underlying FOIA request, and that five of the seven devices located to date were (ICE claims) already deleted.  *See* Preserv. Mot. (D.E. 58) ¶¶12-16.

Third, ICE argues that there "is no evidence of bad faith" because "the picture Plaintiffs present is that the phones were deactivated in the normal course of ICE business as regards to employees leaving."  *See* Mot. (D.E. 62) at 7.  To the contrary, as Plaintiffs explained in the Preservation Motion, *see* Preserv. Mot. (D.E. 58) ¶¶17 & 18, there is evidence that purported phone deletions were not timed to employee departures.  Thomas Homan's device was purportedly deleted six month after he left, Ronald Vitiello's device was purportedly deleted more than a year and a half after he left, and Matthew Albence's device was purportedly deleted more than six months before his departure.  *See id.*  Further, according to a public LinkedIn profile,[3] Thomas Blank departed ICE in June 2019, but ICE contends that his device was purportedly deleted almost a year later in May 2020.  *See* Supp. Clark Decl. (D.E. 56) ¶14.  And according to a Department of Justice press release archived by the American Immigration Lawyers Association (AILA),[4] ICE's Principal Legal Advisor Tracy Short became the Chief Immigration Judge for the Executive Office of Immigration Review (EOIR) in July 2020.  Yet ICE contends that his device was not deleted until January 19, 2021, the day before the inauguration.  *See* Supp. Clark Decl. (D.E. 56) ¶14.  In other words, it appears that *none* of the five purportedly deleted devices were actually deleted at or around the time of the custodian's departure from the agency.

---

[3] Tom Blank, LinkedIn, https://www.linkedin.com/in/tom-blank-024a854 (last visited Sept. 7, 2022).

[4] *EOIR Announces New Chief Immigration Judge*, July 2, 2020, *available at* https://www.aila.org/infonet/eoir-tracy-short-chief-immigration-judge.

Fourth, ICE asserts that, for Nathalie Asher's phone, ICE's "Office of Professional Responsibility (OPR) conducted a search of the phone and determined there were no responsive text messages or emails on it."  *See* Mot. (D.E. 62) at 3 n.5.  To be clear, that is not what ICE's declaration says.  The Second Schurkamp Declaration does not say that any emails were searched and does not even say that all the text messages were searched.  *See* Sec. Suppl. Schurkamp Decl. (D.E. 55) ¶14.  Rather, the declaration says only that OPR searched "text messages *between Natalie Asher and other custodians named in Plaintiffs' FOIA Request*."  *See id.* (emphasis added).  Plaintiffs reserve the right to contest the adequacy of that search at the appropriate time.

Fifth, ICE accuses the ACLU of Massachusetts of being "responsible for a significant portion of the increase in FOIA litigation in this district," because ACLUM has purportedly been a "plaintiff, amicus or interested party" in 25 cases.  *See* Mot. (D.E. 62) at 5 n.9.[5]  ACLUM is not sure how ICE calculated this number, but the figure is not surprising given that FOIA has existed since 1967, and ACLUM since 1920.  An ECF search indicates that ACLUM is currently a plaintiff in three pending FOIA cases in this district, filed over a roughly four-year period from 2019 through 2022.[6]  In all events, there is nothing disreputable about FOIA lawsuits.  Such suits are

---

[5] ICE's motion also attached a 2021 decision from another district, highlighting a paragraph identifying American Oversight as a "frequent flyer" in FOIA litigation, and identifying "some nonprofit[]" organizations as filing "a disproportionate number" of FOIA lawsuits. Mot. Ex. 3 at 8 (D.E. 62-3). As American Oversight has pointed out in response to similar statements from the executive branch, empirical analysis by the FOIA Project has demonstrated that requesters have been waiting *longer* to sue on FOIA requests in recent years than they had in the past. *See* Am. Oversight, *The Increase in FOIA Lawsuits Isn't the Problem—It's Agencies Underfunding their Transparency Obligations*, Mar. 17, 2020, https://www.americanoversight.org/the-increase-in-foia-lawsuits-isnt-the-problem-its-agencies-underfunding-their-transparency-obligations (citing FOIA Project Staff, *FOIA Suits Rise Because Agencies Don't Respond Even as Requesters Wait Longer to File Suit*, Dec. 15, 2019, https://foiaproject.org/2019/12/15/foia-suits-rise-because-agencies-dont-respond-even-as-requesters-wait-longer-to-file-suit/).

[6] In addition to this case, ACLUM is a plaintiff in *ACLUM v. DHS et al.*, C.A. No. 19-12564 (D. Mass.) & *ACLUM v. ICE*, C.A. No. 22-10407 (D. Mass.).  Additionally, *ACLUM v. DOJ et al.*, C.A. No. 19-12242 (D. Mass.) is administratively closed pending ongoing document productions by the government, but could be re-opened later to address any resulting disputes.

sometimes necessary to uncover questionable conduct that the government would not otherwise disclose.  For example:

- After then-President Trump tweeted that he "just gave out a 115 mile long contract for another large section of the Wall in Texas," a search by U.S. Customs and Border Protection (CBP) could not locate any such contract. *See ACLUM v. DHS et al.*, No. 19-10291 (D. Mass.).[7]

- In response to requests by ACLUM for remarks given by Ronald Vitiello and Matthew Albence to the National Sheriffs' Association in 2019, ICE incorrectly withheld draft talking points and did not demonstrate that it conducted an adequate search, resulting in a need for "limited focused discovery." *See ACLUM v. ICE*, 448 F. Supp. 3d 27, 36-45 (D. Mass. 2020) (Sorokin, J.).

- In this case, that senior ICE officials celebrated the indictment of a judge based on an alleged order she issued from the bench as "a great day" and "the first of many?" *See* Oehlke Decl. Ex. Q (D.E. 33-17) at 5, 53.

## CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that ICE's reconsideration motion be denied.

---

[7] Declaration regarding search, transcript, and selected other filings available at: https://www.aclum.org/en/cases/aclu-massachusetts-v-department-homeland-security.

Dated: September 7, 2022                              Respectfully submitted,

*/s/ Daniel L. McFadden*
Daniel L. McFadden (BBO #676612)
Matthew R. Segal (BBO #654489)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org

*Counsel for Plaintiff American Civil Liberties*
*Union of Massachusetts, Inc.*


*/s/ Katherine M. Anthony*
Katherine M. Anthony (BBO #685150)
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3918
katherine.anthony@americanoversight.org

*Counsel for Plaintiff American Oversight*