### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

AMERICAN CIVIL LIBERTIES UNION,
OF MASSACHUSETTS; and
AMERICAN OVERSIGHT,

            Plaintiffs,

            v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

            Defendant.

Civil Action No. 1:21-cv-10761-AK

## OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY
## AND RENEWED MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This is a Freedom of Information Act case.  It is not a Federal Records Act case, and it is certainly not a case about whether a state court judge is obligated to honor a lawful federal detainer or not.[1]

Regardless of how one feels about ICE officers arresting state defendants in state court, a state judge is not free to disregard an ICE detainer and to conspire with others to circumvent that

---

[1] Given Plaintiffs' hyperbole regarding the underlying subject matter of their FOIA request, it is worth recounting the incident that led to all of this.  A state court judge unlawfully went off record during a criminal proceeding involving a defendant as to whom ICE had lodged a lawful federal detainer and then facilitated the defendant in evading an ICE officer who was at the courthouse to enforce the detainer. *See* Ellen Barry, When the Judge Became the Defendant, N.Y. Times, Nov. 16, 2019, https://www.nytimes.com/2019/11/16/us/shelley-joseph-immigration-judge.html?smid=nytcore-ios-share.  A federal grand jury found probable cause that the judge conspired to obstruct justice.

lawful document.  The dismissal is not a vindication of the judge.[2]  There is no evidence cited by Plaintiffs in support of their wild speculation that ICE officials sought an indictment of the judge to coerce other state judges into doing what ICE wanted.  *See* Memorandum in Support of Motion for Discovery at 4.  Moreover, what Plaintiffs are investigating is irrelevant to the FOIA litigation; all that matters is the FOIA request itself and whether a reasonable search was made.

## II.  CORE FACTS

Plaintiffs have attempted to narrate the FOIA case events as if ICE deliberately and nefariously destroyed responsive documents. That is not the case. A brief chronology may assist the Court:

| | |
|---|---|
| 02/23/18 | DHS Policy Directive 141-03 (Electronic Records Management Updates for Chat, Text, and Instant Messaging) that was issued on February 23, 2018 explicitly forbids ICE from using technology platforms (i.e. chats, apps, SMS etc.) as repositories for retaining federal records as a matter of practice.) [Schurkamp decl. ¶ 14]  DHS Directive 141-03 also notes that, "All internal DHS chat/messaging systems (i.e., Lync, Skype, or other tools) must display a banner/disclaimer prohibiting the system to be used to formally transact agency business or to document the activities of the organization. However, if business is transacted using one of these platforms, individuals must take appropriate steps to establish and maintain a separate record of the communication. *Id.*, at ¶¶ 15, 16. |
| 07/25/18 | Thomas Homan left ICE [2nd Supp. Clark decl.] |
| 02/26/19 | Thomas Homan's cell deactivated [Supplemental Clark decl. ¶ 14] |
| 04/26/19 | Ronald Vitiello left ICE [2nd Supp. Clark decl.] |
| 06/21/19 | Thomas Blank left ICE [2nd Supp. Clark decl.] |
| **11/19/19** | FOIA request sent to ICE [Schurkamp decl. ¶ 5] ICE acknowledged receipt via email same day. *Id.*, ¶ 6. Request seeks documents from 03/15/18 – |

---

[2] The indictment was dismissed contingent upon Judge Joseph referring herself to the state judicial ethics committee. A deferred prosecution agreement was reached with the court officer, Wesley MacGregor.

04/25/19.

| | |
|---|---|
| 05/21/20 | Thomas Blank's cell deactivated [Supplemental Clark decl. ¶ 14] |
| 06/27/20 | Tracy Short left ICE  [2nd Supp. Clark decl.] |
| 08/29/20 | Matthew Albence left ICE [2nd Supp. Clark decl.] |
| 09/03/20 | Matthew Albence's cell deactivated [Second Supplemental Clark decl.(Supplement Clark at ¶ 14 saying 2/20 was incorrect)] |
| 12/16/20 | Ronald Vitiello's cell deactivated [Supplemental Clark decl. ¶ 14] |
| 01/01/21 | Jon Feere's cell returned to custodian [Supplemental Clark decl. ¶ 14] |
| 01/20/21 | Jon Feere left ICE [2nd Supp. Clark decl.] |
| 02/19/21 | Tracey Short's cell deactivated [Supplemental Clark decl. ¶ 14] |
| **05/20/21** | Complaint was received by ICE. |
| **06/04/21** | ICE FOIA office tasked OCIO to search for all communications (including emails, email attachments, calendar invitations, text messages, memoranda, or other communication)  relating to the named individuals.  *Id.,* ¶ 24.  As of this date, only Natalie Asher was still employed by ICE. |
| 08/09/21 | ICE FOIA produced 66 pages of responsive documents to Plaintiffs.  *Id.,* ¶ 30. |
| 09/02/21 | ICE FOIA tasked additional search to ICE's Office of the Executive Secretariat.  *Id.*, ¶ 39. |
| 08/31/21 | ICE FOIA tasked Office of the Chief of Staff to search.  No records were located.  *Id.*, ¶¶ 44, 45. |
| 09/09/21 | ICE telephone conf. with P; ICE agreed to conduct additional searches using mutually agreed-upon terms.  *Id.*, at ¶ 31. |
| 10/06/21 | Additional records from new searches produced to Plaintiffs from OCIO and OES searches.  *Id.*, at ¶ 41. |
| 12/31/21 | Ms. Asher left ICE. |
| 12/31/21 | Nathalie Asher's cell returned to custodian. [Supplemental Clark decl. ¶ 14] |
| 10/12/22 | ICE lifted exemption 7(A) and produced 388 pages of records. |

The important facts to note are that one device was deactivated *before* the FOIA request was made (Homan's); while two other devices are likely to have been wiped clean prior to the FOIA request being issued because these employees left ICE before the FOIA request was issued (Vitiello and Blank). Two of the seven cellular devices at issue were not deactivated, in one case ever and in another case not until the device had been thoroughly searched (Feere's and Asher's devices respectively). Not a single cellular telephone was deactivated or wiped clean *after* the complaint was received.[3] Not one device had data deleted *after* the FOIA tracker/tasking went out to ICE sub-components. While four of the seven targeted devices were deactivated after the initial FOIA request, the sub-component of ICE that had possession of the devices had no knowledge of the FOIA request until June 4, 2021, at the earliest, because ICE handles FOIA requests on a first come, first served basis. It is also worth noting that ICE sent out the FOIA tasking within two weeks of receiving the lawsuit.

## III. ARGUMENT

### A. <u>ICE Conducted a Reasonable Search</u>

In Plaintiffs' brief on discovery, they make the unsupported claim that "[i]n this FOIA case, ICE took the unusual position that it should be excused from searching an entire category of records because they were destroyed by ICE's personnel." That is simply inaccurate. ICE has

---

[3] Defendant suggests that the Court keep in mind that ICE employees are told not to conduct agency business via text messages and to create some type of back up documentation if they nonetheless do so. Employees are free to delete text messages on an ongoing basis if the messages do not relate to agency business or if they have created a proper record. Upon leaving, employees are expected and instructed to remove all data, including text messages, prior to turning their cell phones in (again, with the caveat about making a lasting record of any agency-related messages). And, in a third and final phase, ICE deactivates former employee cell phones just before turning them over to a third party vendor for repurposing. *See* generally Richard Clark declarations attached hereto.

conducted multiple broad and reasonable searches, including looking for text messages on the cellular devices it still had (the Feere and Asher phones), as well as in electronic records where back up documentation of text messages might exist.  *See* Schurkamp declaration, attached to Defendant's Motion for Summary Judgment.  ICE did not ask to be excused from searching for documents that no longer exist. If Plaintiffs are suggesting that ICE has refused to search specific phones for text messages, that is also not so.   ICE *cannot* search the phones that have been deactivated as (a) ICE was no longer in possession of the phones after deactivation; and (b) there is no preservation of text messages after deactivation so even if ICE retained possession there would be nothing to search.  Simply put, ICE cannot search for something on a device it does not have and it cannot search for something that does not exist.[4]  Plaintiffs assert that Defendant has destroyed documents without differentiating between responsive documents and non-responsive documents. While it is possible that the process of turning in cell phones (half of which happened before the FOIA request was issued) resulted in the deletion of some content on those devices, there is no evidence whatsoever that any of that content was responsive to the FOIA request and there is unequivocal evidence that the deactivation occurred before the sub-component that had the phones even knew about the FOIA request.

It is important to note that this is not really a dispute about the search made by ICE,  it is a dispute about *when* ICE made that search and about ICE's recordkeeping.  The timing of the

---

[4] As stated in Richard Clark's prior declaration, "ICE has no means by which to systematically search mobile phones for text messages. ICE expects employees to move relevant text messages from their phones to a more appropriate system which meets federal records keeping requirements. [Upon termination of employment] [t]here would no longer be any copies of text messages within the telephone carriers or mobile device equipment providers infrastructure."  Clark decl. 2/9/22, ¶ 18.  Once a phone is deactivated, there are no texts on it.

search is a legitimate issue in FOIA litigation; however, an agency's recordkeeping is not.[5]

Plaintiffs have insinuated that ICE has somehow acted in bad faith in response to their request despite Defendant's multiple and extensive searches.  First, as the declarations filed previously with the Court establish, ICE has made multiple diligent searches in a rigorous and good-faith effort to locate responsive documents.  Absent a court order or some compelling circumstance, FOIA requests are generally handled on a first in, first out priority.[6]  The delay in responding to the FOIA request in this case is, in fact, the unfortunate reality of ICE's FOIA workload.  Similar to the backlog in processing visa applications on behalf of U.S. Citizenship and Immigration Services or the State Department, what appears to be unreasonable in a specific case must be considered as part of a virtual tsunami of other FOIA requests.

FOIA does not require that the receiving agency drop all other FOIA requests, much less

---

[5] *See, e.g., Houser v. HHS*, 486 F. Supp. 3d 104, 114–15 (D.D.C. 2020)(absent evidence of improper destruction of documents, court need not go beyond affidavits). It is also important to note that the FOIA request was received approximately three months before the COVID pandemic began.  As the Court is well aware, the pandemic reduced the available workforce everywhere.  *See* Dep't of Justice, Summary of Annual FOIA Reports for Fiscal Year 2022 at 2, located at FY 21 DHS Annual FOIA Report.pdf. Moreover, DHS, including ICE, receives an enormous volume of FOIA requests, with the total increasing every year.  Beginning in fiscal year ("FY") 2018, the ICE FOIA Office experienced a substantial and dramatic increase in the number of FOIA requests received by ICE compared to previous years. In FY 2015, the ICE FOIA Office received 44,748 FOIA requests; 63,385 FOIA requests were received in FY 2016. The number of requests received briefly decreased in FY 2017 to 47,893 but was then followed by a spike of 70,267 FOIA requests in FY 2018. In FY 2019, that number climbed to a total of 123,370 requests (which is nearly **500 new requests every working day**) received and in FY 2020 the ICE FOIA Office received 114,475 FOIA requests. Between FY 2017 and FY 2020, the ICE FOIA Office experienced approximately a 240% increase in FOIA requests.  See Exhibit 1 to Defendant's Motion for Reconsideration, Declaration of Fernando Pineiro,  at ¶ 5-6.

[6] *See, e.g., Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C. Cir. 1976)(FOIA "due diligence" requirement may be satisfied by an agency's good faith processing of all requests on a "first-in/first-out" basis and that a requester's right to have his request processed out of turn requires a particularized showing of exceptional need or urgency).

all non-FOIA activity, and instantly process a new FOIA request.  Nor does the statute require a federal agency to issue a "litigation hold" immediately upon receiving a request.  *Houser v. U.S. Dep't of Health & Hum. Servs.*, 486 F. Supp. 3d 104, 114 (D.D.C. 2020)(absent a showing that the government has improperly destroyed agency records, not important that a litigation hold was not issued).  Therefore, as between ICE's overall FOIA workload and the outbreak of COVID-19, as well as the "first in, first processed" approach to requests, the delay between when the FOIA request was made and when ICE took steps to find responsive documents was entirely reasonable.

The touchstone for evaluating an agency's response to a FOIA request is whether it made a good faith effort to search for the requested records, using methods which can be reasonably expected to produce the information requested.[7]  It does not have to show that it made a perfect search or that it ensured that every last document was preserved.[8]

_____

[7] *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Stalcup v. CIA*, 768 F.3d 65, 74 (1st Cir. 2014) (noting that resolution of search claim 'turns on whether the agency made a good faith, reasonable effort using methods which can be reasonably expected to produce the information requested"; *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (noting that crucial search issue is whether agency's search was reasonably calculated to discover the requested documents).

[8] *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Veterans Affs.*, 828 F. Supp. 2d 325, 335 (D.D.C. 2011)(noting defendant's position  that no case holds that agencies must preserve, restore, and search evidence whenever a pending FOIA request seeks electronic records); *Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003), aff'd, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004); *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (finding agency search is "not unreasonable simply because it fails to produce all relevant material"); *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) ("the factual question . . . is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant"); *In re Wade*, 969 F.2d at 249 n.11 (same); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d. 479, 498 (S.D.N.Y. 2010) (noting that discovery of two additional responsive documents in an area that the CIA determined would

As stated by Richard Clark, absent an employee creating a non-text record of his or her text messages, "[t]he only means through which ICE can access an employee's text messages is with the cooperation of the employee or through a forensic analysis of the specific device." Clark decl. 2/9/22, ¶ 12. This, of course, applies only to those devices still in ICE's possession. ICE searched the Asher device but was unable to access the Feere device or get his cooperation. Moreover, as regards the reasonableness of a search, agency declarations are entitled to a presumption of good faith.[9]  Consequently, the failure of a search to produce particular documents, or mere speculation that as yet uncovered documents might exist, does not undermine the adequacy of a search nor prevent entry of judgment for the agency.[10]

---

probably not lead to uncovering responsive documents does not render the CIA's search inadequate); *Blanck v. FBI*, No. 07-0276, 2009 WL 728456, at *7 (E.D. Wis. Mar. 17, 2009); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("perfection is not the standard by which the reasonableness of a FOIA search is measured"); *Garcia v. DOJ*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) ("[t]he agency is not expected to take extraordinary measures to find the requested records").

[9] *Houser v. HHS*, 486 F. Supp. 3d 104, 114 (D.D.C. 2020)(affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents,"), *quoting SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Chilingirian v. EOUSA*, 71 F. App'x 571, 572 (6th Cir. 2003) (*citing U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)); *Carney*, 19 F.3d at 812 (holding that "affidavits submitted by an agency are accorded a presumption of good faith"; *Havemann*, 629 F. App'x at 539; *Coyne v. United States*, 164 F. App'x 141, 142 (2d Cir. 2006); *Peltier v. FBI*, No. 03-905, 2005 WL 735964, at *4 (W.D.N.Y. Mar. 31, 2005) (same); *Butler v. SSA*, No. 03-0810, slip op. at 5 (W.D. La. June 25, 2004), (same), *aff'd on other grounds*, 146 F. App'x 752, 753 (5th Cir. 2005).

[10] *Kucernak v. FBI*, 129 F.3d 126, 126 (9th Cir. 1997) ("[m]ere allegations that the government is shielding or destroying documents does [sic] not undermine the adequacy . . . of the search") (unpublished table decision); *Lasko v. DOJ*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010); *Assassination Archives Research Ctr. v. CIA*, No. 18-5280, 2019 WL 691517, at *1 (D.C. Cir. Feb. 15, 2019) (finding search adequate notwithstanding search did not locate several records requester speculated existed); *Clemente v. FBI*, 867 F.3d 111, 118 (D.C. Cir. 2017)(same); *Pub. Emp. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water*

**B.  There Is No Evidence That Any Phones Had Responsive Documents**

There is absolutely no evidence that any of cell phones of the individuals that were referenced in the FOIA request had responsive documents on them at any time.  Plaintiffs are assuming that there must have been text messages responsive to the FOIA requests on the phones at some time.  Not only is there zero evidence of that, there is good reason to think it is simply not the case.

First, the only evidence of **any** communications is a single New York Times article in which one ICE official, then Acting Director Thomas Homan, said he heard about the incident from another (now former) ICE employee, Thomas Albence, and that Homan asked his staff what they could do about the state court judge's actions, including talking to a United States Attorney.[11]  There is absolutely nothing in the article which indicates that text messages were part of these communications.  It is more likely that these communications were either in person

_____

*Comm'n*, 740 F.3d 195, 200 (D.C. Cir. 2014) (noting that "an agency's failure to turn up every responsive document in an initial search is not necessarily evidence of bad faith"); *Steinberg*, 23 F.3d at 552;  *Attkisson v. DOJ,* 205 F. Supp. 3d 92, 95 (D.D.C. 2016) (same); *Pinson v. DOJ*, 61 F. Supp. 3d 164, 179 (D.D.C. 2015) (finding that "the fact that additional documents responsive to [the] requests may exist, or that the agency's searches have been imperfect, does not mean that the searches were inadequate"); *Kintzi v. Office of the Att'y Gen.*, No. 08-5830, 2010 WL 2025515, at *6 (D. Minn. May 20, 2010) ("No evidence before the court indicates that the document [plaintiff] seeks exists. Therefore, the court determines that the [agency] conducted a reasonable search and properly denied [the] request."); *Kromrey v. DOJ*, No. 09-376, 2010 WL 2633495, at *1 (W.D. Wis. June 25, 2010) ("While plaintiff alleges that there must be more records, he has produced no evidence that there are any additional records, nor does he dispute the fact that the FBI conducted a search reasonably designed to yield documents responsive to his request"), *aff'd*, 423 F. App'x 624 (7th Cir. 2011); *Clemente v. FBI*, 741 F. Supp. 2d 64, 79 (D.D.C. 2010) (same); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 405 F. Supp. 2d 3, 5 (D.D.C. 2005) (rejecting plaintiff's assertion that additional documents must exist "given the magnitude of the [alleged] scandal" that was subject of its request); *Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004).

[11] *See* note 1 *supra*.

or by telephone, in which case there would be no document to produce.  In any event, while Plaintiffs have the right to *ask* the agency to look to see if such text messages exist, it does not have a basis to assert that they in fact existed, much less for insinuating that they existed but were destroyed.

Second, as set out in the prior declarations of Richard Clark, it was and is ICE's policy that its employees not use text messaging to conduct agency business.  *See, e.g.,* Clark decl., 2/9/22 at ¶¶ 13-15. This is precisely because text messages are not permanently retained by either the cellular provider or the agency, so federal recordkeeping regulations require that impermanent means of communication not be used or, if used notwithstanding the policy discouraging such use, they must be reduced to some form of more permanent record, i.e., a memorandum to the file.  There were no such records of text messages responsive to the FOIA request found during ICE's search.  Therefore, the assumption that text messages relating to the state court judge or her courtroom officer existed at some point in time requires an assumption that the employee violated *two* ICE policies: one against the use of text messaging for official agency business and the other requiring the creation of a permanent record of any such text messages.

Under FOIA, the burden is on a plaintiff to show sufficient facts to justify discovery.  As is stated below, it is not enough to argue that records *might* have once existed and *may* have been destroyed.

C. **Most of The Phones Should Have Been Wiped Before the FOIA Request**

Not only are ICE employees instructed to avoid creating text messages regarding official business (and not to use government phones for personal business) in the first place, they are also instructed to wipe all content from their cell phones upon completing their ICE employment.  As

stated by Richard Clark, ICE discourages employees from utilizing text messages for the creation of records and provides instructions to employees on how to appropriately retain text messages, in the event that they inadvertently do.  Clark decl., 2/9/22 at ¶ 13.  "Given the overarching policy that discourages the creation of records via text message, coupled with instructions on how to appropriately preserve them should they coincidentally be created, federal records would only exist on employee phones for a brief and transitory amount of time."  *Id.*, ¶ 15.

Three of the seven employees named in the FOIA request left ICE ***before*** the FOIA request was received.  Thomas Homan left on July 25, 2018; Ronald Vitiello left on April 26, 2019; and Thomas Blank left on June 21, 2019.  The FOIA request was received on November 19, 2019.  *See* Schurkamp declaration to Motion for Summary Judgment, ¶ 5; Second Supplemental declaration of Richard Clark attached hereto at ¶ 6.  Thus, as to these three employees, based on ICE policies, it must be assumed that there were no responsive documents at the time the FOIA request was received.

One former ICE employee, Nathalie Asher, remained with the agency longer than the others but is also no longer employed by ICE.  *Id.* Her cell phone has not been wiped and was searched but had no responsive documents.  Second Supplemental Clark decl. ¶¶ 6, 16. There can be no basis for discovery regarding her phone as there is no issue regarding possible destruction of responsive documents.   A fifth ICE employee, Jon Feere, apparently brought a cell phone that was issued to him by another government component to his ICE service.  It is unclear whether Mr. Feere complied with agency policy (by avoiding using text messages for official duties and by wiping the phone clean when he left), but, in any event, ICE has done nothing to remove any content on Mr. Feere's phone.  Instead, ICE attempted to gain access to his phone without success.  *Id.*, at ¶ 18.

11

Of the seven targeted employees, therefore, only four left ICE *after* the FOIA request was received.  These are Jon Feere and Nathalie Asher (whose phones have not been altered by ICE); Matthew Albence; and Tracy Short.  *See* Second Supplemental Declaration of Richard Clark, at ¶ 6.  Five of the seven phones were deactivated, but this was *before* the FOIA request was sent out to the sub-component that had them.  *Id.*

### D.  <u>None of the Target Phones Were Deactivated Prior to Litigation</u>

As stated in the declaration of Fernando Pineiro (attached to the Motion for Reconsideration), ICE used to receive approximately 50,000 FOIA requests per year but now receives around 120,000 requests per year (a more than 240% increase, or almost two and one half times the prior volume).  It would be both impractical and impossible for ICE to issue document holds on all FOIA requests as soon as they come in.  This is because the FOIA requests must be processed so as to determine what documents are being sought, for what time period, and where those documents are likely to be located.  This level of analysis requires time.[12]  No federal government agency, including ICE, can be expected to issue document hold requests to all of its sub-components based on the filing of a FOIA request.  *See, generally,* Declaration of Fernando Pineiro.

Instead, trained FOIA processors review the requests on a first come, first served basis. Document requests to appropriate sub-components are then issued once the analysis is complete (regarding the likely record holders, the dates, etc.).  This is standard practice at ICE and across the federal government.

---

[12] While some FOIA requests undoubtedly are narrower than others, most are complex and even the simpler ones require analysis to determine where to look for the documents.

It is important to note, again, that **not one phone was deactivated *after* the complaint was filed.**  *See* Second Supplemental Clark decl. at ¶¶ 6, 10.  The agency processed the FOIA request to the best of its ability given the overwhelming volume of FOIA requests it receives.  And it took no steps to destroy responsive documents.  What it did was process the request in the normal course of business.  While this resulted in target phones being deactivated after the FOIA requests was received, that was purely a function of the agency's inability to process the requests sooner given the volume of FOIA requests that it receives on a daily basis (approximately 500 per business day in 2019).  As stated, three of the phones should have been wiped by the departing employee before the FOIA request was received, long before deactivation, and long before the complaint was filed.  Six of the seven employees left before the complaint was filed and all of the phones that were deactivated (5 of the 7) were deactivated *prior* to the complaint.  Therefore, a true litigation hold would have had no impact as litigation had not begun prior to deactivation.[13]

### E.  <u>No Records Were Destroyed with the FOIA Request in Mind</u>

Plaintiffs have made inflammatory statements, including "why did ICE order the deletion of text messages and other mobile device data in 2017?"  Memorandum in Support at 1.  There is no evidence in the record that there was a specific order for the destruction of texts or other data from the target phones in 2017; indeed, the FOIA request was not made until November of 2019.

---

[13] Generally, a lack of timeliness does not preclude summary judgment for an agency in a FOIA case. *Papa v. U.S.*, 281 F.3d 1004 (9th Cir.2002) (production of all nonexempt material, "however belatedly," moots FOIA claims); *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir.1996) (rejecting claim of bad faith where agency took over two years to answer FOIA request); *Carney v. U.S. Dep't of Just.,* 19 F.3d 807, 812-13 (2d Cir. 1994); *Hornbostel v. U.S. Dept. of Interior*, 305 F.Supp.2d 21, 25 (D.D.C.,2003).

So there is absolutely no rationale for discovery as to an order made two years before the FOIA requests in this case. This overreaching speaks volumes about Plaintiffs' approach to this litigation.[14]

The target cell phones were not deactivated in response to the FOIA litigation. Plaintiffs have not, and cannot, show otherwise. In fact, the reality is that the phones were deactivated in the normal course of ICE business as regards to employees leaving. Plaintiffs are trying to retroactively narrow the very broad scope of their FOIA requests to bolster the argument that ICE knew Plaintiffs were interested in text messages on the cellular telephones of the named individuals and that the alleged failure to preserve the contents of the phones is bad faith. This ignores the reality that (a) ICE cannot respond to every new FOIA request immediately; and (b) ICE in this case made a reasonable and good faith search- actually, multiple searches; and (c) the phones that were deactivated were deactivated prior to the sub-component's receipt of the FOIA tracker.

As is demonstrated in the declarations filed with the Court, ICE does not have a central, overarching infrastructure capable of preserving text messages. *See, e.g.,* Clark decl., 2/9/22 *passim*. ICE does not have the technical ability to search its employees' text messages. *Id.* The only way is by a manual review of the actual cellular telephone *if* the messages still exist on the phone. In this case, there is no evidence that any responsive messages *ever* existed on the targeted telephones, and certainly no evidence that such messages exist now (even if ICE had all

---

[14] If Plaintiffs are referring to an ICE policy, they should say so. But, in any event, a challenge to a policy in existence two years before the FOIA request in this case cannot be made via FOIA litigation.

the phones, which it does not).    FOIA does not require an agency to search records that it cannot search. *Wilson v. DOJ*, 270 F.Supp.3d 248, 255 (D.D.C. 2017) (rejecting argument that agency violates FOIA when, because of technical inability, it does not search a particular file); *Lockett v. Wray*, 271 F.Supp.3d 205, 210 (D.D.C. 2017) (summary judgment for agency where agency had inability to conduct requested search); *Moore v. Nat'l DNA Index. Sys.*, 662 F.Supp.2d 136, 139 (D.D.C. 2009) (where the requested search is "literally impossible for the defendants to conduct," not searching satisfies FOIA's requirement to conduct a search reasonably calculated to uncover responsive documents).

Plaintiffs' argument that ICE had an obligation to preserve the phones simply because it received a FOIA request is, at base, an argument about ICE's document retention policies.  It is not cognizable in a FOIA action such as this. *See* Dkt. 1; *see also, e.g., Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 154 (1980) ("Congress never intended, when it enacted the FOIA, to displace the statutory scheme embodied in the Federal Records Act and the Federal Records Disposal Act providing for administrative remedies to safeguard against wrongful removal of agency records"); *Conti v. U.S. Dep't of Homeland Sec.*, No. 12 CIV. 5827 AT, 2014 WL 1274517, at *14 (S.D.N.Y. Mar. 24, 2014)("DHS has no obligation to preserve its records according to the rules of civil discovery"), *citing Landmark Legal Found. v. E.P.A.*, 272 F.Supp.2d 59, 66–67 (D.D.C.2003) .[15]

---

[15] The *Landmark* case is distinguishable from the present case because in *Landmark* the agency violated an injunction issued by the court.  *See Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09 CIV. 5878 RJS, 2011 WL 1345168, at *5 (S.D.N.Y. Mar. 29, 2011). As stated in *Forsham v. Harris*, 445 U.S. 169, 186 (1980),  "FOIA imposes no duty on the agency to create records." There is no duty on an agency to copy the contents of a cellular telephone of a departing employee based upon the chance that the contents might be responsive to a FOIA request.  Critical here is that at the time the target telephones were taken out of service, the FOIA

F.  **Plaintiffs Have Not Shown a Need for Discovery**

Discovery is the exception, not the rule, in FOIA cases. *See, e.g., CareToLive v. FDA*, 631 F.3d 336, 345-46 (6th Cir. 2011) ("Claims under the [FOIA] are typically resolved without discovery on the basis of the agency's affidavits."); *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (noting that discovery is limited in FOIA cases); *Maynard v. CIA*, 986 F.2d 547, 567 (1st Cir. 1993); *Gillin v. IRS*, 980 F.2d 819, 823 (1st Cir. 1992) (*per curiam*).

As stated in *Reich v. U.S. Dep't of Energy*, 784 F. Supp. 2d 15, 22-23 (D. Mass.), on reconsideration, 811 F. Supp. 2d 542 (D. Mass. 2011), "[t]he Court may grant a motion for discovery pursuant to Fed.R.Civ.P. 56(d) if the moving party puts forward sufficient evidence to show that the requested discovery is necessary, feasible, and can be outcome-determinative," *citing and quoting in part McGahey v. Harvard Univ. Flexible Benefits Plan*, 260 F.R.D. 10, 11 (D.Mass. 2009). The district court also said that "FOIA imposes a stringent burden on parties moving for discovery."  *Id., citing Wheeler v. C.I.A*., 271 F.Supp.2d 132 (D.D.C.2003), and *Giza v. Sec'y of Health, Educ. & Welfare*, 628 F.2d 748, 751 (1st Cir.1980).  The court in *Reich* denied plaintiff's discovery requests because the agency affidavits were "reasonably detailed" and "submitted in good faith" and plaintiff presented no evidence that declarants "misled the court or had any motivation to do so").  That is precisely the case here.[16]

---

tracker/inquiry had not been disseminated due to the FOIA backlog.  Therefore, there was no reason for the sub-component holding the devices to suspect that the phone contents required preservation, particularly since the agency's policy is that text messages should not be used to conduct official agency business and, if they are, those messages should be separately preserved. This is a general responsibility of the individual employee, however, and it goes to ICE's record preservation practices and not to the adequacy of its FOIA search.

[16] *See also Heily v. Dep't of Commerce*, 69 F. App'x 171, 174 (4th Cir. 2003) (per curiam) ("It is well-established that discovery may be greatly restricted in FOIA cases"); *Justice*

16

Plaintiffs raise numerous rhetorical questions, but the answers to them will not result in the production of documents.  And that is what FOIA is about.  Plaintiffs claim that they need discovery to determine why ICE issued an order two years before their FOIA request was made.  As stated, that does not remotely justify discovery.  Plaintiffs have questioned whether any data exists on the five devices that were deactivated.  Memorandum in Support at 1.  As made clear in the attached Second Supplemental Declaration of Richard Clark, ICE could not search those devices because they were no longer in its possession when the FOIA request was tasked out to OCIO. *See* Second Supplemental Decl. at ¶¶ 10, 12.  Therefore, discovery as to that question will also not lead to the production of documents.

Plaintiffs also question how ICE can claim that the devices were deactivated when the employees left ICE employment when the actual dates of deactivation were sometimes months later.  *Id.*, at 1-2.  But this represents a basic misunderstanding of Richard Clark's declarations.  What Mr. Clark has said is that employees are instructed to wipe all data off their phones prior to turning them in at the end of their employment.  And, at some subsequent time, the phone is deactivated with the cellular carrier. *Id.*, at ¶ 10.  That is when ICE turns the phone over to a vendor for repurposing.  Thus, properly understood, ICE's process involves three events.  First, when an employee leaves, they are responsible for removing all text messages, emails, etc.  Second, at some point, in anticipation of turning a batch of phones over to its vendor, ICE

---

*v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (noting that discovery is "disfavored" in FOIA actions), *aff'd,* 485 F. App'x 439 (D.C. Cir. 2012); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions"); *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994)("discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face").

contacts the carrier and deactivates the service to that phone.[17]   Lastly, ICE turns the physical

phone over to a vendor and no longer has possession or control.[18]

In terms of the specific discovery proposed by Plaintiffs, Defendant responds as follows:

1. Interrogatory addressing the dates of each named custodian's employment at ICE;
   **Response:** Defendant has provided the only date that matters, i.e., the date when each employee left ICE;

2. Their position(s) during that time;
   **Response:**  The positions are not relevant as Plaintiffs chose the seven employees at issue in their FOIA requests; moreover, this is both publicly known and known to Plaintiffs;

3. Identify (e.g., by serial number or other unique identifier) the government-issued mobile devices used by each named custodian during their employment at ICE;
   **Response:**  FOIA does not require this level of detail but instead requires only that the agency demonstrate that it made a reasonable search, which ICE's declarations establish.  Moreover, there is nothing that Plaintiffs can do with this information as ICE does not have five of the seven phones and has either searched or attempted to search the other two;

4. Clarify the timeline for the issuance, return, and deactivation of the relevant devices, as well as the deletion and/or preservation of any data contained on them;
   **Response:**  This information has been provided in the Second Supplemental declaration of Richard Clark; again, FOIA does not require a "chain of custody" or forensic recitation of search results, but only reasonably detailed affidavits.

5. Clarify whether ICE has actually examined the relevant devices that were purportedly deactivated, and, if so, the nature of that examination and whether any data was ultimately located on the device;
   **Response:**  This has been provided in the Second Supplemental declaration of Richard Clark; moreover, FOIA does not require that an agency provide "the nature of its examination" of its document locations;

---

[17] It is not unreasonable that the agency does not terminate service with its carrier more promptly. Instead, for efficiency purposes, ICE waits until it has a batch of devices and process those devices in a group versus one device at a time. Second Supp. Clark decl., ¶ 12.

[18] FOIA requires an agency search, and produce, only those documents or records which are in its control.  As described above, five of the seven phones were no longer in ICE's control when the FOIA request was tasked out to OCIO.

6.  Identify the categories of data retained on Nathalie Asher's mobile device (which ICE says was retained and is accessible), and the scope of any searches of that data to date;

> **Response:**  This has largely been provided in the Second Supplemental declaration of Richard Clark, where Clark affirms, under oath, that the device was searched for responsive documents and none were found.

7.  Provide copies of policies, procedures, and instructions concerning the deletion or preservation of mobile device information in effect from 2015 to 2021, to the extent not already produced;

> **Response:**  This goes way beyond what FOIA requires or courts have ordered.  It also seeks documents outside the time period of the FOIA requests.  Responding further, Defendant states that the requested documents are irrelevant to the question before the Court, which is did ICE make a reasonable search for responsive documents?  Courts have consistently denied enforcing FOIA requests that seek broad discovery.  Moreover, the policy relating to the creation, preservation and deletion of cellular device content that was in effect at the time specified in the FOIA request has been provided.

8.  Records of how ICE promulgated the November 2017 "IOS Device Data Wiping Quick Reference Guide" to its employees, such as any cover memorandum or instructions that accompanied the guide;

> **Response:**  See response to item number 7. Responding further, Defendant states that Plaintiffs now seek to greatly expand, and transform, their FOIA request through the motion for discovery.  That is inappropriate.

9.  Any orders, logs, correspondence, and other documents that record the issuance, return, and/or deactivation of the relevant mobile devices, and the deletion of any data contained on them;

> **Response:**  See response to item numbers 7 and 8.  This has nothing to do with whether a reasonable search was made.

10.  Communications and other records documenting the reasons for any deactivation or deletion of the relevant devices and/or data contained on them;

> **Response:**  See response to item numbers 7 and 8.

11. Records, if any, of the processing of this FOIA request prior to the filing of this lawsuit;

> **Response:**   See response to item numbers 7 and 8.  An agency's internal processing records are never required in FOIA litigation, to the government's knowledge.  The declarations filed in this case fully describe the agency's search. What occurred prior to filing the complaint is irrelevant.

12.  ICE's recent communications with its former employee Jon Feere about accessing his government-issued mobile device.

> **Response:**  There is no basis in the record before the Court to question the efforts of ICE to access Mr. Feere's device.  This is also a type of record that courts do not order produced.

13.  A deposition of up to four (4) hours of ICE's declarant Richard Clark, to be held at a mutually convenient location in Washington, D.C. regarding his declarations, methodology, ICE's policies and procedures; and ICE's technical capabilities to access, search, and preserve mobile device data.

> **Response:**  There is nothing before the Court to suggest any issues with Mr. Clark's declarations.  The level of detail sought by Plaintiffs is, frankly, astounding for a FOIA case.  As numerous courts have held, a FOIA defendant's declarations are entitled to a presumption of accuracy and legitimacy.  Plaintiffs have no basis for suggesting that the core factual assertions of Mr. Clark's declarations regarding the seven mobile devices is inaccurate.  Nor is it appropriate or productive to question Mr. Clark on ICE's policies or its technical abilities.  The technical abilities apply, at most, to one device – Mr. Feere's – which ICE tried unsuccessfully to unlock using the best technology available to it.

The discovery motion is also premature.  Plaintiffs have received 388 pages in mid-December following the voluntary lift of the 7A exemption by Defendant.  They have not explained to the Court why they think there is more out there to be produced but only raised a number of questions they find interesting.   Most of these, as stated, have been answered.  And the rest  would not lead to additional documents, so they are pointless in a FOIA action.

## IV.  SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANT

This litigation has run its course.  Under FOIA, the sole issue is whether an agency has made a reasonable search for responsive documents (and, in some cases but not this one) whether redactions or withholding is appropriate.  Nothing in Plaintiffs' filing undermines the fact that ICE made an extensive search for documents ***and*** produced hundreds of pages of responsive documents.  The Court ought not allow the tail to wag the dog; this is not a criminal case nor should the agency's actions be judged by civil discovery standards.   As stated by the District of Columbia (which handles more FOIA cases than most other districts combined), "[the fact that]

an agency once possessed responsive documents but does not at the time of the FOIA request does not preclude summary judgment in the agency's favor. FOIA does not impose a document retention requirement on agencies." *Wadelton v. Dep't of State*, 208 F. Supp. 3d 20, 27–28 (D.D.C. 2016). And, in this case, there is no evidence that ICE possessed responsive documents at any time, much less that it destroyed responsive documents; as stated, it deactivated five cell phones which should not, and, as far as anyone knows did not, contain responsive documents.[19]

---

[19]  *See generally Kohake v. Dep't of Treasury*, 630 F. App'x 583, 588 (6th Cir. 2015) (finding that "the fact that the IRS may have destroyed certain records pursuant to its policy does not render the search at issue unreasonable"); J*udicial Watch v. DOT*, No. 02-566, 2005 WL 1606915, at *7 (D.D.C. July 7, 2005) (upholding search even though some responsive records, which once existed, were destroyed prior to plaintiff's request); *cf. Santana v. DOJ*, 828 F. Supp. 2d 204, 209 (D.D.C. 2011) (determining FOIA provides no remedy in situation where records sought are no longer within government's possession); *Callaway v. U.S. Dep't of the Treasury,* 824 F. Supp. 2d 153, 157 (D.D.C. 2011) (noting that Court's "authority is limited to the release of non-exempt agency records in existence at the time the agency receives the FOIA request"). *West v. Spellings*, 539 F. Supp. 2d 55, 62 (D.D.C. 2008) ("While four files were missing, FOIA does not require [the agency] to account for them, so long as it reasonably attempted to located them"); *Ferranti v. DOJ*, No. 03-2385, 2005 WL 3040823, at *2 (D.D.C. Jan. 28, 2005) (rejecting plaintiff's "contention that EOUSA should account for previously possessed records"); *Maynard*, 986 F.2d at 564 ("The fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it," *quoting Miller*, 779 F.2d at 1385); *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys*., 762 F. Supp. 2d 123, 134 (D.D.C. 2011) (determining search adequate even though agency's search failed to locate responsive record previously posted on agency's website); *McGehee v. DOJ*, 800 F. Supp. 2d 220, 230 (D.D.C. 2011) (determining that although some enclosures and attachments are missing from production it is not enough "in the context of the FBI's search and the size of its production . . . to render the FBI's search inadequate"); *Dorsey v. EEOC*, No. 09-519, 2010 WL 3894590, at *3 (S.D. Cal. Sept. 29, 2010) (finding that plaintiff's "conclusory statement" that EEOC "lost or destroyed" responsive records "does not raise an issue of fact precluding summary judgment" in favor of agency), appeal dismissed, 481 F. App'x 417 (9th Cir. 2012); *Elliott v. NARA*, No. 06-1246, 2006 WL 3783409, at *3 (D.D.C. Dec. 21, 2006) ("An agency's search is not presumed unreasonable because it fails to find all the requested information.").

## CONCLUSION

While Plaintiffs are free to waste their resources on their quest to ensnare a wild goose, there must be a rational limit on the extent to which they waste the government's resources. The discovery proposed by Plaintiffs is unjustified, unnecessary and will prolong this litigation without any benefit to Plaintiffs. ICE conducted reasonable searches for responsive documents, as soon as it had the resources to direct to Plaintiffs' request. There is no evidence that any documents were destroyed nor any basis to think that discovery will lead to additional documents.

Because ICE's declarations establish that it made a more than reasonable search for responsive documents, and that its search was launched within a reasonable period in light of the enormous number of FOIA requests it received, the Court should deny Plaintiffs' motion for discovery and enter summary judgment for Defendant.

Respectfully submitted,

MARY M. MURRANE
Chief, Civil Division

Dated: January 20, 2023          By:     */s/ Thomas E. Kanwit*
                                         Thomas E. Kanwit
                                         Assistant U.S. Attorney
                                         U.S. Attorney's Office
                                         John J. Moakley U.S. Courthouse
                                         1 Courthouse Way, Suite 9200
                                         Boston, MA  02210
                                         Tel.: 617-748-3100
                                         Email: thomas.kanwit@usdoj.gov

## <u>CERTIFICATE OF SERVICE and L.R. 7.1 COMPLIANCE</u>

I, Thomas E. Kanwit, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

I further certified that I have consulted with counsel for Plaintiffs in an attempt to narrow the issue presented herein.

Dated:  January 20, 2023                    By:      */s/ Thomas E. Kanwit*
                                                     Thomas E. Kanwit
                                                     Assistant United States Attorney