UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and AMERICAN OVERSIGHT,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>    Defendant. | C.A. No. 1:21-cv-10761-AK<br><br>Leave to file granted on February 8, 2023 |

**REPLY MEMORANDUM IN SUPPORT OF
RENEWED MOTION FOR DISCOVERY**

Plaintiffs American Oversight and the ACLU of Massachusetts respectfully submit this reply memorandum to address certain assertions in ICE's opposition to their renewed motion for discovery.

*1. A deposition of Jon Feere would be helpful and appropriate.*

There is no dispute that ICE has Mr. Feere's government-issued mobile device, that the device is locked, that ICE is unable to access the phone without that code, and that Mr. Feere (now a private citizen) is "unwilling to assist ICE absent concessions from ICE in unrelated matters with which Mr. Feere is involved." *See* Status Report (D.E. 65) at 1-2; Third Clark Decl. (D.E. 77-1) ¶18. ICE admits that it is "unclear" whether Mr. Feere used his device to send text messages about official business. *See* Opp. (D.E. 77) at 11.

Plaintiffs have proposed to take a three-hour deposition of Mr. Feere (with the device present) to ask about the access code, determine whether there is any biometric access option (*e.g.*,

1

face or fingerprint), and gather information about where the phone came from and Mr. Feere's practices for its use. *See* Mem. re: Mot. for Discovery (D.E. 69 at 2, 4). This is a reasonable procedure to create a clear record of whether the device can be accessed and searched, and, if not, whether it potentially contained responsive records. ICE has not offered any developed argument to the contrary. *See* Opp. (D.E. 77) at 20 (response to number 12). Plaintiffs respectfully request that the Court authorize Mr. Feere's deposition. *See, e.g.*, *CREW v. Dep't of Veterans Affs.*, 828 F. Supp. 2d 325, 329 (D.D.C. 2011) (court allowed deposition of official prior to second round of summary judgment briefing).

> 2. *Discovery would be appropriate to explore ICE's shifting explanations concerning the purported deletion or destruction of mobile device data.*

Additional discovery is also appropriate to untangle ICE's shifting explanations for what happened to the data on these mobile devices. In the initial summary judgment papers, ICE argued that the potentially responsive "text messages no longer exist because they were destroyed under ICE policy . . . ." *See* ICE Cross-Opp. (D.E. 37) at 9. This argument was based on a vague assertion that, "during the timeframe in question, . . . it was standard practice at ICE to factory reset/securely wipe/destroy and delete all contents of mobile phone devices as they were being taken out of service." First Clark Decl. (D.E. 37-2) ¶16.

After the Court denied summary judgment, ICE admitted for the first time that it actually has two of the devices, one that was intact and another that was locked. *See* Second Clark Decl. (D.E. 56) ¶15. ICE also revealed for the first time that, in November 2017, it had specifically *ordered* its employees to "wipe/erase all data from [mobile devices] prior to returning the device to an ICE Property Custodian or their supervisor." *See id.* Ex. B (D.E. 56-2). However, as to the five outstanding devices, ICE would only confirm that the "lines were confirmed deactivated," which is not a step found anywhere in the agency's deletion instructions. *See id.* ¶¶14-15. And

although ICE contended that the five devices were "deactivated in the normal course of ICE business as regards to employees leaving," *see* Mot. to Reconsider (D.E. 62) at 7, each of the deactivation dates was at least six months before or after the date of departure for the relevant official. *Compare* Second Clark Decl. (D.E. 56) ¶14 (purported deactivation dates), *with* Mem. re: Mot. for Discovery (D.E. 69) at 12 (explaining date discrepancies).

Now, ICE is again changing its story. Almost two years into this litigation, and roughly a year after the initial summary judgment briefing, ICE's declarant asserts for the first time that, throughout the entire lifetime of this case, ICE has *never* had possession of or access to *any* of these five devices, and apparently has *no way of actually knowing* whether the employees wiped them or not before they were transferred to a recycling vendor. *See* Third Clark Decl. (D.E. 77-1) ¶¶7-10 (basis for assertion of deletion is "[t]here is no reason to believe that the employees . . . did not do that"). But if that is true, then why didn't ICE just tell the Plaintiffs and the Court *a year ago* that it no longer had possession of the devices and no way to inspect them? ICE levels an accusation that the Plaintiffs are "wast[ing] the government's resources" in a "quest to ensnare a wild goose," s*ee* Opp. (D.E. 77) at 22, but, if ICE is so concerned with resource conservation, why would it withhold this information for so long?

Beyond that, ICE's new declaration contains multiple other inconsistencies and omissions. ICE's declarant Mr. Clark changes the date that Mr. Albence's device was deactivated by more than six months, but offers no explanation for the difference from his own prior sworn statement, noting only, without elaboration, that it "contained an error." *See* Third Clark Decl. (D.E. 77-1) ¶14. ICE has never before suggested that its property custodians delete devices, but now contends

without explanation that they "would have." *See id.* ¶10.¹ ICE now contends that its policy "was that employees were not to use their cellular telephones for text messaging for work-related purposes," *see* Third Clark Decl. (D.E. 77-1) ¶8, but the policy ICE previously submitted acknowledges employees may do just that. *See* PD 141-03 (D.E. 37-3) ("[B]usiness communications created and transmitted between Department employees that include substantive information about agency business, policies, and activities *made via chat, text, or instant message* may be considered federal records and must be preserved." (emphasis added)). And although ICE definitely issued guidance in the first year of the Trump Administration requiring its employees to wipe their devices under certain circumstances, *see* Second Clark Decl. Ex. B (D.E. 56-2) (document signed in 2017 stating "[a]ll ICE users are responsible for performing the data wipe steps shown herein prior to returning the device back to an ICE property Custodian or a supervisor"), it now claims that it didn't. *See* Third Clark Decl. (D.E. 77-1) ¶8 ("ICE did not order the deletion of text messages and other mobile device data in 2017."). Plaintiffs respectfully suggest that, given ICE's unexplained changes in position and myriad contradictions, the most reliable and rational method to develop a summary judgment record is limited, focused discovery, as the Plaintiffs have proposed.² *See, e.g.*, *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175,

---

[1] In Mr. Clark's prior declaration, property custodians were only referenced in connection with purported agency policy requiring employees to wipe their devices before they are returned to a property custodian, *see* Second Clark Decl. (D.E. 56) ¶¶ 9-11, and a list of dates on which ICE claimed that the devices of certain relevant officials had been returned to the property custodian, *see id.* ¶ 14.

[2] Plaintiffs also note that ICE's commentary about the theory of the underlying prosecution raises questions about whether that prosecution was grounded in law and further erodes confidence in the information presented by ICE in this case. ICE (represented by the same U.S. Attorney's Office that prosecuted the judge) states that the judge was prosecuted because "a state judge is not free to disregard an ICE detainer and to conspire with others to circumvent that lawful document." Opp. (D.E. 77) at 1-2. But the federal government has specifically agreed that compliance with a detainer is a purely voluntary choice: "The United States agrees that immigration detainers are not mandatory. Rather, as the governing regulation and case law indicate, they are 'requests' upon

184 (D.D.C. 2013) (ordering discovery based on "numerous inconsistencies and reversals" in agency's declarations).

> 3. *Summary judgment for ICE is not appropriate, including because the Court can still enter a declaratory judgment that ICE's policies and practices have precluded a reasonable, good faith response to Plaintiffs' FOIA request.*

Lastly, ICE's opposition includes one paragraph requesting the immediate entry of summary judgment in its favor. *See* Opp. (D.E. 77) at 20-21. This request is both procedurally and substantively improper.

First of all, just last month, ICE agreed in the parties' joint statement that a summary judgment briefing schedule should be set after the decision on the Plaintiffs' discovery motion. *See* Jt. Status Report (D.E. 72) at 1 ("The parties do request a further schedule for dispositive motions, but the timing will necessarily depend on whether the Court authorizes a discovery period and the length of that period."). That approach still makes sense to logically and methodically address the issues raised in this case, and ICE has not shown otherwise.

Second, ICE has not complied with the requirements to seek summary judgment. Local Rule 56.1 requires that motions for summary judgment "shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried," and that "[f]ailure to include such a statement constitutes grounds for denial of the motion." *See* D. Mass. Local Rule 56.1; *see also* Fed. R. Civ. P. 56(c). ICE has not submitted such a statement. Plaintiffs cannot be expected to respond to a summary judgment motion without

---

State law enforcement to voluntarily assist Federal immigration authorities." *See* Br. of the United States as Amicus Curiae, *Lunn v. Commonwealth*, No. SJC-12276, *available at* http://masscases.com/briefs/sjc/477/477mass517/SJC-12276_10_Amicus_The_United_States_Brief.pdf. And furthermore, even if a state judge wished to voluntarily assist ICE after receiving a detainer, there are significant legal restrictions on his or her authority to do so. *See generally Lunn v. Commonwealth*, 477 Mass. 517 (2017).

5

knowing what ICE asserts are the specific, undisputed, material facts that require judgment as a matter of law, and without having an opportunity to contest those assertions on a fact-by-fact basis. *See, e.g.*, *Bonbon v. Elite Guardian Sols.*, No. 17-10275-ADB, 2019 WL 3290993, at *1 (D. Mass. July 22, 2019) (court "unable to adjudicate summary judgment" without L.R. 56.1 statement, and motion denied). In all events, as explained above, there *are* factual disputes that would preclude summary judgment, arising in part from the various inconsistencies in ICE's own statements.

Lastly, ICE's apparent view that the case must end if it disposed of the five phones is wrong as a matter of law. For one thing, Mr. Feere's device is still in ICE's possession and, via deposition, might be unlocked. But beyond that, even if no more records could possibly be produced, Count II in this case seeks declaratory relief. *See* Complt. (D.E. 1) ¶¶39 & 40. Here, Plaintiffs expect to show that ICE instructed its officials in 2017 to delete electronic devices in a manner that would inevitably lead to the destruction of unique records that are the subjects of pending FOIA requests. If Plaintiffs can make that showing, then—even if ICE did in fact destroy all remaining records—the Court could nevertheless issue a declaratory judgment that, because of that practice, ICE cannot meet its burden to show a good faith and reasonable search in response to Plaintiffs' request in this case. *See, e.g.*, *Chambers v. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act."); *CREW*, 828 F. Supp. 2d at 333 (denying agency's motion for summary judgment without prejudice pending discovery into change to backup tape policy that resulted in unavailability of records). This case can proceed even if there are no further records to produce. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("[E]ven though a party may have obtained relief as to a *specific request* under the FOIA, this will

not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future.").

## CONCLUSION

For the all the reasons stated above, and those stated in their opening memorandum, Plaintiffs respectfully request that this motion for discovery be allowed.


Dated: February 8, 2023

Respectfully submitted,

*/s/ Daniel L. McFadden*
Daniel L. McFadden (BBO #676612)
Matthew R. Segal (BBO #654489)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org

*Counsel for Plaintiff American Civil Liberties Union of Massachusetts, Inc.*


*/s/ Katherine M. Anthony*
Katherine M. Anthony (BBO #685150)
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3918
katherine.anthony@americanoversight.org

*Counsel for Plaintiff American Oversight*