UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and AMERICAN OVERSIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 21-CV-10761-AK<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR DISCOVERY AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A. KELLEY, D.J.**

This is an action for declaratory and injunctive relief in which Plaintiffs American Civil Liberties Union of Massachusetts and American Oversight seek to compel Defendant Immigration and Customs Enforcement ("ICE") to comply with a request made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. [Dkt. 1]. The parties previously moved for summary judgment, and the Court denied both motions. [Dkt. 48]. The Court ordered ICE to file supplemental declarations providing more specific information to meet its burden to show that the agency made a good faith effort to conduct a search for Plaintiffs' requested records. [See id.]. Plaintiffs received ICE's supplemental declarations and have filed a motion for discovery seeking further information. [Dkt. 68]. ICE opposes Plaintiffs' motion for discovery and renews its motion for summary judgment. [Dkt. 77]. For the following reasons, Plaintiffs'

motion for discovery [Dkt. 68] is **GRANTED IN PART** and **DENIED IN PART**, and ICE's
motion for summary judgment [Dkt. 77] is **DENIED**.

## I.       BACKGROUND

On November 18, 2019, Plaintiffs submitted the FOIA request (the "Request") at issue in
this case to ICE.  [Dkt. 33-4].  The Request centered around the April 2019 indictment of
Massachusetts Judge Shelley M. Richmond Joseph ("Judge Joseph") and Massachusetts Court
Officer Wesley MacGregor ("Officer MacGregor").  The indictment alleges that Judge Joseph
allowed a defendant with an ICE detainer to exit the courthouse through an alternate route, with
Officer MacGregor's assistance, for the purpose of evading arrest by an ICE officer waiting
outside the courtroom.  [Dkt. 1-1 at 9-27].  Plaintiffs claim that the indictment "raised serious
concerns" that ICE and federal prosecutors were using the threat of criminal prosecution to
ensure that Massachusetts judges issued judgments favorable to ICE.  [Dkt. 69 at 5].  To address
these concerns, Plaintiffs filed the Request, which sought text and email communications from
seven senior ICE officials (the "seven named custodians") regarding Judge Joseph, Officer
MacGregor, and any events regarding the indictment.  [Dkt. 1-1].  Due to ICE's failure to
respond to the Request, Plaintiffs filed this lawsuit seeking injunctive and declaratory relief in
May 2021.

The parties filed cross-motions for summary judgment, which the Court denied.  [Dkt.
48].  In that memorandum and order (the "MSJ Order"), the Court determined that ICE failed to
meet its burden to show that it fully discharged its obligations under FOIA by "prov[ing] that
each document that falls within the class requested either has been produced, is unidentifiable, or
is wholly exempt from [] FOIA's inspection requirements."  Johnson v. CIA, 330 F. Supp. 3d
628, 638 (D. Mass. 2018) (internal quotation marks and citation omitted).  To meet this burden,

ICE must establish that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oleskey v. U.S. Dep't of Defense, 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

The Court ordered ICE to submit supplemental declarations providing more specific information regarding several aspects of the Request.  [Dkt. 48 at 18].  As part of the MSJ Order, the Court instructed ICE to file supplemental affidavits about its efforts to preserve data concerning text message communications upon deactivating employees' mobile devices to determine whether ICE's non-collection of the seven named custodians' text messages was reasonable.  [Id. at 13-14, 18].  The Court also questioned whether ICE's delay between its receipt of the Request in November 2019 and its initiation of records collection at the start of this litigation contributed to the unavailability of the seven named custodians' text message records.  [Id.].  The Court further ordered ICE to run additional Boolean search terms across records it had collected.  [Id. at 11-12].

At issue here is whether the supplemental affidavits ICE supplied in response to the MSJ Order regarding its employees' text message communications are sufficient to meet the "good faith" burden.  Plaintiffs had argued in their motion for summary judgment that ICE improperly excluded text message records from the seven named custodians' mobile devices.  [Dkt. 31 at 11-13].  ICE countered that it should not have to search for the requested text messages because it "has no means by which to systematically search mobile phones for text messages."  [Dkt. 37 at 18].  To support that statement, ICE provided a declaration from Richard Clark ("Clark"), the Chief Technology Officer in ICE's Office of the Chief Information Office.  [Dkt. 37-2].  Clark stated that ICE's policy discourages employees from texting about matters related to their

employment, but if they do, ICE instructs employees to create a written memorandum of the communication to keep a record of the exchange pursuant to Policy Directive 141-03. [Id. at ¶¶ 15, 18]. Therefore, in theory, federal records would exist on an employee phone only for a brief and transitory amount of time. [Id.]. Additionally, Clark stated that "standard practice at ICE [was] to factory reset/securely wipe/destroy and delete all contents of mobile phone devices as they were being taken out of service," and that "none" of the carriers keep text messages beyond a period of thirty days. [Id. at ¶¶ 16-17].

The Court reasoned that although ICE stated that it does not have a method to store employees text messages in perpetuity, it needed to provide a clearer picture of its deletion and preservation activities during the time between ICE's receipt of the Request in November 2019 and its initiation of records collection to determine whether its non-collection of text messages was reasonable. [Dkt. 48 at 14]. The Court ordered ICE to file a supplementary declaration stating "(1) the process by which it, as a general matter, deactivates and replaces employee mobile devices; (2) what, if any, steps it takes to preserve data located on mobile devices at the time they are deactivated; and (3) the dates on which each of the seven named custodians have had a mobile device deactivated since the first day of the Request period, and what steps, if any, were taken to preserve data located on each of those devices." [Id. at 14-15]. Plaintiffs assert that ICE's supplemental declarations do not resolve the Court's concerns, and discovery is necessary. [Dkt. 68; Dkt. 69 at 1-4].

## II.    LEGAL STANDARD

"When Congress enacted FOIA, it codified into law 'a general philosophy of full agency disclosure.'" ACLU of Mass., Inc. v. ICE, 448 F. Supp. 3d 27, 35 (D. Mass. 2020) (quoting U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 (1989)). "Congress believed that this

philosophy, put into practice, would help 'ensure an informed citizenry, vital to the functioning

of a democratic society.'"  Id. at 35 (quoting Tax Analysts, 492 U.S. at 142).  "The policy

underlying FOIA, [therefore,] is one of broad disclosure, and the government must supply any

information requested by any individual unless it determines that a specific exemption, narrowly

construed, applies."  Id. (quoting Church of Scientology Int'l v. U.S. Dep't of Just., 30 F.3d 224,

228 (1st Cir. 1994)).

Here, ICE opposes Plaintiffs' motion for discovery and renews its motion for summary

judgment.  [Dkt. 77].  "FOIA cases are typically decided on motions for summary judgment."

Id. at 35-36 (citation and internal quotation marks omitted).  "[I]n a FOIA case, the Court *may*

award summary judgment solely on the basis of information provided in affidavits or

declarations when the affidavits or declarations are 'relatively detailed and non-conclusory,' and

'describe the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"

Citizens for Resp. & Ethics v. U.S. Dep't of Veterans Aff., 828 F. Supp. 2d 325, 329-30 (D.D.C.

2011) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197 (D.C. Cir. 1991) (citation and

internal quotation marks omitted)).  To prevail on summary judgment, "an agency must

demonstrate that 'each document that falls within the class requested either has been produced, is

unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements.'"  Id.

(citing Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III.    DISCUSSION

Plaintiffs assert that ICE's supplemental declarations failed to answer the Court's concerns

and propose targeted discovery to determine whether ICE has met its burden to show a reasonable

and good faith effort to collect text message records on the seven named custodians' mobile devices. [Dkt. 69 at 1-2, 7-9]. ICE argues that it has met its burden and renews its motion for summary judgment. [Dkt. 77 at 20-21].

### A.     Summary Judgment

The Court denies ICE's motion for summary judgment because it is not properly before this Court. ICE failed to comply with Federal Rule of Civil Procedure 56(c)(1) and Local Rule 56.1. Federal Rule of Civil Procedure 56(a) requires that ICE show "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." To make this showing, Local Rule 56.1 requires that ICE submit "a concise statement of the material facts of record as to which [ICE] contends there is no genuine issue to be tried." L.R. 56.1. Local Rule 56.1 also provides that "[f]ailure to include such a statement constitutes grounds for denial of the motion." See Shabazz v. Cole, 69 F. Supp. 2d 177, 186 (D. Mass. 1999) (stating that "district courts are entitled to demand adherence to specific mandates contained in the [local] rules" (quoting Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.2d 220, 224 (1st Cir. 1994))).

At the hearing, ICE stated that it was relying on the statement of material facts it submitted with its previous summary judgment motion. [See Dkt. 27]. This does not comply with Local Rule 56.1, which "requires all motions for summary judgment . . . [to] include a concise statement of material facts of record." Tyree v. Massachusetts, No. 06-10232-MLW, 2008 WL 427293, at *5 (D. Mass. Feb. 17, 2008); see also Katsiaficas v. CIA, No. 13-CV-11058-ADB, 2017 WL 2172437, at *1 (D. Mass. May 17, 2017) (stating that the plaintiff did not comply with Local Rule 56.1 when she failed to provide a "clearly identifiable" statement of material facts with her renewed motion for summary judgment). In the Court's order denying

the parties' cross-motions for summary judgment, the Court ordered ICE to produce additional discovery to resolve several factual disputes regarding the agency's document retention practices.  [Dkt. 48 at 18].  ICE also submitted additional declarations to oppose Plaintiffs' motion for discovery.  [See Dkt. 77-1, Dkt. 77-2, Dkt. 77-5, Dkt. 77-6, Dkt. 77-7].  Therefore, relying on a previous statement of material facts is not sufficient.

The parties also submitted a joint status report [Dkt. 72], stating that they would request a further schedule for dispositive motions, but that they would wait to request such schedule until the Court determines whether it will authorize a discovery period, see Fed. R. Civ. P. 16(b)(4) (stating that "[a] schedule may be modified only for good cause and with the judge's consent").  Since ICE's motion is not properly before the Court, it denies ICE's motion for summary judgment.  [See Dkt. 77].

### B.    Motion for Discovery

Plaintiffs assert that the additional declarations ICE provided in response to the MSJ Order not only fail to clarify the Court's concerns, but also raise additional concerns regarding the deletion of content after Plaintiffs submitted the Request in November 2019.  [Dkt. 1-1; Dkt. 69 at 1; see Dkt. 48].  The Court must determine whether to grant Plaintiffs' requests for further discovery.

Plaintiffs state that the only remaining substantive issue in this case is the part of the Request that sought text messages from the government-issued devices of the seven named custodians.  [Dkt. 69 at 1-4].  Plaintiffs argue that ICE has failed to meet its "good faith" burden in three ways, and that the Court should grant its request for discovery.  The standard for evaluating the adequacy of an agency's search in a FOIA request is whether the agency "made a good faith effort to search for the records requested, and that its methods were 'reasonably

expected to produce the information requested.'"  Kidd v. Dep't of Just., 362 F. Supp. 2d 291,

294 (D.D.C. 2005) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

The question is not "whether there might exist any other documents possibly responsive to the

request, but rather whether the *search* for those documents was *adequate*."  Steinberg v. U.S.

Dep't of Just., 23 F.3d 548, 551 (D.C. Cir. 1994) (internal citation and quotation marks omitted)

(emphasis in original).  Declarations that explain "in reasonable detail the scope and method of

the search conducted by the agency will suffice to demonstrate compliance with FOIA."  Kidd,

362 F. Supp. 2d at 295 (internal citation and quotation marks omitted).

"Under [] FOIA, [] district court[s] [have] jurisdiction to order the production of

improperly withheld agency records."  Giza v. Sec'y of Health, Educ. & Welfare, 628 F.2d 748,

751 (1st Cir. 1980) (citing 5 U.S.C. § 522(a)(4)(B)).  "The Court may grant a motion for

discovery pursuant to Fed. R. Civ. P. 56(d) if the moving party puts forward sufficient evidence

to show that the requested discovery is 'necessary, feasible, and can be outcome-determinative.'"

Reich v. U.S. Dep't of Educ., 784 F. Supp. 2d 15, 23 (D. Mass. 2011) (citation omitted).  FOIA

imposes a "stringent burden on parties moving for discovery."  Id.; see Wheeler v. CIA, 271 F.

Supp. 2d 132, 139 (D.D.C. 2003) (stating that "[d]iscovery is generally unavailable in FOIA

actions").  "Discovery in a[] FOIA action 'should be denied where an agency's declarations are

reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute

remains.'"  Reich, 784 F. Supp. 2d at 24 (quoting Schrecker v. U.S. Dept't of Just., 217 F. Supp.

2d 29, 35 (D.D.C. 2002)).  "To the extent that discovery is allowed in a FOIA action, it is

directed at determining whether complete disclosure has been made, e.g., whether a thorough

search for documents has taken place, [and] whether withheld items are exempt from disclosure." Giza, 628 F.2d at 751.

Plaintiffs' first focus is on the inadequacy of ICE's policy for storing its employees' text messages. [See Dkt. 69 at 9-10]. ICE does not have a policy "to preserve data on mobile phones nor does [it] have an infrastructure capability to preserve and/or store data from employees' cell phones." [Dkt. 77-2 at ¶ 7]. Policy Directive 141-03 directs ICE employees to create written memoranda capturing an overview of their text message exchanges regarding official agency business. [Dkt. 77-3 at ¶ 15]. Although ICE employees are instructed not to conduct agency business via text message [Dkt. 77 at 10], Plaintiffs assert that ICE's Policy Directive 141-03 acknowledges that ICE employees do, indeed, conduct official business via text message [Dkt. 69 at 9-10]. Plaintiffs also note that the Trump Administration ordered ICE officials to wipe their mobile devices before returning them to the agency, without regard for the destruction of evidence for FOIA requests. [Id. at 10].

Second, Plaintiffs point to the shifting narrative that ICE provides on the location and data on the seven named custodians' mobile devices, specifically through the declarations of Richard Clark, the Chief Technology Officer in ICE's Office of the Chief Information, to argue that ICE did not act in good faith. [Dkt. 69 at 9-13; see Dkts. 77-1, 77-2, 77-3]. In his first declaration [Dkt. 77-3], dated August 18, 2022, Clark stated that ICE's non-collection of text messages was reasonable because the agency does not have a policy of preserving its employees' text messages. [Id. at ¶¶ 12-18]. Clark asserted that "[t]he only means through which ICE can access an employee's text messages is with the cooperation of the employee or through a forensic analysis of the specific device." [Id. at ¶ 12]. Clark stated that since Policy Directive 141-03 instructs employees to memorialize any agency business conducted via text message in a

memorandum filed, there "would no longer be any copies of text messages within the telephone carriers or mobile device equipment providers infrastructure." [Id. at ¶¶ 15, 18]. It was ICE's practice to "factory/reset/securely wipe/destroy and delete all contents of mobile phone devices as they were being taken out of service." [Id. at ¶ 16]. According to Clark, the email search that ICE conducted on June 4, 2021, would have located any records of text message communications concerning Judge Joseph or Officer MacGregor. [Id. at ¶ 19].

In response to the MSJ Order requesting additional information regarding the process by which the seven named custodians' mobile devices were taken out of service, Clark submitted a second declaration dated February 9, 2022. [Dkt. 77-2; see Dkt. 48]. Clark, again, referred the Court to Policy Directive 141-03 and added that all employees ending their employment with ICE receive the "IOS Device Data Wiping: Quick Reference Guide, Department of Homeland Security, Immigration Customs Enforcement OCIO," which directs all ICE personnel to wipe or erase all data prior to returning the device to the agency. [Dkt. 77-2 at ¶¶ 8-12]. Clark, therefore, asserted that it was the seven named custodians' responsibility to memorialize any official agency business conducted via text before wiping their phones. [Id. at ¶ 13]. Clark also included the deactivation dates of five of the seven named custodians' mobile devices: Thomas Homan, February 26, 2019; Matthew Albence, February 19, 2020; Tracey Short, January 19, 2021; Ronald Vitiello, December 16, 2020; and Thomas Blank, May 21, 2020. [Id. at ¶ 14]. All five of those dates were after Plaintiffs submitted the Request to ICE in November 2019, but prior to the start of this litigation on May 5, 2021. Clark also stated that Nathalie Asher and Jon Feere's mobile devices were not deactivated. [Id. at ¶ 15]. Clark explained that Feere had not cooperated with ICE to unlock his phone, which was issued by another agency. [Id.]. Clark did not provide any information on the agency's attempt to search Asher's mobile device, and he

also did not confirm whether Asher memorialized any text message communications in compliance with Policy Directive 141-03.  However, another declaration submitted by ICE around the same time explained that ICE had conducted a search of Asher's device, but that it limited the search, which "did not locate any potentially responsive records," to "any text messages between Natalie Asher and other custodians named in Plaintiffs' FOIA Request concerning any investigation by ICE of Judge Joseph, Office MacGregor, and/or the events alleged in the [i]ndictment."  [Dkt. 55 at ¶ 14].

ICE provided a third declaration, dated January 20, 2023, from Clark to support its opposition to Plaintiffs' motion for discovery.  [Dkt. 77-1].  In that declaration, Clark provides the seven named custodians' agency departure dates and the deactivation dates of their mobile devices.  [Dkt. 77-1 at ¶ 6].  Clark changed the deactivation date of Albence's mobile device from February 19, 2020, to September 3, 2020, citing an "error."  [Dkt. 77-2 at ¶ 14; Dkt. 77-1 at ¶ 14].  Clark also clarified that the employees' departure date and the mobile device deactivation dates differ because although employees are directed to wipe their devices prior to turning it into the agency, the devices are deactivated "in the normal course of processing the devices post-employment," and that for "efficiency purposes," the agency would wait until it had several devices to recycle.  [Dkt. 77-3 at ¶ 12].  Clark further explained that five of the seven devices (all except those belonging to Asher and Feere) were no longer in ICE's possession at the time the ICE FOIA Office instructed the relevant department to conduct a search in response to the Request.  [Dkt. 77-1 at ¶ 10].

Clark's third declaration also included responses to Plaintiffs' questions regarding the two devices that ICE still had in its possession.  In their motion for discovery, Plaintiffs asked, "What types of text messages are preserved on Ms. Asher's device, what texting applications did

ICE search, and why did it search only for messages exchanged with the other six named custodians?" [Dkt. 69 at 19]. Clark's third declaration answered that ICE "conducted a search of the phone" and did not recover "*any* communications on the device" for the FOIA request period of March 15, 2018, through April 25, 2019. [Dkt. 77-1 at ¶ 16 (emphasis in original)]. Clark, however, did not specify how this search was conducted, e.g., manually or automatically, nor what this search entailed, including which applications, e.g., SMS messaging, messaging applications like WhatsApp and Slack, were reviewed. Clark also did not explain whether ICE searched for any memoranda or other files—on Asher's mobile device or otherwise— memorializing any relevant text message exchanges or other communications.[1] [See Dkt. 77-1 at ¶ 16]. Clark also stated that ICE is unable to unlock Feere's phone because Feere is "unsure of the code and was generally unwilling to assist ICE absent concessions from ICE in unrelated matters with which [he] is involved." [Id. at ¶ 18]. The agency has made "over 5,000 attempts" to unlock Feere's device. [Id.].

Plaintiffs' third argument for discovery is that since ICE did not issue a "hold" notice to preserve the documents in the underlying Request [see Dkt. 77-5 at ¶ 7], it appears that ICE has destroyed text messages after Plaintiffs sought them in the Request on November 18, 2019. [Dkt. 69 at 10-11]. ICE, however, states that it considers FOIA requests on a first-in, first-out basis and that the significant increase in FOIA requests and the Covid-19 pandemic contributed to an extreme delay in the agency's ability to respond. [See Dkt. 77-1 (stating that ICE's FOIA requests increased by 240% between 2017 and 2020); Dkt. 77 at 6 n.5 (stating that the Covid-19 pandemic reduced its available workforce)].

---

[1] According to ICE, Policy Directive 141-03 indicates that employees should "create a memorandum to file to capture" any text message exchanges and, accordingly, "should any [such] records exist," the agency's "email search of the seven custodians . . . would have located them." [Dkt. 37-2 at ¶¶ 15, 19]. ICE, however, does not state that such memoranda are sent via email, nor does ICE specify how these memoranda are saved.

### 1.      ICE's Text Message Retention Policy and Search of Mobile Devices

The Court considers Plaintiffs' first complaint about the inadequacy of ICE's policy for storing text messages, Policy Directive 141-03, which they assert is, at best, an "honor system," with no evidence to support that text message records are retained.  [Dkt. 69 at 10].  Even if Policy Directive 141-03 is a poor method of retaining employees' text messages, FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."  Kohake v. Dep't of Treas., 630 Fed. Appx. 583, 588 (6th Cir. 2015) (quoting Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980)) (internal quotation marks omitted); see Anderson v. U.S. Dep't of Just., 518 F. Supp. 2d 1, 9-10 (D.D.C. 2007) ("An agency does not violate the FOIA for its failure to locate records destroyed in accordance with an agency's normal retention policy.").  Plaintiffs' request for an explanation of ICE's policy that ICE employees "wipe/erase all data" from their mobile devices prior to turning them in upon completion of their employment exceeds the scope of FOIA.  [See Dkt. 69 at 10].  Courts generally do not grant discovery requests in FOIA actions for agencies to explain why they have adopted a particular method of record retention.  See Giza, 628 F.2d at 751 (stating that "a district court simply has no authority under the FOIA to compel an agency to generate explanatory material" for its policies).

Plaintiffs also suggest that ICE should retain employee text messages by taking copies of the exchange.  [Dkt. 69 at 9].  Plaintiffs further argue that since the law requires the preservation of public records, and agencies are required to retain communications regarding an ongoing criminal matter, it is "surprising" that ICE does not have a method to retain text message records. [Dkt. 69 at 8].  FOIA, however, does not require ICE to retain communications regarding criminal matters and does not independently impose a retention obligation on the agency.  See

<u>Folstad v. Bd. of Governors</u>, No. 1:99-CV-124, 1999 LEXIS 17852, at *5 (W.D. Mich. Nov. 16, 1999) ("Even if the agency failed to keep documents that it should have kept, that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse").  While ICE may generally be "*capable* of creating" copies of text messages, that is not its current policy, nor was it ICE's policy during the relevant period.  <u>See</u> <u>Nat'l Sec. Counselors v. CIA</u>, 960 F. Supp. 2d 101, 160 (D.D.C. 2013) (quoting <u>Yeager v. Drug Enf't Admin.</u>, 678 F.2d 315, (D.C. Cir. 1982)) (emphasis in original).  FOIA does not grant the Court the power to compel ICE to retain records in a certain manner.  <u>See</u> <u>Piper v. U.S. Dep't of Just.</u>, 294 F. Supp. 2d 16, 21-22 (D.D.C. 2003) (stating that "FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control" and "only obligates [agencies] to provide access to those which it in fact has created and retained" (quoting <u>Kissinger</u>, 445 U.S. at 151)).   Still, "FOIA generally requires federal government agencies to respond to requests for materials by providing materials in their possession that respond to such requests."  <u>Rodriguez v. Providence Police Dep't</u>, No. 08-003 S, 2010 WL 5572071, at *3 (D.R.I. Aug. 5, 2010) (citing 5 U.S.C. § 552(a)(3)).  ICE, therefore, must conduct a good faith search of any devices that the agency still has in its possession.

With all this in mind, the Court must consider the mobile devices that ICE had to search at the start of this litigation, which belonged to Nathalie Asher and Jon Feere.  [Dkt. 77-2 at ¶¶ 14-15; Dkt. 77-1 at ¶¶ 6, 16-18].  ICE was able to search Nathalie Asher's phone, and therefore, the question is whether that search was in "good faith."  [Dkt. 77 at 8].  In response to the MSJ Order, ICE stated that it searched Asher's mobile device "for any text messages between Natalie Asher and other custodians named in Plaintiffs' FOIA Request concerning any investigation by ICE of Judge Joseph, Office MacGregor, and/or the events alleged in the

14

[i]ndictment." [Dkt. 55 at ¶ 14]. In their motion for discovery, Plaintiffs question why ICE searched only for messages exchanged *with* the other six named custodians. [Dkt. 69 at 2]. This is a valid question, as the Request itself does not seek communications *between* the seven named custodians; rather, it seeks "*[a]ll* communications" of the seven named custodians "*concerning* Judge Joseph, Officer MacGregor, and/or the events alleged in the [i]ndictment." [Dkt. 1-1 at 3 (emphasis added)]. ICE responds that it searched for and "did not find *any* communications" on Asher's device for the relevant time period.[2] [Dkt. 77-1 at ¶ 16].

At this time, ICE has not provided the Court with information sufficient to demonstrate that its search of Asher's phone was conducted in good faith. To qualify as a good faith search, ICE must show that its methods "were reasonably expected to produce the information requested." Kidd, 362 F. Supp. 2d at 294. ICE did not provide a reason for limiting the scope of its search of Asher's phone to text messages exchanged with the other six named custodians. [See Dkt. 55 at ¶ 14; Dkt. 77-2]. And while ICE later claimed it did not find "*any* communications" on the device, ICE fails to specify which applications it searched and how that search was conducted, e.g., manually or automatically. [Dkt. 77-1 at ¶ 16]. ICE also does not explain whether it searched Asher's entire device—not just the text messages—for documentation or records of past communications, including by using the parties' agreed upon search terms and the two additional search terms noted in the MSJ Order. [See Dkt. 48 at 4 nn.2-3 & 5, 11-12]. In simple terms, it is still unclear what applications ICE searched on Asher's device and how that search was conducted. See Kidd, 362 F. Supp. 2d at 295 (noting that declarations must explain "in reasonable detail the scope and method of the search" to comply with FOIA); see also Citizens for Resp. & Ethics, 828 F. Supp. 2d at 329-30 (observing that

---

[2] It is unclear if this response refers to the same search referenced in ICE's initial response to the MSJ Order. [See Dkt. 55 at ¶ 14; Dkt. 77-1 at ¶ 16].

affidavits and declarations in FOIA cases generally must be "relatively detailed and non-conclusory" to grant summary judgment).  Moreover, it is not clear whether ICE also searched for any memoranda related to Asher's text messages that would have been created pursuant to Policy Directive 141-03.

Plaintiffs request the categories of data that remain on Asher's phone and the scope of any searches of that data.  [Dkt. 69 at 3].  Any discovery request must be narrowly directed at determining whether ICE conducted a good faith search in the context of Plaintiffs' Request. See Giza, 628 F.2d at 751.  To understand whether ICE conducted a good faith search here, Plaintiff and the Court must know what, exactly, ICE searched on Asher's mobile device. Therefore, the Court orders ICE to file a supplemental declaration explaining in detail (1) how it searched Asher's mobile device; (2) which applications were searched; and (3) whether it has also searched Asher's mobile device and all other devices for memoranda created in compliance with Policy Directive 141-03 or other documents memorializing any communications responsive to the Request.

ICE is also in possession of John Feere's mobile device, yet ICE cannot search the device because it is locked by a passcode, and Feere refuses to cooperate.  [Dkt. 77-1 at ¶ 17].  ICE has made over five thousand attempts to unlock Feere's phone without success.  [Id. at ¶ 18].  Clark attests that there are no other additional steps that ICE could feasibly take to search for content on Feere's phone.  [Dkt. 77-1 at ¶¶ 17-19].  The Court therefore denies Plaintiffs' discovery

request for documents regarding ICE's communication with Feere to unlock the mobile device he used while employed at ICE.

### 2.    Clark's Declarations and ICE's Failure to Issue a Litigation Hold

The Court next considers Plaintiffs' second and third arguments, which point to ICE's inability to meet the good faith burden due to the shifting story line that the agency provides on the location and data on the seven named custodian's mobile devices, and the fact that ICE failed to issue a "hold" to preserve the data on the five mobile devices, which were deactivated after Plaintiffs submitted their FOIA request.  [See Dkt. 1-1; Dkt. 77-3 ¶ 16].  Plaintiffs submitted its FOIA request to ICE on November 18, 2019.  [Dkt. 1-1].  ICE responded the following day, stating that Plaintiffs needed third-party authorization from the judge and the court officer at issue in their request.  [Dkt. 1-2].  Plaintiffs challenged that decision, and the ICE Office of the Principal Legal Advisor agreed that third-party authorization was not necessary in February 2020.  [Dkt. 1-5].  ICE asserts that it "would be impractical and impossible for ICE to issue document holds on all FOIA requests as soon as they come in."  [Dkt. 77 at 12].  ICE provides that to manage the volume, "FOIA possessors review the requests on a first come, first served basis," and that "[d]ocument requests to appropriate sub-components are then issued once the analysis is complete (regarding the likely record holders, the dates, etc.)."  [Id.].

Under Section 552(a)(6)(A)(i) of FOIA, agencies are required to respond to FOIA requests within ten working days.  Sections 552(a)(6)(A) and (B) of FOIA provide that if exceptional circumstances exist, the time limit to respond is extended.  "[C]ourts have interpreted this provision as excusing any delays encountered in responding to a request as long as the agenc[y] [is] making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis."  Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116, 1127

(D.D.C. 1995) (citing Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616

(D.C. Cir. 1976)).  The Court, therefore, evaluates ICE's good faith based on whether the agency

processed the request on a first-in, first-out basis.

      ICE explains that the volume of FOIA requests and the Covid-19 pandemic contributed

to a delay, but that the agency still processed its requests on a first-in, first-out basis.  ICE

submitted a declaration from Fernando Pineiro ("Pineiro"), FOIA Director of the ICE FOIA

Office, to explain how the volume of FOIA requests contributes to a delay in processing the

requests.  [Dkt. 77-7 at ¶ 1].  Between 2017 and 2020, the ICE FOIA Office experienced a 240%

increase in FOIA requests.  [Id. at ¶ 6].  Due to the high volume, the ICE FOIA Office has

processed FOIA requests on a "first-in, first-out basis" to ensure that it does not prioritize one

request over another.  [Id. at ¶ 7].  ICE asserts that in 2016 it received 63,385 FOIA requests.

[Id. at ¶ 5].  In 2019, ICE received 123,370 FOIA requests, which amounts to almost five

hundred requests every business day.  [Id.; Dkt. 77 at 6 n.5].  ICE also asserts that Plaintiffs

submitted their FOIA request three months before the COVID-19 pandemic began.[3]  [Dkt. 77 at

6 n.5].  Although ICE did not send out Plaintiffs' request to its subcomponent parts until after the

start of this litigation, ICE's declarations on this issue are "reasonably detailed," and Plaintiff has

---

[3] The Court takes judicial notice that the Secretary of Health and Human Services declared a public health
emergency in response to the virus on January 31, 2020.  See New York v. U.S. Dep't of Homeland Sec., 475 F.
Supp. 3d 208, 216 (S.D.N.Y. 2020).  On March 13, 2020, the President declared a state of national emergency.  Id.;
see Joffe v. King & Spalding LLP, No. 17-CV-3392(VEC), 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020)
(stating that "courts . . . have routinely taken judicial notice of the likely risks and severity of Covid-19").

not met its "stringent burden" demonstrating a need for further discovery pursuant to FOIA on this issue.  <u>Reich</u>, 784 F. Supp. 2d at 23-24 (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for discovery [Dkt. 68] is **GRANTED IN PART** and **DENIED IN PART**, and ICE's motion for summary judgment [Dkt. 77] is **DENIED.**

It is hereby **ORDERED** that, within 45 days, ICE shall file a supplemental declaration explaining in detail (1) how it searched Nathalie Asher's mobile device; (2) which applications on that device were searched; and (3) whether it has also searched Asher's mobile device and any other devices for memoranda or other documents memorializing any communications responsive to the Request.

**SO ORDERED.**

Dated: May 8, 2023

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge